UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO.:

MILITA BARBARA DOLAN
on behalf of herself and all others
similarly situated,

    Plaintiffs,

v.                                              **CLASS ACTION**

JETBLUE AIRWAYS CORPORATION,

    Defendant.
_____/

## COMPLAINT

Plaintiff Milita Barbara Dolan, on behalf of herself and all others similarly situated, sues Defendant JetBlue Airways Corporation ("JetBlue") and alleges as follows.

## INTRODUCTION

1. This is a class action filed to redress injuries that Plaintiff and a class of consumers have suffered, and will continue to suffer, as a result of JetBlue's deceptive practices relating to its presentation of the charge for trip insurance sold on its website. On its website, and throughout the online process of purchasing a flight ticket and trip insurance, JetBlue leaves the consumer with the false impression that the charge for trip insurance is a pass-through fee, i.e., a fee that is passed on to another entity and for which JetBlue has no financial interest. The net impression of JetBlue's representations and omissions to consumers is that, when consumers purchase a trip insurance policy, the funds to cover the policy's cost go to an independent third-party insurance company, whom JetBlue identifies as the company brokering the policy for sale to the consumer.

Indeed, JetBlue identifies this same insurance company as "the licensed producer," or insurance agent, for the trip insurance policies. In reality, and despite lacking a license to broker insurance policies, JetBlue retains or ultimately receives an undisclosed kickback from every policy sold.

## **PARTIES, JURISDICTION, AND VENUE**

2. Plaintiff is an individual who is domiciled in, and is thus a citizen of, Florida.

3. Defendant JetBlue is a Delaware corporation with its principal place of business in New York. It does business regularly throughout the United States, including in Florida. JetBlue also maintains a registered agent in Florida.

4. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different from JetBlue.

5. This Court has personal jurisdiction over JetBlue because the causes of action asserted herein arise from (i) JetBlue operating, conducting, engaging in, or carrying on a business or business venture in this state and (ii) JetBlue committing a tortious act within this state. This Court further has personal jurisdiction over JetBlue based on JetBlue's consent and waiver by establishing a registered agent in Florida for the purpose of receiving service of process. Moreover, JetBlue purposefully availed itself of Florida's consumer market through the advertisement, promotion, and sale of trip insurance policies in Florida.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because JetBlue resides in this district for purposes of the statute as JetBlue is subject to the personal jurisdiction of this Court for purposes of this action. Moreover, a substantial part of the events or omissions giving rise to the claim occurred in this district.

2
LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7.  In addition to operating flights nationwide, JetBlue operates hundreds of daily flights to and from nine different airports in Florida. As part of its business, JetBlue sells tickets to consumers through its website, www.JetBlue.com.

8.  When a consumer visits JetBlue's website, the site allows the consumer to select his or her preferred destination and travel dates.

9.  Upon the consumer's selection of his or her specific flights, JetBlue's website provides the consumer with the price to purchase the selected flights.

10. Before the consumer completes his or her purchase, JetBlue's website requires the consumer to make an election regarding purchasing a trip insurance policy with a third-party insurance provider. There is no way to purchase a ticket on JetBlue's website without making an election regarding trip insurance.

11. JetBlue markets the third-party trip insurance to its consumers in a uniform fashion—each consumer sees the same marketing language when purchasing a ticket.

12. After the consumer selects the desired flights, the consumer ultimately reaches a "Payment" page.

13. The Payment page allows the consumer to review his or her flight details and then input payment and billing information.

14. At the top of this page is a heading in bold that states: "**Add Travel Protection**."

15. Under this heading is a grey box with two options. The first option states: "Yes, add travel protection for only $[Price] per traveler in this reservation. This is a total of $[Price]. (Highly Recommended)." The "Yes" and "(Highly Recommended)" language is in green text.

Below this is the following language in bold: "**Peace of mind is only a click away**." Below this language is a list of reasons to purchase trip insurance.

16. Below the list of reasons is the second option, which states: "No, I choose not to protect my $[Fare] purchase and understand I am responsible for all cancellation fees and delay expenses."

17. Below these options, in blue text, is a number followed by the language: "customers protected their trip in the last 7 days." Below this is a quote from USA today: "And of course — always get travel insurance."

18. This marketing is intended to create the impression that the trip insurance is in the consumer's best interest—while hiding the fact that JetBlue is pushing the product because it is in its financial interest to generate sales. In other words, the consumer is deceived into believing that JetBlue is acting in the consumer's best financial interest, and not its own.

19. For example, JetBlue includes in green text the phrase "(Highly Recommended)" next to the "Yes" option, and then represents to the consumer that the party "recommending" the purchase of insurance is AGA Service Company, not JetBlue. This representation hides JetBlue's financial interest in the purchase of trip insurance policies.

20. Consumers are required to make an insurance election, as they are unable to proceed with purchasing their airline tickets on JetBlue's website until they choose whether to purchase a trip insurance policy. The consumer cannot simply ignore the insurance offering and move on to purchasing a ticket.

21. After the section that portrays the trip insurance policies as something in the consumer's best financial interest, JetBlue proceeds to conceal its financial motivation in pushing the product by disclaiming its role in the trip insurance policies being sold on its website.

22. Specifically, below the marketing language is the following language. "***Recommended by AGA Service Company, the licensed producer*** and administrator of this plan. Terms, conditions and exclusions apply, learn more. Plan underwritten by Jefferson Insurance Company or BCS Insurance Company." (emphasis added).

23. JetBlue's website thus represents to the consumer that it is AGA Service Company, and not JetBlue, who is recommending the trip insurance and who is "the licensed producer" for the trip insurance policies.

24. A "producer" is insurance parlance for an insurance agent or broker, i.e., the one who makes a commission on the sale of insurance. Thus, by stating that AGA Service Company is "the" producer, JetBlue represents that it is not acting as an agent or broker, i.e., it is not making a commission on sales of trip insurance policies.

25. In fact, JetBlue cannot sell insurance to the consumer (and thus cannot receive commissions on sales) because it is not licensed as an insurer or insurance agent in Florida or anywhere else.

26. Like Florida, other states across the country prohibit the unlicensed sale or brokerage of insurance, including the receipt of commissions by people or entities without a license. For example, the New York Attorney General's Office has issued an official opinion that an insurer may not pay any commission to transportation companies for the sale of travel insurance unless the transportation company is a licensed and appointed insurance agent or broker. *See* Ex. 1, N.Y. General Counsel Opinion No. 4-23-2008 ("May an insurer pay an insurance commission to a cruise line or tour operator that is not a licensed and appointed insurance agent, or a licensed insurance broker? . . . No. An insurer may not pay an insurance commission to a cruise line or tour

operator that is not either a licensed and appointed insurance agent, or a licensed insurance broker.").

27. If the consumer selects the "Yes" button, a new line item, "Insurance" will appear under the breakdown of charges on the Payment page, followed by the amount for the trip insurance. This amount is below line items for "Fare details" and "Taxes & Fees." Notably, if a consumer purchases an "Add on" such as an upgraded seat, that cost is included within the "Fare details" charge rather than separately set out. This further enhances the idea that the trip insurance cost is a pass-through charge, and separate from the charges for which JetBlue has a financial interest.

28. Likewise, when a consumer buys a trip insurance policy on JetBlue's website, the cost of the policy is not included in the consumer's bill for the purchased airfare. Rather the consumer's insurance cost is itemized separately even though the airfare and trip insurance cost are paid via a one-time credit card charge on JetBlue's website. In contrast, when a consumer elects to purchase from JetBlue a seat upgrade or "Trip Extra," the cost of that "add on" is included in the fare price. The lack of inclusion of the trip insurance cost in the consumer's airfare purchase price further indicates to the consumer that JetBlue treats the insurance cost as a pass-through charge, not as a profit vehicle for itself.

29. Furthermore, in the above representation, "Recommended by AGA Service Company, the licensed producer and administrator of this plan. Terms, conditions and exclusions apply, learn more. Plan underwritten by Jefferson Insurance Company or BCS Insurance Company," the "learn more" text is a hyperlink. If clicked, this link opens a popup page that contains only the Allianz Global Assistance ("Allianz") logo. This popup page tells the consumer:

"Pricing – 6.75% of your total ticket cost and service fees." Nowhere is there a disclosure that part of the pricing is a kickback or commission to JetBlue.

30. Further down on this popup page, the consumer is told that he or she is purchasing the trip insurance from Allianz rather than JetBlue. Specifically, this page states: "***By purchasing, you agree to Allianz Global Assistance's purchase agreement*** and privacy policy (see below), including receiving notices and communications electronically." (emphasis added).

31. This popup page also notes: "Since your satisfaction is our priority, we are pleased to give you 10 days to review your plan. If, during this 10-day period, you are not completely satisfied for any reason, you may cancel your plan and receive a full refund." Conspicuously absent in that representation is any mention of JetBlue, further evidence that JetBlue represents the trip insurance as a "pass through" charge, wherein it is simply a conduit for funds to Allianz without any profit interest.

32. At the bottom of this popup page is again the representation that "***AGA Service Company is the licensed producer*** and administrator of this plan and an affiliate of Jefferson Insurance Company." (emphasis added).

33. Additionally, JetBlue's website has a webpage for consumers who seek more information about the insurance offered on JetBlue's website. This webpage contains the Allianz logo and repeats the statement: "AGA Service Company is the licensed producer and administrator of this plan."

34. This webpage also states: "Allianz Global Assistance will process a full refund of the premium within 10 days of purchase, as long as you have not yet departed on your trip or filed a claim. No refunds shall be paid after 10 days of purchasing the program."

35. On this webpage, JetBlue also represents that it is Allianz, not JetBlue, that is providing the trip insurance. Specifically, JetBlue states: "JetBlue wants every trip to be the best it can be. That's why we've partnered with Allianz Global Assistance – a world leader in travel insurance and assistance services. Travel insurance *from Allianz* can provide coverage before and during your trip to help protect the investment you've made in your travel plans." (emphasis added).

36. There is also a link to purchase a trip insurance policy. If clicked, the consumer is brought to a webpage for "Coverage Options." This webpage also represents that the trip insurance is "from Allianz Global Assistance."

37. Another webpage on JetBlue's website is an FAQ for trip insurance. Two of the questions and answers are as follows:

> **Q:** Why isn't my travel protection purchase displayed in my travel itinerary?
> **A:** When you purchase Trip Insurance from Allianz Global Assistance, you'll receive a separate confirmation. All policy documentation will be sent directly to you from Allianz Global Assistance.
>
> **Q:** Who provides the insurance for these plans?
> **A:** Insurance coverage is underwritten by BCS Insurance Company (OH, Administrative Office: Oakbrook Terrace, IL), rated "A-" (Excellent) by A.M. Best Co., under BCS Form No. 52.201 series or 52.401 series, or Jefferson Insurance Company (NY, Administrative Office: Richmond, VA), rated "A" (Excellent) by A.M. Best Co., under Jefferson Form No. 101-C series or 101-P series, depending on the insured's state. Allianz Global Assistance and Allianz Travel Insurance are brands of AGA Service Company. AGA Service Company is the licensed producer and administrator of this plan and an affiliate of Jefferson Insurance Company. The insured shall not receive any special benefit or advantage because of the affiliation between AGA Service Company and Jefferson Insurance Company.

38. Notably, again JetBlue effectively disclaims that it provides or is the "producer" for the trip insurance policies. Further, JetBlue gives the impression that the charge for trip

insurance is separate—and thus a pass-through—because it will not appear on the consumer's flight itinerary, and instead will be listed on a separate confirmation from Allianz.

39. These statements and omissions to the consumer on JetBlue's website, especially JetBlue's representation that another entity is "the producer" of the trip insurance policies, reinforce the impression of the trip insurance premium as a pass-through charge—one where JetBlue has no profit interest in the sales of trip insurance policies on its website.

40. JetBlue's representation that another entity is "the producer" of the trip insurance is also an affirmative misrepresentation because JetBlue's actual role in the sale of the trip insurance policies is analogous (if not identical) to that of an insurance agent, who receives commissions on policies sold. In addition to AGA Service Company, JetBlue is or acts as an insurance agent and is also a "producer" of the trip insurance policies.

41. JetBlue's representations and omissions necessarily inform the consumer that JetBlue does not receive a commission or otherwise profit from the sale of trip insurance.

42. After a consumer elects to purchase a trip insurance policy and proceeds to complete the purchase of an accompanying airfare, Allianz, not JetBlue, sends the consumer an email containing a copy of the purchased insurance policy. Nowhere in that communication or accompanying insurance policy is there any reference to JetBlue having a role in the provision of the insurance. Instead, the "Letter of Confirmation" that the consumer receives containing the insurance policy has "Jefferson Insurance Company" as the header.

43. The net impression of all of JetBlue's representations and omissions to its consumers on its website and during the online purchase process—including, but not limited to, JetBlue's assertion that another entity is "the" producer for the insurance (and by necessary implication, JetBlue is not)—is that the cost of the trip insurance policies is a pass-through charge,

where JetBlue simply collects the money for the insurance policy from the consumer and forwards it on to the actual insurance provider, without any profit interest in the charge.

44. This net impression is reinforced by the fact that state laws generally prohibit the unlicensed sale of insurance, including receipt of commissions on sales of insurance.

45. It is thus reasonable for consumers to expect that JetBlue is not receiving a commission or any other remuneration from any sales of insurance.

46. In reality, and completely unbeknownst to its consumers, the trip insurance is a hidden profit center for JetBlue, as JetBlue retains or ultimately receives for itself a portion of the funds for every trip insurance policy its consumers purchase on its website.

47. JetBlue, instead of disclosing its profit interest in the trip insurance policies sold on its website, disguises its financial interest by leaving consumers with the impression that the cost of an insurance policy is a "pass through" charge. Indeed, JetBlue affirmatively tells consumers that a different entity is "the producer" of the insurance, without any suggestion or indication that JetBlue is also retaining or ultimately receiving a portion of the charge.

48. This is in contrast to other charges that JetBlue offers on its website, such as more desirable seats and early boarding rights, where JetBlue bundles the cost of these optional fees into the overall price of a consumer's ticket, thereby signaling to the consumer JetBlue's profit interest.

49. The trip insurance program on JetBlue's website represents an illegal kickback scheme—one in which JetBlue hides, and misleads consumers about, its role and profit interest in the trip insurance policies sold on its website.

50. The price for the trip insurance sold on JetBlue's website is a price of Allianz, not JetBlue.

51. JetBlue provides no services to the consumer in connection with the sale of trip insurance on its website.

52. No contractual relationship is formed between the consumer and JetBlue in connection with a consumer's purchase of trip insurance on JetBlue's website.

53. No bargained-for exchange takes place between the consumer and JetBlue in connection with a consumer's purchase of trip insurance on JetBlue's website.

54. On July 6, 2017, Plaintiff purchased a trip insurance policy on JetBlue's website. Plaintiff received an email from the insurance provider attaching her policy, neither of which referenced JetBlue.

55. JetBlue has never disclosed to Plaintiff, or any of the class members, the true nature of its relationship with Allianz, Jefferson Insurance Company, or BCS Insurance Company. Specifically, JetBlue has not disclosed the fact that it retains or receives a substantial kickback or commission on the policies made available on its website.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this lawsuit as a class action pursuant to Federal Rule of Civil Procedure 23.

**Class Definition**

57. Plaintiff seeks to represent the following class:

All persons who purchased a trip insurance policy on JetBlue's website within the applicable limitations period (the "Class Period").

Excluded from this class are JetBlue, its affiliates, subsidiaries, agents, board members, directors, officers, and employees. Also excluded from the class are the district judge and magistrate judge assigned to this case, their staff, and their immediate family members.

58. This class action is brought pursuant to Rule 23(b)(2) because JetBlue has acted or refused to act on grounds generally applicable to all the members of the class, thereby making final

injunctive relief or declaratory relief concerning the class appropriate.

59. This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Plaintiff's claim and the class members' claims predominate over any question of law or fact affecting only individual class members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

60. JetBlue has subjected Plaintiff and the members of the class to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is JetBlue's standard business practice.

**A.     Numerosity**

61. The individual class members are so numerous that joinder of all members in a single action is impracticable. JetBlue operates thousands of flights a day, and upon information and belief, it has sold thousands of trip insurance policies during the Class Period.

62. While Plaintiff estimates the proposed class numbers in the thousands, the exact number of class members, as well as the class members' names and addresses, can be identified from JetBlue's business records.

**B.     Commonality/Predominance**

63. Common questions of law and fact exist as to Plaintiff's and the class members' claims. These common questions predominate over any questions solely affecting individual class members, including, but not limited to, the following:

a. Whether JetBlue engaged in a deceptive and unfair business practice by misleading the class about its financial interest in making available trip insurance policies and its receipt or retention of a kickback;

    b.    Whether the representations made about insurance premiums collected by JetBlue would lead the reasonable consumer to believe it was a pass-through charge;

    c.    Whether JetBlue receives undisclosed kickbacks, commissions, or fees from the sale of trip insurance;

    d.    Whether JetBlue manipulated the class through trip insurance products in order to maximize its own profits at the expense of the class;

    e.    Whether JetBlue retains or receives a commission or kickback for the sale of trip insurance policies without a license;

    f.    Whether and to what extent JetBlue's conduct has caused injury to the Plaintiff and the class members;  and

    g.    Whether JetBlue unlawfully enriched itself at the expense of the class.

**C.**    **Typicality**

64.    Plaintiff's claims are typical of the putative class members' claims because of the similarity, uniformity, and common purpose of JetBlue's unlawful conduct. Plaintiff, like all class members, was damaged through his payment of money that JetBlue deceptively presented as a pass-through charge to the insurance company, when in fact JetBlue enriched itself in this process.

65.    Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of JetBlue's wrongful and deceptive conduct.

**D.**    **Adequacy**

66.    Plaintiff will fairly and adequately protect and represent the interest of each member of the class because she has suffered the same wrongs as the class members.

67.    Plaintiff is fully cognizant of her responsibilities as class representative and has retained León Cosgrove, LLP to prosecute this case. León Cosgrove, LLP is experienced in

complex class action litigation, including litigation related to unfair and deceptive trade practices, and has the financial and legal resources to meet the costs of and understand the legal issues associated with this type of litigation.

68.     Class action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein because such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

**E.      The Prerequisites of Rule 23(b)(2) Are Satisfied.**

69.     The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) exist as JetBlue has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and equitable relief with respect to the class as a whole.

70.     JetBlue's actions are generally applicable to the class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the class as a whole.

**F.      The Prerequisites of Rule 23(b)(3) Are Satisfied.**

71.     The questions of law and fact enumerated above predominate over questions affecting only individual members of the class, and a class action is the superior method for fair and efficient adjudication of the controversy.

72.     The likelihood that individual members of the class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation.

73. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class. Plaintiff knows of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

74. Plaintiff re-alleges paragraphs 1 through 73 as if fully set forth herein and further alleges the following.

75. This count is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

76. At all times material, Plaintiff and all members of the class were consumers within the meaning of Section 501.203, Fla. Stat., and are entitled to relief under FDUTPA in accordance with Section 501.211, Fla. Stat.

77. At all times material, JetBlue conducted trade and commerce within the meaning of Section 501.203, Fla. Stat.

78. JetBlue has engaged in unlawful schemes and courses of conduct through one or more of the unfair and deceptive acts and practices alleged above.

79. The misrepresentations and deceptions, and concealment and omissions of material facts, alleged in the preceding paragraphs occurred in connection with JetBlue's trade and commerce in Florida.

80. JetBlue's unfair and deceptive acts and practices violate FDUTPA, Sections 501.201 and 501.211, Fla. Stat.

81. As a direct and proximate result of JetBlue's FDUTPA violations, Plaintiff and the class have been damaged in an amount to be proven at trial. Plaintiff and the class have a monetary, out of pocket loss, as they paid money to JetBlue as a result of its deceptive conduct.

LEÓN COSGROVE, LLP
255 ALHAMBRA CIR. | SUITE 800 | CORAL GABLES, FL 33134 | T 305.740.1975 | WWW.LEONCOSGROVE.COM

82. Plaintiff and the class are entitled to actual damages, declaratory and injunctive relief, attorneys' fees and costs, and all other remedies available under FDUTPA.

## COUNT II
## UNJUST ENRICHMENT

83. Plaintiff re-alleges paragraphs 1 through 73 as if fully set forth herein and further alleges the following.

84. This is a count for unjust enrichment.

85. Plaintiff and each member of the class conferred a direct benefit on JetBlue through their payment for trip insurance, allowing JetBlue to enrich itself to the detriment of the class.

86. JetBlue appreciated, accepted, and retained this benefit, as it garnered substantial profits by virtue of its insurance kickback scheme.

87. Under the circumstances, it would be unjust and inequitable to allow JetBlue to retain this benefit, as it was obtained through deceptive representations.

88. Independently, it would also be unjust and inequitable to allow JetBlue to retain this benefit because JetBlue is not legally entitled to receive commissions for sales of trip insurance in the first place because it does not have a license to broker insurance.

89. Plaintiff and the class suffered damages as a result of JetBlue's unjust enrichment.

## **PRAYER FOR RELIEF**

Named Plaintiff and the plaintiff class request the following relief:

a. Certification of the class;

b. A jury trial and judgment against JetBlue;

c. An order requiring JetBlue to make full disclosure to consumers of its receipt or retention of trip insurance premiums sold on its website and the amount of the kickback it retains or receives;

d. The costs of suit, including reasonable attorneys' fees, in accordance with FDUTPA;

e. General, actual, and compensatory and exemplary damages in an amount to be determined at trial;

f. Restitution of the amount JetBlue was unjustly enriched as a result of the wrongs alleged herein, in an amount to be determined at trial;

g. Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law; and

h. Such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: September 17, 2018　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*/s/ Alec H. Schultz*
　　　　　　　　　　　　　　　　　　　　　Scott B. Cosgrove
　　　　　　　　　　　　　　　　　　　　　　Fla. Bar No. 161365
　　　　　　　　　　　　　　　　　　　　　Alec H. Schultz
　　　　　　　　　　　　　　　　　　　　　　Fla. Bar No. 35022
　　　　　　　　　　　　　　　　　　　　　John R. Byrne
　　　　　　　　　　　　　　　　　　　　　　Fla. Bar No. 126294
　　　　　　　　　　　　　　　　　　　　　Jeremy L. Kahn
　　　　　　　　　　　　　　　　　　　　　　Fla. Bar No. 105277
　　　　　　　　　　　　　　　　　　　　　LEÓN COSGROVE, LLP
　　　　　　　　　　　　　　　　　　　　　255 Alhambra Circle, Suite 800
　　　　　　　　　　　　　　　　　　　　　Coral Gables, Florida 33134
　　　　　　　　　　　　　　　　　　　　　Tel:    305.740.1975
　　　　　　　　　　　　　　　　　　　　　Email: scosgrove@leoncosgrove.com
　　　　　　　　　　　　　　　　　　　　　Email: aschultz@leoncosgrove.com
　　　　　　　　　　　　　　　　　　　　　Email: jbyrne@leoncosgrove.com
　　　　　　　　　　　　　　　　　　　　　Email: jkahn@leoncosgrove.com

　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff and the Class*