UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 18-cv-62193-SMITH/VALLE

MILITA BARBARA DOLAN, on behalf of
herself and all others similarly situated,

    Plaintiffs,

               **CLASS ACTION**

  vs.

JETBLUE AIRWAYS CORPORATION,

    Defendant.

_____/

**DEFENDANT JETBLUE AIRWAYS CORPORATION'S
OPPOSITION TO PROPOSED INTERVENOR AND PUTATIVE CLASS
MEMBER PATRICIA D'ORSA-DIJAMCO'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BRIEF FACTUAL BACKGROUND RELATING TO THIS MOTION ......................... 2

    A.    PROPOSED INTERVENOR'S COUNSEL KNEW THAT PLAINTIFF MILITA DOLAN
    LACKED STANDING BEFORE THE LAWSUIT WAS FILED ............................................. 2

    B.    JETBLUE RAISED PLAINTIFF'S PRE-RETENTION COMMUNICATIONS IN ITS INITIAL
    RULE 26 DISCLOSURES LONG BEFORE THE OPPOSITION TO CLASS CERTIFICATION
    WAS FILED ............................................................................................................ 4

    C.    CLASS CERTIFICATION AND MOTION TO INTERVENE ............................................. 5

III.  ARGUMENT ........................................................................................ 6

    A.    BECAUSE PLAINTIFF NEVER HAD STANDING THE PROPER OUTCOME IS DISMISSAL
    OF THE CASE, NOT INTERVENTION ......................................................................... 6

        1.    Plaintiff Lacks Standing Because She Bought the July 2017 Insurance
        with Knowledge of the Alleged Wrong ..................................................... 6

        2.    Dismissal Is Also Appropriate Because the Prosecution of a Class Action
        with a Secretly Ineligible Plaintiff Should Not Be Rewarded ................... 9

    B.    BEFORE EVEN REACHING THE RULE 24 ANALYSIS, THE MOTION SHOULD BE
    DENIED BECAUSE PROPOSED INTERVENOR HAS NOT SHOWN SHE HAS STANDING
    EITHER ................................................................................................................ 10

    C.    THE MOTION IS UNTIMELY UNDER RULE 24 ....................................................... 12

        1.    Proposed Intervenor Has Not Provided Evidence of Timeliness ............. 12

        2.    The Motion Is Untimely Because Leon Cosgrove's Knowledge is Imputed
        to Its New Client ..................................................................................... 13

    D.    PROPOSED INTERVENOR HAS NO RIGHT TO INTERVENE UNDER RULE 24(A) ........ 15

        1.    Proposed Intervenor fails to establish an interest in the lawsuit ............. 15

        2.    Proposed Intervenor fails to admit that Plaintiff is inadequate ................ 16

    E.    PROPOSED INTERVENOR'S MOTION UNDER RULE 24(B) SHOULD ALSO BE DENIED
    .......................................................................................................................... 18

IV.   CONCLUSION .................................................................................... 20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Almeida v. Google, Inc.*,
  2009 WL 3809808 (N.D. Cal. Nov. 13. 2009) ............................................................6, 7, 15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................................11

*Beauregard, Inc. v. Sword Services LLC*,
  107 F.3d 351 (5th Cir. 1997) .........................................................................................20

*Birmingham Steel Corp. v. Tenn. Valley Auth.*,
  353 F.3d 1331 (11th Cir. 2003) ..................................................................................7, 19

*Bonner v. City of Prichard*,
  661 F.2d 1206 (11th Cir.1981) ........................................................................................7

*Bowe v. Public Storage*,
  106 F. Supp. 3d 1252 (S.D. Fla. 2015) ..........................................................................11

*Carroll v. Am. Fed'n of Musicians*,
  33 F.R.D. 353 (S.D.N.Y 1963) ......................................................................................17

*Chambers v. N. Am. Co. for Life & Health Ins.*,
  2016 WL 7427333 (S.D. Iowa June 13, 2016) ...............................................................19

*Clark v. Putnam Cty*,
  168 F.3d 458 (11th Cir. 1999) .......................................................................................18

*In re Cmty. Bank of N. Va.*,
  418 F.3d 277 (3d Cir. 2005).............................................................................................16

*Cotterall v. Paul*,
  755 F.2d 777 (11th Cir.1985) ........................................................................................19

*Donoff v. Delta Air Lines, Inc.*
  Case 9:18-cv-81258-DMM .............................................................................................9

*In re Engle Cases*,
  767 F.3d 1082 (11th Cir. 2014) .......................................................................................8

*Fla. Pediatric Soc. v. Sec'y of Fla. Agency for Health Care Admin.*,
  2008 WL 4072805 (S.D. Fla. July 30, 2008)..........................................................7, 9, 13, 17

*Foster v. Center Township of LaPorte County*,
    798 F.2d 237 (7th Cir. 1986) ..................................................................6, 15

*Gastaldi v. Sunvest Resort Cmtys., LC*,
    709 F. Supp. 2d 1299 (S.D. Fla. 2010) ...................................................11

*Green v. U.S.*,
    2008 WL 508675 (N.D. Okla. Feb. 22, 2008) .........................................9

*Griffin v. Singletary*,
    17 F.3d 356 (11th Cir. 1994) .....................................................................11

*Guetzko v. KeyBank Nat'l Ass'n*,
    2009 WL 482130 (N.D. Iowa Feb. 25, 2009) ..........................................17

*Jaffree v. Wallace*,
    837 F.2d 1461 (11th Cir. 1988) ..................................................................7

*Jones v. United Gas Improvement Corp.*,
    69 F.R.D. 398 (E.D. Pa. 1975)...................................................................17

*Lidie v. State of Cal.*,
    478 F.2d 552 (9th Cir.1973) .......................................................................9

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
    350 F.3d 1018 (9th Cir. 2003) ..............................................................6, 15

*Link v. Wabash Railroad Company*,
    370 U.S. 626 (1962)...................................................................................15

*Manship v. Bros.*,
    2012 WL 527352 (E.D. Va. Jan. 11, 2012) ...............................................9

*Prohias v. Pfizer, Inc.*,
    490 F. Supp. 2d 1228 (S.D. Fla. 2007) ....................................................11

*Randall v. Rolls-Royce Corp.*,
    637 F.3d 818 (7th Cir. 2011) ......................................................................9

*Salcedo v. Hanna*,
    2019 WL 4050424 (Aug. 28, 2019)..........................................................11

*Sierra Club, Inc. v. Leavitt*,
    488 F.3d 904 (11th Cir. 2007) ......................................................12, 15, 17

*Smith v. Ayer*,
    101 U.S. 320, 25 L. Ed. 955 (1879).........................................................15

*Smith v. Josten's Am. Yearbook Co.,*
    78 F.R.D. 154 (D. Kan. 1978), *aff'd*, 624 F.2d 125 (10th Cir. 1980) ..................................... 17

*Sosa v. Airprint Systems,*
    133 F.3d 1417 (11th Cir.1998) ............................................................................................ 19

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ........................................................................................................ 11

*State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics*
    *& Neurosurgery, LLC,*
    315 F. Supp. 3d 1291 (S.D. Fla. 2018) ............................................................................... 11

*Stringfellow v. Concerned Neighbors in Action,*
    480 U.S. 370 (1987) ............................................................................................................ 20

*Summit Office Park, Inc. v. U.S. Steel Corp.,*
    639 F.2d 1278 (5th Cir. 1981) ......................................................................................... 7, 8

*Town of Chester, N.Y. v. Laroe Estates, Inc.,*
    137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017) ......................................................................... 11

*Union Cent. Life Ins. Co. v. Hamilton Steel Prod. Inc.,*
    374 F.2d 820 (7th Cir.1967) .............................................................................................. 17

*United Spinal Ass'n v. Heartland Dental,*
    N.D. Ill. Case No. 1:15-cv-05570. .................................................................................. 4, 14

*United States v. Baldwin Cty. Bd. of Educ.,*
    544 F. Supp. 367 (M.D. Ga. 1982) .................................................................................... 16

*U.S. v. Borge,*
    249 F.R.D. 387 (S.D. Fla. 2008) ....................................................................................... 12

*U.S. v. City of L.A.,*
    288 F.3d 391 (9th Cir.2002) .............................................................................................. 17

*U.S. v. Jefferson County,*
    720 F.2d 1511 (11th Cir.1983) .......................................................................................... 12

*Velazquez v. GMAC Mortgage Corp.,*
    2009 WL 2959838 (C.D. Cal. Sept. 10, 2009) ................................................................. 15

*In re Weingarten,*
    492 F. App'x 754 (9th Cir. 2012) ...................................................................................... 17

## Statutes

Fed. R. Civ. P. 11 ..................................................................................................................... 9

Fed. R. Civ. P. 16 ................................................................................................................19

Fed. R. Civ. P. 16(a) ...........................................................................................................19

Fed. R. Civ. P. 16(b) ...........................................................................................................19

Fed. R. Civ. P. 24 ...........................................................................................................10, 12

Fed. R. Civ. P. 24(a) .................................................................................................... *passim*

Fed. R. Civ. P. 24(a)(2) ..................................................................................................15, 17

Fed. R. Civ. P. 24(b) ...........................................................................................................12

Fed. R. Civ. P. 26 .............................................................................................................4, 14

L.R. 7.1(c) ...........................................................................................................................12

Defendant JetBlue Airways Corporation ("JetBlue") opposes the Proposed Intervenor and Putative Class Member Patricia D'Orsa-Dijamco's Motion to Intervene ("Motion to Intervene" or "Motion") as follows:

## I.    INTRODUCTION

The Motion of Proposed Intervenor and Putative Class Member Patricia D'Orsa-Dijamco (hereinafter "Proposed Intervenor") is fatally flawed because she is attempting to take the place of Plaintiff Milita Dolan ("Plaintiff" or "Dolan") who is unable to serve as class representative because she lacks standing.  Plaintiff lacks standing because the law firm she now shares with Proposed Intervenor informed Plaintiff **before** she purchased her trip insurance that "if you paid $25 for it, the $25 did not just go directly to the insurance company, that somehow money was being kicked back to JetBlue."  For that reason, Plaintiff clearly was neither defrauded nor misled as alleged in this lawsuit when she purchased her policy several months later.  Substitution of a new plaintiff is not allowed when the original proponent of the suit lacked standing, and thus the proposed intervention should be rejected.

As a second independently sufficient reason for rejecting the proposed intervention, the Motion cannot qualify as timely because Plaintiff's infirmities as a putative class representative existed and were known to counsel before the lawsuit was even filed. Counsel knew that the policy they were identifying in the Complaint was purchased in July 2017.  **Before** this purchase date, the firm had already informed Plaintiff of the issues they contend were wrong with JetBlue's process and sent her three engagement letters. This is not a "manufactured timeline"—this timeline is evidenced by Leon Cosgrove's own communications with Plaintiff.[1]  Thus, Plaintiff's counsel, whom Proposed Intervenor has now retained and whose knowledge is imputed to her, knew of these facts when they filed the Complaint nearly a year ago.

Third, relief under Rule 24(a) is unavailable because the Motion steadfastly asserts that Plaintiff *is* an adequate class representative. And while the Motion and supporting Declaration

---

[1]  Proposed Intervenor's Introduction includes a strawman argument that "JetBlue has manufactured a 'timeline' that it believes shows that Plaintiff purchased the trip insurance at issue in this case at the direction of a former Leon Cosgrove attorney," *see* Mot. to Intervene, at 1-2, when JetBlue has never made that argument.  Instead, JetBlue presented ample evidence of the crucial fact that Leon Cosgrove educated Plaintiff regarding their "kickback" theory before her July 2017 purchase, as shown, in part, by her testimony and the multiple engagement letters sent to her soliciting her to file a lawsuit against JetBlue.  This demonstrates that Plaintiff was not misled or defrauded into purchasing the trip insurance. In short, this is a manufactured case.

leave open the question of whether Proposed Intervenor has knowingly taken that position herself, she has allowed counsel to take that position in filing this Motion on her behalf with that position. Because no authority exists to support the proposition that a "contingent" Rule 24(a) motion is appropriate, the Motion's assertion that Plaintiff is adequate mandates denial of the Motion under Rule 24(a).

Proposed Intervenor's request for leave to intervene under Rule 24(b) fares no better; she is not prejudiced by not intervening because her Motion argues that Plaintiff **is** adequate. The Proposed Intervenor can file her own case if this Motion is denied and/or Plaintiff is not certified as the class representative. Moreover, even if Proposed Intervenor is allowed to permissively intervene, any such intervention should be conditioned on her entry to the case being "cost free" for JetBlue, i.e., she does not subsequently seek to become a class representative and thereby relieves JetBlue of the unfair expense associated with re-vetting a new class representative and re-briefing class certification as to her.

## II.     BRIEF FACTUAL BACKGROUND RELATING TO THIS MOTION

### A.     <u>Proposed Intervenor's Counsel Knew that Plaintiff Milita Dolan Lacked Standing Before the Lawsuit was Filed</u>

Although this lawsuit was not filed until September 17, 2018, Plaintiff testified that her first discussion regarding suing JetBlue occurred in March 2016, when she first spoke with, and then emailed, former Leon Cosgrove partner John Bosco. *See* Ex. A at 40:2-42:13. Plaintiff later produced a LinkedIn message from Mr. Bosco in July 2016 that stated:

> My firm is working on a new case with the airline industry and I need to identify Florida Residents who have purchased a flight on-line and bought the optional trip insurance as part of the ticket purchase. If you or anyone you know has I would greatly appreciate you letting me know.

Ex. B at DOLAN_000000181. After Plaintiff responded to the effect that she consistently purchases travel insurance, Mr. Bosco wrote her again:

> Thank you Milita. That is very helpful. What [sic] airlines did you purchase the insurance with? Any chance you have the email confirmations or any documentations so we can get you the recovery?

Ex. B at DOLAN_000000182. Plaintiff identified JetBlue and Southwest, but stated that she did not have any documents regarding those purchases. *Id.* Plaintiff also testified that she later spoke with Mr. Bosco in April 2017 and that during her April 2017 discussion with Mr. Bosco he told her that JetBlue was engaged in "fraud":

> Q.    What conversation did you have with Mr. Bosco in April of 2017 regarding JetBlue and travel insurance?
>
> A.    He said that that case now has come up again or, you know, they're pursuing it now.
>
> Q.    And what else did he tell you at that time?
>
> A.    And I said, oh, tell me more.
>
> Q.    And what did he tell you?
>
> A.    He said that there was a problem with the insurance, that it was a fraud problem.
>
> Q.    He told you this in April of 2017?
>
> A.    Yes.
>
> * * *
>
> Q.    In April of 2017, did Mr. Bosco tell you that there was a fraud that was going on?
>
> A.    That's my word. I don't believe he used that word.
>
> Q.    What word did -- what explanation did he use that made you conclude that what he was talking about was a fraud?
>
> A.    A misrepresentation having to do with the insurance.
>
> Q.    And so when he told you about that, what was your reaction?
>
> A.    Really? Tell me more.
>
> Q.    And what did he tell you about it?
>
> A.    That there was something going on with insurance, that how much you paid for it was not all -- if you paid $25 for it, the $25 did not just go directly to the insurance company, *that somehow money was being kicked back to JetBlue*.
>
> Q.    And what further conversation did you have about JetBlue when he told you that?
>
> A.    Would you be interested in being a plaintiff?
>
> Q.    What was your response?
>
> A.    I have to know more about it, but probably.

Ex. A at 44:16-45:3; 46:1-25, emphasis added. This testimony is also consistent with a LinkedIn message that Mr. Bosco sent on April 21, which said:

> . . . . I am following up on our prior conversation. After some delay, the airline trip-insurance matter has picked up. Please let me know if you or anyone you know has purchased trip insurance from an airline in the past 4 years. . . .

Ex. B at DOLAN_000000184. On May 9, Mr. Bosco further inquired, "Also, can you let me know any of the dates you traveled on JetBlue in the past 2-4 years and purchased the travel insurance?" *Id.* at DOLAN_000000155. In a separate email discussion on May 10, Plaintiff informed Mr. Bosco that "I have two flights that I took on JetBlue [in 2014 and 2016]. I am pretty sure I took

out insurance on both these flights." *Id.* at DOLAN_000000167.  Mr. Bosco asked Plaintiff to send him evidence of those purchases.  *Id.* at DOLAN_000000166.  Plaintiff's documents further reflect that on May 12, 2017, Plaintiff sent Mr. Bosco records of JetBlue *flights* she purchased in 2014 and 2016, but not of any *insurance purchases*.  Nonetheless, on May 23, 2017, Mr. Bosco provided her with an engagement letter and wrote:

> We would like to represent you in bringing **the action against JetBlue**.
>
> There would be no cost or risk from [sic] you and my firm would cover expenses.
>
> Attached is an engagement letter.  Please let me know if you have any questions or would like to discuss.

Ex. B at DOLAN_000000068-69 (emphasis added).  Mr. Bosco then followed up twice on the engagement letter in June 2017 emails to Plaintiff.  *Id.*  **It was *after* these calls, emails and engagement letters** that Plaintiff purchased the travel insurance policy that serves as the basis for this lawsuit **_in July 2017_**.  ECF No. 17, Amended Complaint, ¶ 63.

### B.   JetBlue Raised Plaintiff's Pre-Retention Communications in Its Initial Rule 26 Disclosures Long Before the Opposition to Class Certification Was Filed

In its Rule 26 Disclosure, JetBlue identified Leon Cosgrove attorneys, Tiffany Anderson and James Bryan, who were the attorneys of record for Milita Dolan in *United Spinal Ass'n v. Heartland Dental*, No. 1:15-cv-05570 (N.D. Ill.) (Ex. C.)  In that disclosure, JetBlue anticipated that these Leon Cosgrove attorneys would have information regarding "Pre-retention contact with Plaintiff regarding lawsuits against airlines involving the purchase of travel insurance."  *Id.*  Even though Plaintiff and her counsel were notified that JetBlue would fully explore that issue, and Leon Cosgrove's records detailed multiple pre-retention communications that implicated Plaintiff's standing, the deadline to amend or add parties expired on February 11, 2019 without Plaintiff seeking further leave to amend.[2]

Consistent with that inquiry, JetBlue's first set of Interrogatories to Plaintiff inquired about Plaintiff's first interaction with any attorney regarding travel insurance, and learned upon receiving Plaintiff's responses that Leon Cosgrove partner John Bosco, and not Anderson or Bryan, first spoke with Plaintiff about the insurance four months before she bought it:

**Interrogatory No. 14:**

---

[2] Plaintiff has amended once, as of right, while JetBlue's initial motion to dismiss was pending. ECF No. 12 (Motion to Dismiss) and ECF No. 17 (Amended Complaint).

Please identify, by setting forth the name of the attorney and the date on which the communication occurred, the date on which you first discussed your trip insurance purchase with any attorney.

**Response to Interrogatory No. 14:**
With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows. Plaintiff discussed her trip insurance purchase with John Bosco in approximately April of 2017.

(Ex. D.[3])  Thus, long before Plaintiff was deposed or JetBlue's class certification opposition was filed, Plaintiff and her counsel were on notice that their pre-retention communications would be examined.  At that time, JetBlue also asked for all of Ms. Dolan's written communications with Leon Cosgrove, but privilege was asserted as to *all* requested documents.  It was only after Plaintiff testified to the existence of multiple non-privileged communications that a trickle of such documents were produced on the day JetBlue's class certification opposition was due, and then additional Bosco-Dolan communications were produced the following week.

Uncovering the facts regarding Plaintiff's lack of standing has been time consuming and expensive. JetBlue took her deposition, sought the deposition of John Bosco and opposed the motion to quash the subpoena directed to him, sought records from Leon Cosgrove and opposed a motion to quash by the firm and Plaintiff's motion for protective order both relating to that subpoena, as well as spend countless hours securing production of the documents that Plaintiff initially withheld as well as tracking down her other litigation involving the same counsel and/or filed in a proposed class representative capacity.

    **C.**    **Class Certification and Motion to Intervene**

Class certification has been briefed with Plaintiff as the only proposed class representative. *See generally* ECF Nos. 89, 96 and 106.[4]  In opposition to Plaintiff's motion for class certification, JetBlue argued that Plaintiff is an inadequate representative and lacks standing to bring these claims. ECF 96.  Now, after two motions to dismiss, months of discovery requiring numerous motions, and a fully-briefed motion for class certification which is currently pending before this Court, Plaintiff's counsel seeks to represent a purported "intervenor" in the event their current proposed class representative is found inadequate.

---

[3] As post-deposition production reflected, this answer was incorrect as Plaintiff first communicated with Mr. Bosco no later than *July 2016* regarding her travel insurance purchases.
[4] JetBlue also filed a supplement relating to documents produced by Plaintiff after JetBlue's class certification opposition was filed (ECF 104) and Plaintiff filed an amended reply to incorporate documents that Plaintiff only requested by her after receipt of the Opposition. ECF 120.

Proposed Intervenor does not provide any information regarding when she personally became aware of the lawsuit or whether she personally has evaluated whether Ms. Dolan is inadequate. To the contrary, her Motion argues that the current representative *is* adequate.

## III.   ARGUMENT

### A.   Because Plaintiff Never Had Standing The Proper Outcome is Dismissal of the Case, Not Intervention

#### 1.   Plaintiff Lacks Standing Because She Bought the July 2017 Insurance with Knowledge of the Alleged Wrong

This Court should view the Motion to Intervene as a transparent attempt by Plaintiff's counsel to extend their involvement in a case that should never have been filed in Plaintiff's name in the first place.  Plaintiff testified no less than three times that a Leon Cosgrove partner told her their theory that "not all of the money" paid for the trip insurance was being retained by the insurance company, but rather that JetBlue received some, and that this conversation occurred well before her July 2017 purchase giving rise to this suit.  Indeed, the documents finally produced by Plaintiff after her deposition—initially withheld by the same counsel that Proposed Intervenor seeks to have represent her here—showed that Plaintiff's recruitment as a class action plaintiff to sue an airline started *as early as 2016*.  For that reason, it was incumbent upon counsel to ensure that the proposed class representative's claim was premised on a purchase that occurred *before* their sharing of their theory with her rendered her ineligible.  This they failed to do.  Indeed, filing a case where, as here, counsel knows the proposed class representative bought the product at issue *after* being informed of counsel's theory of the case and *after* having been sent three engagement letters, which precludes her from truthfully claiming she was misled in the manner alleged on behalf of members of the putative class, cannot be condoned.

Further, the Motion to Intervene wholly fails to address the fact that JetBlue opposed Plaintiff's motion for class certification in part because Plaintiff lacks standing.  If the Court grants JetBlue's motion for this reason, Proposed Intervenor "cannot step in to save the lawsuit from dismissal."  *See Almeida v. Google, Inc.*, 2009 WL 3809808, at *2 (N.D. Cal. Nov. 13. 2009) ("*Lierboe* stands for the proposition that where the original named plaintiff lacks standing, a new plaintiff with standing cannot step in to save the lawsuit from dismissal."); *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1023 (9th Cir. 2003) (holding lack of standing cannot be cured by amendment to substitute "another [class] representative").  Indeed, courts have held that where the sole named plaintiff "never had standing" and where "she never was a member of the class she

was named to represent," the case must be dismissed.  *Foster v. Center Township of LaPorte County*, 798 F.2d 237, 244–45 (7th Cir. 1986).

Similarly, courts have held that a plaintiff could not amend a complaint to substitute a new plaintiff if the original plaintiff lacked standing. *See Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1284 (5th Cir. 1981)[5]; *Almeida*, 2009 WL 3809808, at \*3 (requiring the current plaintiff "to submit evidence sufficient to create an inference that he has standing" before determining whether the plaintiff could be granted leave to amend to substitute another party as named plaintiff after discovery uncovered that the misleading registration form upon which the claims were based was not implemented until a year after the current plaintiff had submitted his registration form).  In *Summit Office Park*, the court explained that a plaintiff could not amend a complaint to substitute a new plaintiff if the original plaintiff lacked standing because "where a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint and control the litigation by substituting new plaintiffs[.]" 639 F.2d at 1282 ("[s]ince there was no plaintiff before the court with a valid cause of action, there was no proper party available to amend the complaint").  In a subsequent decision, the Eleventh Circuit took a broad view of the holding in *Summit Office Park*, holding that where the original plaintiff's claim was claim precluded, the plaintiff could not amend the complaint to add a new plaintiff.  *Jaffree v. Wallace*, 837 F.2d 1461, 1466 (11th Cir. 1988) (holding that claim preclusion was similar to lack of standing in that both barred a plaintiff from bringing a cause of action).  The same is true here because the same counsel that is representing the current plaintiff is seeking to have another client intervene if the first is inadequate, which is the equivalent of an amendment to substitute a new plaintiff.  Because Plaintiff lacked standing from the outset, there is no viable action for Proposed Intervenor to join.  *Summit Office Park*, 639 F.2d at 1282; *Almeida*, 2009 WL 3809808, at \*3.

Furthermore, Proposed Intervenor in bringing this Motion cites cases where a current plaintiff's ineligibility arose *during the case.  See Birmingham Steel Corp. v. Tenn. Valley Auth.*, 353 F.3d 1331, 1334 (11th Cir. 2003) (Plaintiff Birmingham Steel filed for bankruptcy after certification); *Fla. Pediatric Soc. v. Sec'y of Fla. Agency for Health Care Admin.*, 2008 WL 4072805, at \*4 (S.D. Fla. July 30, 2008) (original six plaintiffs were dismissed while certification

---

[5] The Fifth Circuit decided *Summit Office* on March 19, 1981; in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

was pending for reasons unrelated to standing, and intervention was sought after standing challenge raised for five new individual plaintiffs). Here, Plaintiff lacked standing *from the outset*, and Proposed Intervenor's counsel knew that before they filed a complaint based on Dolan's purchase in July 2017 despite the fact that their own records demonstrated that they sent her engagement letters in April and May, 2017 – three and two months before her purchase. Thus, the issue before the Court is controlled by those cases where leave to amend was denied to cure defects in standing because dismissal of an improperly *filed* case is the only correct outcome. *See Summit Office Park*, 639 F.2d 1278.

In sum, that Plaintiff purchased the policy upon which the Complaint is based after being recruited by counsel and told of the alleged fraud are crucial facts that were known to her and her counsel all along. Most critically, these facts demonstrate that the current plaintiff lacks standing and therefore there is no viable case in which to intervene. *See Id.* at 1282. Simply put—the frailty in the case is due to Plaintiff's and her attorneys' own making.

This is precisely the sort of behavior that justifies denying this Motion brought by counsel Proposed Intervenor shares with Plaintiff. *See, e.g., In re Engle Cases*, 767 F.3d 1082, 1114-15, 1118-19 (11th Cir. 2014) (denying leave to amend to substitute estates in lieu of plaintiffs who had been deceased since before the lawsuits were filed in their name, observing that "[t]he information plaintiffs' counsel needed to file an accurate complaint has been available since before these cases were filed" and holding that "[a]s officers of the court, they were duty bound to inform the court of the information in counsel's complaints that they knew to be false"). And so it is here. Plaintiff's counsel's own files reflect that they sent Plaintiff multiple engagement letters to sue JetBlue in May and June 2017. A complaint was filed in Plaintiff's name alleging that she was typical of the class, and a proper proposed representative and that it was "completely unbeknownst" to purchasers that "JetBlue retains or ultimately receives for itself a portion of the funds for every trip insurance policy its consumers purchase on its website" (ECF No. 1 at ¶ 46) when, in reality, Plaintiff's counsel had told her three months before ***her purchase*** in July 2017 "[t]hat there was something going on with insurance, that how much you paid for it was not all -- if you paid $25 for it, the $25 did not just go directly to the insurance company, that somehow money was being kicked back to JetBlue." Ex. A at 46:1-25. Plaintiff lacked standing because the theory provided to her by her counsel alerted her to the alleged "kickback" before her purchase, thereby preventing her from purportedly being misled or defrauded. The proper outcome under these circumstances

is the dismissal of a case that never should have been filed in her name.

### 2.   Dismissal Is Also Appropriate Because the Prosecution of a Class Action with a Secretly Ineligible Plaintiff Should Not Be Rewarded

In addition, the fact that Proposed Intervenor hired the same counsel as Plaintiff exposes that this is another example of Plaintiff's counsel's practice of filing lawsuits with a placeholder plaintiff solicited by them only to later seek leave to amend to cure known deficiencies with the placeholder plaintiff's adequacy and typicality are uncovered. [6]

However, "[i]ntervention shouldn't be allowed just to give class action lawyers multiple bites at the certification apple, when they have chosen, as should have been obvious from the start, patently inappropriate candidates to be the class representatives." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 827 (7th Cir. 2011) (denial of intervention upheld where "it was obvious from the outset that these named plaintiffs faced a serious challenge to their status as class representatives.") To allow the same counsel to now conditionally seek "intervention" with a new plaintiff to hedge their position in this case after being fully cognizant of Plaintiff's lack of standing would reward potentially sanctionable conduct. *See, e.g.*, *Green v. U.S.*, 2008 WL 508675, at *6 (N.D. Okla. Feb. 22, 2008) (finding that plaintiff's counsel violated Rule 11 for "ignor[ing] obvious jurisdictional problems" including a lack of standing); *Manship v. Bros.*, 2012 WL 527352, at *5 (E.D. Va. Jan. 11, 2012), *report and recommendation adopted*, 2012 WL 527349 (E.D. Va. Feb. 16, 2012) (finding that plaintiff violated Rule 11 by, among other things, "asserting claims he knew he did not have standing to pursue"). Where the original plaintiffs were never qualified to represent the class in the first instance, motions to intervene are an improper "back-door" attempt to salvage the case that need not be granted. *Lidie v. State of Cal.*, 478 F.2d 552, 555 (9th Cir.1973).[7]

---

[6] As discussed in JetBlue's opposition to class certification, the case against Public Storage and Delta were both initially filed with family members of Leon Cosgrove attorneys as the named plaintiffs. After that fact was revealed in each case, they were replaced. In fact, Plaintiff Donoff has now been dropped entirely from the Third Amended Complaint in *Donoff v. Delta Air Lines, Inc.* Case 9:18-cv-81258-DMM (S.D. Fla.), ECF No. 125 at 1.

[7] This case is exactly the same as *Lidie* because Proposed Intervenor is seeking to come into the action *only if* certification is denied because "the original plaintiff[] [is] not qualified to represent the class," whereas the decision in *Fla. Pediatric Soc.*, 2008 WL 4072805, at *4, relied on by Proposed Intervenor, distinguished *Lidie* because no decision on class certification had occurred at the time of intervention. Here, Proposed Intervenor is expressly hinging her intervention request on a denial of class certification due to the current plaintiff's inability to serve as class representative, thereby placing the motion in the same procedural posture as *Lidie*.

Denial of this Motion is also appropriate because the same counsel that fought to obscure Plaintiff's ineligibility due to lack of standing is also the proponent of this Motion.  Undoubtedly, intervention with a replacement plaintiff would not have been sought if Plaintiff's counsel had succeeded in claiming privilege as to all pre-retention communications and had Plaintiff not revealed the truth during her deposition, which damning testimony counsel tried to repair with leading questions on redirect (and which responses to leading questions her attorneys now cite in the class certification reply as "proving" she has standing).  These tactics should not be rewarded.

### B.   Before Even Reaching the Rule 24 Analysis, the Motion Should Be Denied Because Proposed Intervenor Has Not Shown She Has Standing Either

The Court should also summarily reject this Motion because it evidences that Proposed Intervenor lacks standing because she (like Plaintiff) cannot demonstrate an injury-in-fact.  In "adopting" both the Amended Complaint and the motion for class certification (ECF No. 117, Ex. 1, ¶ 8), Proposed Intervenor has adopted another fatal flaw from which Plaintiff's claims suffer— a complete absence of injury-in-fact.  Thus, Proposed Intervenor (like Plaintiff) alleges wholly conclusory to have been injured because the insurance producer's compensation to JetBlue allegedly resulted in higher or inflated policy prices. *Id.* at Ex. C, ¶ 37 ("This results in consumers paying prices for insurance policies that are higher than they would be absent the Defendant's misconduct"), ¶ 106 ("paying higher prices to cover an illegal kickback that Allianz pays to JetBlue"), ¶ 124 ("This results in consumers paying prices for insurance policies that are higher than they would be absent the Defendant's misconduct"). But, like Plaintiff, Proposed Intervenor, has not actually alleged that she could have purchased comparable travel protection for less, nor has Plaintiff been able to adduce any such evidence to support her conclusorily alleged injury-in-fact now that discovery is concluded.  To be sure, fact and expert discovery has confirmed that neither Plaintiff nor her expert (whose theory Proposed Intervenor has adopted) can prove that she paid an inflated price for her insurance policy.  Indeed, Plaintiff's damages model purports to calculate damages based solely on the amount of compensation JetBlue receives from Allianz and not on any supposed higher cost.  *See* ECF No. 89, Ex. 14.

Likewise, Proposed Intervenor does not have any evidence that she would have paid less for her insurance if there was no such compensation.  Nor does Proposed Intervenor offer any evidence that less expensive comparable policies were available to her in the marketplace.  See

generally Proposed Intervenor Declaration.[8]  As recently reinforced by the Eleventh Circuit, when reviewing whether a claim of injury gives rise to standing, the court is "entitled to look past this conclusory recitation [of harm] to the actual factual substance of [the plaintiff's] allegations. *See Salcedo v. Hanna¸* 2019 WL 4050424 (Aug. 28, 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("we are not bound to accept as true a legal conclusion couched as a factual allegation").  Here, because Proposed Intervenor has not demonstrated that she was injured as a result of the insurance producer's compensation of JetBlue, she lacks standing.  All claims asserted in this case require that there be evidence of overpayment, of which there is none.  *Bowe v. Public Storage*, 106 F. Supp. 3d 1252, 1263 (S.D. Fla. 2015) (granting summary judgment to the defendant on the plaintiff's RICO claim due to the lack of any evidence that the price for the insurance policy was "excessive for the value plaintiffs receive"); *Gastaldi v. Sunvest Resort Cmtys., LC*, 709 F. Supp. 2d 1299, 1304 (S.D. Fla. 2010) (measure of damages under FDUTPA is the "benefit of the bargain," which is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties); *see also State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1310 (S.D. Fla. 2018) ("[T]he law is clear that [] FDUTPA recovery depends on whether plaintiffs paid a price premium[.]") (internal quotation marks omitted); *Prohias v. Pfizer, Inc.*, 490 F. Supp. 2d 1228, 1236 (S.D. Fla. 2007) ("Unjust enrichment 'cannot exist where payment has been made for the benefit conferred.'").  Plaintiff and her expert have not—and cannot—provide evidence that she paid more than market price for her insurance, and Proposed Intervenor has adopted the same position.  Where the potential intervenor "stand[s] in no better shoes" than the proposed class representative they are seeking to replace, denial of intervention is appropriate.  *Griffin v. Singletary*, 17 F.3d 356, 359-60 (11th Cir. 1994) (denial of intervention upheld where intervenors, like the original plaintiffs, failed to exhaust the administrative remedies).  The proposed intervention by an equally unharmed individual here—who cannot not meet this threshold standing requirement—serves no legitimate purpose and only seeks to perpetuate a meritless case that

---

[8] In the first case on intervenor standing since *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), the Supreme Court held in *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017), that an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing.  By that same reasoning, an intervenor seeking to replace the only current plaintiff must also have standing.

should not have been filed in the first instance.

    **C.**    <u>**The Motion is Untimely Under Rule 24**</u>

        **1.**    **Proposed Intervenor Has Not Provided Evidence of Timeliness**

Under both Rule 24(a) and Rule 24(b), a proposed intervenor must show that her application to intervene is timely. "[T]imeliness is a threshold factor that must be satisfied before the other factors are considered." *U.S. v. Borge*, 249 F.R.D. 387, 388 (S.D. Fla. 2008). In analyzing the timeliness of the Motion, the Court must consider the chronology leading up to the Motion, as well as the following factors:

> (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene;
> (2) the extent of prejudice to the existing parties as a result of the would-be intervenor's failure to apply as soon as he knew or reasonably should have known of his interest;
> (3) the extent of prejudice to the would-be intervenor if his petition is denied; and
> (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Id.* (citing *U.S. v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir.1983)).

Proposed Intervenor has prevented the Court from even examining the first prong of the analysis as to her own personal knowledge because Proposed Intervenor has not disclosed when she first became aware of the lawsuit, that her purchases were implicated by the proposed class, when she first contacted counsel, and how (or even if) she became aware of the "challenges to adequacy" that made her apply to intervene. Thus, the Motion should be summarily denied for failing to provide this Court with the basic facts of her knowledge necessary to gauge against her claim that "the need to protect the class' interests only became evident upon JetBlue's recent attacks on Plaintiff's adequacy and typicality…." Mot. at 8.[9]

Tellingly, there is nothing in the Declaration of Proposed Intervenor that supports a finding of timeliness. Notably, the Declaration fails to identify:

---

[9] The Court should summarily reject any effort to cure this defect in Proposed Intervenor's reply. Proposed Intervenor's Motion acknowledged her burden to demonstrate timeliness and yet pointedly failed to provide this Court with that necessary evidence in her moving papers. ECF No. 117 at 7-9; *see Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 910 (11th Cir. 2007). *See also* L.R. 7.1(c) ("strictly" limiting reply memorandum to rebuttal of matters raised in the memorandum in opposition).

- When Proposed Intervenor first became aware of the lawsuit;

- When Proposed Intervenor first contacted any attorney regarding the case;

- Whether she first contacted counsel other than Plaintiff's counsel;

- When she first believed that Plaintiff may be inadequate to represent the class;

- Whether she (as opposed to her shared counsel with Plaintiff) has evaluated whether Plaintiff is inadequate, and when;

- Whether she is even aware that her attorneys' interaction with Plaintiff are at the heart of the Plaintiff's inadequacy, and how long she has known that; and

- Whether she has received independent advice about whether the shared counsel presents a conflict.

Indeed, Proposed Intervenor's Declaration, when viewed apart from the moving papers, leads the reader to believe that Proposed Intervenor seeks to intervene regardless of whether Plaintiff is inadequate, which is not the relief sought in the Motion.

Because Proposed Intervenor's Motion fails to show either timeliness or that she made a knowing decision to be a "contingent" intervenor, the Motion should be denied.

### 2. The Motion Is Untimely Because Leon Cosgrove's Knowledge is Imputed to Its New Client

Proposed Intervenor's suggestion that her Motion is timely because Plaintiff's inadequacy was first challenged at the time of class certification, *see* Mot. to Intervene, at 1-2, 8, conveniently ignores the fact that her counsel—whose knowledge is imputed to Proposed Intervenor—knew of Plaintiff's inadequacy before the lawsuit was even filed. Indeed, Plaintiffs inadequacy stems from her communications with this shared counsel ***before the lawsuit was filed***. This case is therefore distinguishable from *Fla. Pediatric Soc.*, 2008 WL 4072805, at *4 where the standing of the original plaintiffs was not at issue. Proposed Intervenor's counsel cannot divorce themselves from that knowledge and claim on behalf of a new client that the Motion is timely.

The evidence of Leon Cosgrove's knowledge, and that it would be a point of contention in the lawsuit, is undeniable. Counsel has known since 2018 when they filed the complaint that they were relying on Plaintiff's July 2017 purchase as the basis of the complaint. ECF No. 1 at ¶¶ 54, 63. And, even more to the point, counsel knew counsel told Plaintiff about the theory of the case

*in advance of* that purchase and that it had sent her multiple engagement letters.[10] Ex. B. Thus, the same counsel that Proposed Intervenor seeks to have represent her should have been aware before the lawsuit was even filed that they were filing the case with an inadequate plaintiff.

As evidenced by the Motion, Proposed Intervenor and her counsel are attempting to blame JetBlue for the timing of her Motion, identifying JetBlue's opposition to Plaintiff's motion for class certification as the trigger for the Motion. (Mot. to Intervene, at 8 ("the need to protect the class' interests only became evident upon JetBlue's recent attacks on Plaintiff's adequacy and typicality").) However, Proposed Intervenor's counsel was aware of the facts before the case was filed, and were on notice that pre-retention communications would be examined from the outset of the case. JetBlue identified the circumstances under which Ms. Dolan came to be a Leon Cosgrove client suing JetBlue as an issue as early as the service of its initial disclosures in November 2018—a full 9 months before this Motion was filed. In the Rule 26 Disclosure, JetBlue identified Leon Cosgrove attorneys who were the attorneys of record for Milita Dolan in *United Spinal Ass'n v. Heartland Dental,* No. 1:15-cv-05570 (N.D. Ill), Tiffany Anderson and James Bryan. Ex. C. Thus, the disclosure of Tiffany Anderson and James Bryan as witnesses with potential knowledge of "Pre-retention contact with Plaintiff regarding lawsuits against airlines involving the purchase of travel insurance" undisputedly put Leon Cosgrove on notice that JetBlue would be inquiring of the firm's pre-filing contact with Plaintiff.

Because Proposed Plaintiff-in-Intervention has retained the *same* counsel as Plaintiff, her counsel's knowledge is imputed to Proposed Intervenor. The Supreme Court has held:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party

---

[10] The Motion to Intervene notes that Leon Cosgrove, and not Robbins Geller, has been at the center of these arguments. *See* Mot. to Intervene, at 2, n. 1. While accurate that none of the evidence points to Robbins Geller being aware of the Bosco-Dolan pre-purchase communications, a proper investigation before becoming co-counsel should have uncovered these same facts (interview of client, review of engagement letter communications versus date of purchase). Furthermore, despite the testimony and documents that came to light, rather than withdrawing as co-counsel, Robbins Geller signed the Motion to Intervene arguing that Plaintiff is an "adequate" class representative and continue to ignore that Plaintiff's pre-retention communications with counsel rendered her unable to assert that she was misled or defrauded.

is deemed bound by the acts of his lawyer-agent and is considered to have
"notice of all facts, notice of which can be charged upon the attorney."

*Link v. Wabash Railroad Company*, 370 U.S. 626, 633–34, n. 10 (1962) (citation omitted)
("[K]eeping this suit alive merely because plaintiff should not be penalized for the omissions of
his own attorney would be visiting the sins of plaintiff's lawyer upon the defendant."); *Smith v.
Ayer*, 101 U.S. 320, 326, 25 L. Ed. 955 (1879) ("The law…considers the principal as affected with
notice of all facts, notice of which can be charged upon the attorney.").

Thus, Proposed Intervenor has failed to carry her burden under either Rule 24(a) or (b)
with respect to establishing the timeliness of her Motion. The Court's analysis can stop here.
However, the Motion to Intervene fails the other requirements of Rule 24(a) and (b) as well.

### D.       Proposed Intervenor Has No Right to Intervene Under Rule 24(a)

To intervene under Rule 24(a)(2) in a federal case filed in this Circuit, an applicant must
show: (1) that the intervention application is timely; (2) that an interest exists relating to the
property or transaction which is the subject of the action; (3) that disposition of the action, as a
practical matter, may impede or impair the ability to protect that interest; and (4) the existing
parties to the lawsuit inadequately represent the applicant's interests. *Sierra Club, Inc.*, 488 F.3d
at 910. As discussed above, this Motion is not timely, and on this ground alone should be denied.
However, Proposed Intervenor fails the other prongs as well.

### 1.       Proposed Intervenor fails to establish an interest in the lawsuit

Proposed Intervenor makes the conclusory assertion that she has satisfied prongs two and
three of this test by the mere fact that this is a putative class action. *See* Mot. to Intervene, at 7.
But Proposed Intervenor fails to address the fact that JetBlue opposed Plaintiff's motion for class
certification in part because Plaintiff lacks standing. If the Court denies certification for this
reason, Proposed Intervenor "cannot step in to save the lawsuit from dismissal." *Almeida v.
Google, Inc.*, 2009 WL 3809808, at *2; *Lierboe v. State Farm Mut. Auto. Ins. Co.*, 1018 at 1023;
*Foster v. Center Township of LaPorte County*, 798 F.2d at 244–45.

Moreover, Proposed Intervenor's presumption that she has an interest in this lawsuit
assumes a certified class—however, she only wants to intervene in this matter *if* the Court *denies*
class certification. Mot. at 2. Absent a certified class, Proposed Intervenor does not have an
interest in this action. *Velazquez v. GMAC Mortgage Corp.*, 2009 WL 2959838, *3 (C.D. Cal.
Sept. 10, 2009) (distinguishing cases allowing substitution after class certification because a

15

certified class acquires a legal status separate from that of the named plaintiffs).  Proposed Intervenor's reliance on *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 298 (3d Cir. 2005) is misplaced because there the court addressed a motion to intervene after the class was already certified.  Here, Proposed Intervenor only asks to intervene if there is no class—but if there is no class, there are no live claims in which she may have an interest.

### 2.    Proposed Intervenor fails to admit that Plaintiff is inadequate

Under Rule 24(a), the Motion is defective on its face because Proposed Intervenor is not committing to her position that Plaintiff is inadequate.  Far from it—she repeatedly argues that Plaintiff is an adequate representative.  The failure to assert in her moving papers that Dolan is an inadequate representative of her interests in the lawsuit are fatal to her request to intervene under Rule 24(a). *See U.S. v. Baldwin Cty. Bd. of Educ.*, 544 F. Supp. 367, 370 (M.D. Ga. 1982) ("the burden of establishing inadequate representation—though the burden 'should be treated as minimal'—remains on the proposed intervenor").

The moving papers also fail to establish that Proposed Intervenor is even aware of the adequacy dispute.  This Court should carefully examine the Motion versus Proposed Intervenor's actual Declaration.  There is no indication whatsoever that Proposed Intervenor has been informed and has evaluated whether Plaintiff is an adequate representative.  Significantly, the portion of the Motion which attempts to argue that Proposed Intervenor is aware of the dispute has no citation to any part of Proposed Intervenor's Declaration:

> Ms. D'Orsa-Dijamco understands that, in connection with Plaintiff's Motion for Class Certification, JetBlue has attacked Plaintiff's adequacy and typicality to serve as a class representative in this action. While Ms. D'Orsa-Dijamco disagrees that Plaintiff is inadequate, she seeks to intervene in this action as a class representative to protect the interests of the putative class should the Court deny the pending Motion for Class Certification based on perceived adequacy or typicality issues.

ECF 117 at 5. Where are the evidentiary citations to Proposed Intervenor's Declaration as to what Proposed Intervenor "understands" and that she "disagrees" with this argument? There are none because her Declaration makes no mention at all to being aware of the challenges to Plaintiff's adequacy, let alone having concluded that Plaintiff is either adequate or inadequate.  Most significantly, Proposed Intervenor's Declaration never states that she read JetBlue's opposition to the motion for class certification, where Plaintiff's standing and other adequacy issues were addressed.  In fact, the only pleadings or other papers that she identifies as having reviewed are

the Amended Complaint and Plaintiff's Motion for Class Certification itself, neither of which would have educated her on these challenges. Proposed Intervenor Declaration at ¶ 8. As a result, the Declaration fails to establish that Proposed Intervenor is even aware of the challenges to Plaintiff's adequacy and her counsel's involvement in same. *Id.* at ¶¶ 1-12.

Moreover, relief under Rule 24(a) is also unavailable because the very fact that Plaintiff and the proposed intervenor share counsel precludes Proposed Intervenor from credibly arguing that the class is not currently adequately represented. *See Sierra Club, Inc.* 488 F.3d at 910 ("(4) the existing parties to the lawsuit inadequately represent the applicant's interests"). Numerous courts have denied relief under Rule 24(a) because the same counsel represents the current plaintiff and the potential intervenor. *See Union Cent. Life Ins. Co. v. Hamilton Steel Prod. Inc.*, 374 F.2d 820, 823 (7th Cir.1967) ("Inadequate representation can hardly be claimed where the same attorneys represent the Union's class representatives and the proposed intervenor."); *In re Weingarten*, 492 F. App'x 754, 756 (9th Cir. 2012) ("Moreover, the [potential intervenors] are represented by the same counsel as [an existing party], indicating that he is 'capable and willing to make' the same arguments that the [potential intervenors] would make if they were permitted to intervene." (quoting *U.S. v. City of L.A.*, 288 F.3d 391, 398 (9th Cir.2002)); *Guetzko v. KeyBank Nat'l Ass'n*, 2009 WL 482130, at *4 (N.D. Iowa Feb. 25, 2009) ("Inadequate representation can hardly be claimed as the same attorney represents both the original plaintiffs and the proposed intervenors." (quoting *Carroll v. Am. Fed'n of Musicians of U.S. and Can.*, 33 F.R.D. 353, 353 (S.D.N.Y 1963))); *Jones v. United Gas Improvement Corp.*, 69 F.R.D. 398, 403 (E.D. Pa. 1975) (intervention under Rule 24(a) inappropriate where potential intervenor had same counsel as party); *Smith v. Josten's Am. Yearbook Co.*, 78 F.R.D. 154, 174 (D. Kan. 1978), *aff'd*, 624 F.2d 125 (10th Cir. 1980) (denying motion for intervention filed after class certification was denied in part because "class counsel is to remain the same") (citation omitted).

Proposed Intervenor relies yet again on *Fla. Pediatric*, 2008 WL 4072805, at *4, to support intervention under Rule 24(a); however, that case involved permissive intervention under Rule 24(b); it does not stand for the proposition that putative class counsel can hedge their bets under Rule 24(a) by making a motion that requires their present client to be inadequate for their present motion to be viable. Proposed Intervenor and her counsel shared with Plaintiff have not—and cannot—cite a single case that condones seeking "contingent" relief under Rule 24(a)(2) with a motion that asserts the present plaintiff *is* claimed to be adequate by the proposed intervenor. Rule

24(a) is not designed for "pleading in the alternative"; seeking to intervene with one foot on either side of the adequacy question is playing fast and loose with the purpose of a Rule 24(a) intervention. Because Proposed Intervenor fails to assert that Plaintiff is inadequate, her Motion under Rule 24(a) must be denied.[11]

### E.        Proposed Intervenor's Motion Under Rule 24(b) Should Also Be Denied

First, there would be no prejudice to Proposed Intervenor if this Motion is denied. She can file her own claim separate from this class action.

Second, contrary to Proposed Intervenor's assertion that her intervention would not prejudice JetBlue, *see* Mot. to Intervene, at 8-9, allowing a new named class representative at this stage of the proceedings would cause JetBlue substantial undue prejudice. As an initial matter, JetBlue has engaged in a good faith effort to conduct discovery at great cost just to uncover that which Proposed Intervenor's counsel knew all along, i.e., that Plaintiff had been informed of their theory of the case *before* she bought the policy identified in the Complaint. Indeed, JetBlue has been threatened with sanctions and having its opposition to class certification struck for daring to bring these facts to light and seeking to further confirm them from the Leon Cosgrove partner responsible for recruiting potential class representatives, who actually spoke with Plaintiff in 2016 and 2017. An intervention at this late stage will only serve to delay the schedule, and will result in substantial additional expenditures of time and money after extensive work (time, effort and expense) to defend against a manufactured case.

Proposed Intervenor's offer to agree to expedited discovery does not remedy or reduce the prejudice to JetBlue. JetBlue would have to perform additional discovery and brief yet another motion for class certification. Indeed, counsel concedes that they are seeking to substitute a new named class representative because JetBlue challenged the adequacy of representation of Plaintiff at the class certification stage. Mot. to Intervene, at 8 ("the need to protect the class' interests only became evident upon JetBlue's recent attacks on Plaintiff's adequacy and typicality"). Proposed Intervenor's motion at this stage in the litigation is particularly prejudicial because it appears

---

[11] Intervention as of right under Rule 24(a) requires the proposed intervenors to come forward with some evidence of inadequacy. *See Clark v. Putnam Cty*, 168 F.3d 458, 461 (11th Cir. 1999) (noting the presumption of adequate representation is "weak; in effect, it merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary"). Here, Proposed Intervenor cannot meet that "weak" burden because she has asserted that Plaintiff *is* adequate rather coming forward with "some evidence" to the contrary.

necessary only as a result of her counsel's misuse of the class action procedure in filing this case with a placeholder plaintiff that counsel had reason to know lacked standing to bring these claims. Indeed, after all the time and expense of exposing Plaintiff's ineligibility, JetBlue should not be forced to perform additional discovery and to respond anew to the motion for class certification.[12]

Finally, because of the further discovery and briefing that would be required, Proposed Intervenor's motion should be denied because it fails to show good cause required to obtain the necessary relief under Rule16(b). *See Chambers v. N. Am. Co. for Life & Health Ins.*, 2016 WL 7427333, at *3 (S.D. Iowa June 13, 2016) ("Courts have…applied the Rule 16(b) 'good cause' standard to motions to intervene."). Indeed, Proposed Intervenor's motion will inevitably require a modification to the Court's scheduling order. Under Federal Rule of Civil Procedure 16, a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(a) (emphasis added). Under Rule 16(b), the good cause inquiry turns on whether the party seeking modification of the pretrial schedule was diligent in attempting to meet the pretrial scheduling order deadlines. *See Sosa v. Airprint Systems*, 133 F.3d 1417, 1418 (11th Cir.1998) ("This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" (quoting Rule 16 advisory committee's note)). Given the late stage of these proceedings—and because Proposed Intervenor has had ample time to seek intervention—there is no basis for a finding of "good cause" to amend the deadline to add a new party at this juncture.[13]

Moreover, unlike intervention as of right, permissive intervention allows this Court to set the terms of the intervenor's participation. *See Columbus-America Discovery Grp.*, 974 F.2d 450, 469 (4th Cir. 1992) ("When granting an application for permissive intervention, a federal district

---

[12] Importantly, the cases cited by Proposed Intervenor that found an abuse of discretion for not allowing intervention involved infirmities that arose **after** the case was filed, or were otherwise unknown. *See Birmingham Steel Corp. v. Tennessee Valley Auth.*, 353 F.3d 1331, 1334 (11th Cir. 2003) (Plaintiff Birmingham Steel filed for bankruptcy after certification, and bankrupt entities were excluded from the class under the Class Notice); *Cotterall v. Paul*, 755 F.2d 777, 780-781 (11th Cir.1985) (where the trial court granted summary judgment against Plaintiff Cotterall because it (erroneously) determined he was an absent class member in a parallel class action and concurrently denied class certification, the trial court should have considered the motions for intervention).

[13] Pursuant to the Scheduling Order, the deadline to amend or join new parties was February 11, 2019, over six months ago. Discovery cutoff was on August 8, 2019. A potential plaintiff-in-intervention was not raised until August 13, 2019.

court is able to impose almost any condition, including the limitation of discovery"); *Beauregard, Inc. v. Sword Services LLC*, 107 F.3d 351, 352 n.2 (5th Cir. 1997) ("It is undisputed that virtually any condition may be attached to a grant of permissive intervention.").  In fact, even highly restrictive conditions may be appropriately placed on a permissive intervenor, because such a party has by definition neither a statutory right to intervene nor any interest at stake that the other parties will not adequately protect or that it could not adequately protect in another proceeding. *Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 382 n.1 (1987) (Brennan, J., concurring).

If the Court concludes that permissive intervention is appropriate, this motion should be granted only on the condition that the intervenor does not seek appointment as class representative. If she has failed to make the requisite showing under Rule 24(a), then there is no hardship caused by this condition and it will save JetBlue the burden and expense of investigating her typicality and adequacy, including her background, prior lawsuits, connections to counsel, awareness of the other airline-travel insurance lawsuit that were pending when she purchased her insurance in 2017, and will eliminate any need to re-brief class certification as to a different class representative.

## IV.    CONCLUSION

For the reasons discussed above, the Motion to Intervene should be denied in its entirety.

# Exhibit A

1                    UNITED STATES DISTRICT COURT

                     SOUTHERN DISTRICT OF FLORIDA

2                    FORT LAUDERDALE DIVISION

3                    No. 18-cv-62913-RNS

4    MILITA BARBARA DOLAN on behalf

     of herself and all others

5    similarly situated,

6                    Plaintiffs,

7    vs.

8    JETBLUE AIRWAYS CORPORATION,

9

                     Defendant.

10   _____/

11                            3350 Southwest 148th Avenue

                              Miramar, Florida

12                            June 18, 2019

                              9:58 a.m. - 5:09 p.m.

13

14

15            VIDEO DEPOSITION OF MILITA BARBARA DOLAN

16

17        Taken before SUZANNE VITALE, R.P.R., F.P.R.

18   and Notary Public for the State of Florida at Large,

19   pursuant to Notice of Taking Deposition filed in the

20   above cause.

21

22

23

24

25   Pages 1-250

                                                    Page 1

App. 002

**Page 2**

```
1   APPEARANCES:
2
    On behalf of Plaintiffs:
3
    LEON COSGROVE
4   255 Alhambra Circle
    Suite 800
5   Coral Gables, Florida 33134
    BY:  JOHN R. BYRNE, ESQ.
6
7   On behalf of Defendant:
8   WINSTON & STRAWN, LLP
    333 S. Grand Avenue
9   38th Floor
    Los Angeles, California 90071
10  BY:  GAYLE I. JENKINS, ESQ.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
1    Thereupon the following proceedings were had:
2        THE VIDEOGRAPHER:  Good morning.  We're on
3    the record.
4        We're here to take the videotaped
5    deposition of Milita Barbara Dolan in the
6    matter of Dolan versus JetBlue Airways
7    Corporation.  We're at 3350 Southwest 148th
8    Avenue in Miramar, Florida.
9        The date is June 18, 2019.  It's 9:58 a.m.
10   The court reporter is Suzanne Vitale.  I'm
11   Steve Wolf, the videographer with Veritext.
12   As I said, we're on the record.
13       Counsel, please state your appearances for
14   the record.
15       MS. JENKINS:  Good morning.  Gayle Jenkins
16   on behalf of defendant, JetBlue Airways.
17       MR. BYRNE:  Good morning.  John Byrne on
18   behalf of the plaintiff, Milita Dolan.
19       THE WITNESS:  Milita Dolan.
20   Thereupon
21       MILITA DOLAN
22   a witness named in the notice heretofore filed,
23   being of lawful age and having been first duly
24   sworn, testified on her oath as follows:
25       THE WITNESS:  I do.
```

**Page 3**

```
1
2              I N D E X
3
   Examination                        Page
4  Direct    By Ms. Jenkins              5
   Direct    By Mr. Byrne              234
5  Redirect  By Ms. Jenkins            242
   Redirect  By Mr. Byrne:             245
6            DEFENSE EXHIBITS
7  No.                                Page
8  Exhibit 45  Plaintiff's Responses and  28
             Objections to Defendant
9            JetBlue Airways First Set of
             Requests for Production
10 Exhibit 46  Bates No. AGA010942 - 62    69
   Exhibit 47  Bates No. AGA010864 - 95    73
11 Exhibit 48  DOLAN_000000001 - 2        89
   Exhibit 49  DOLAN_000000003 - 4        94
12 Exhibit 50  DOLAN_00000020 - 15       113
   Exhibit 51  AGA010895 - 918          118
13 Exhibit 52  AGA010919 - 941          144
   Exhibit 53  DOLAN_000000005 - 09     149
14 Exhibit 54  Insurance Quote          165
   Exhibit 55  Plaintiff's Response to  176
15           Defendant's First Set of
             Interrogatories
16 Exhibit 56  Nationwide Class Action   187
             Complaint
17 Exhibit 57  Exhibit A Court's         191
             Interrogatories to
18           Individual Plaintiffs
   Exhibit 58  Notice of Settlement      192
19 Exhibit 59  Website Terms and Conditions 212
   Exhibit 60  Plaintiff's Response and  220
20           Objections to First Set of
             Requests for Admissions
21
22
23
24
25
```

**Page 5**

```
1        DIRECT EXAMINATION
2    BY MS. JENKINS:
3        Q.  Good morning.  Even though you've already
4    stated your name on the record, could you please
5    state it again and spell your last name?
6        A.  So it's Milita Dolan.  And you spell it
7    D-O-L-A-N.
8        Q.  Have you been known by any other name?
9        A.  Yes.
10       Q.  What other names have you been known by?
11       A.  Milagros.
12       Q.  I'm sorry?
13       A.  Milagros, M-I-L-A-G-R-O-S.  That was may
14   birth name.
15       Q.  Has it legally been changed to Milita?
16       A.  Yes.
17       Q.  When did that occur?
18       A.  In the '80s.
19       Q.  Have you been known by any other last name
20   than Dolan?
21       A.  Yes.
22       Q.  What other last names?
23       A.  My maiden name is Echevarria,
24   E-C-H-E-V-A-R-R-I-A.
25       Q.  Until what year were you known by that
```

2 (Pages 2 - 5)

1  anything about JetBlue.
2      Q.  And texting with who?
3      A.  John Bosco.
4      Q.  So you text with John Bosco?
5      A.  Yes.
6      Q.  For how long have you had a texting
7  relationship, shall we say, with Mr. Bosco?
8      A.  Probably two years.
9      Q.  Did you start first texting with Mr. Bosco
10  in relation to the Heartland Dental case?
11      A.  I believe so.
12      Q.  Did you download your texts with
13  Mr. Bosco?
14      A.  No.
15      Q.  Did you have any e-mails with Mr. Bosco?
16      A.  Yes.
17      Q.  How many e-mails with Mr. Bosco have you
18  had?
19      A.  At least 30.
20      Q.  Did you collect those and turn those over
21  to counsel?
22      A.  Yes.
23          MS. JENKINS:  John, it was mentioned
24      yesterday in our communications between you and
25      I, it is my intent to hold the deposition open
Page 38

1      A.  Could you repeat the question?
2      Q.  What month in 2016 did you first have
3  contact with Mr. Bosco regarding JetBlue?
4      A.  I believe it was March.
5      Q.  March of 2016?
6      A.  Yeah.
7      Q.  And do you recall that because there was
8  an e-mail in March of 2016?
9      A.  Yes.
10      Q.  At the time that you e-mailed with
11  Mr. Bosco in March of 2016, was it an e-mail that he
12  initiated to you?
13      A.  Yes.
14      Q.  What did that e-mail say?
15      A.  It was -- before that, all we were
16  communicating about was the dental offices and the
17  accessibility of these dental offices.
18          And then he said that there was -- have I
19  ever taken a flight and, you know, purchased the
20  insurance?  And I said, yes.
21          He said, any of those flights with
22  JetBlue or Spirit or Southwest.
23      Q.  And this is in an e-mail chain in March of
24  2016?
25      A.  Yes.
Page 40

1  until we have the privilege log that your
2  office is to prepare regarding those
3  communications.
4          MR. BYRNE:  I understand your position.
5  I'm not going to agree to it as of now, but I
6  understand that's your stated position for the
7  record.
8  BY MS. JENKINS:
9      Q.  How many of your 30 e-mails with Mr. Bosco
10  were about the JetBlue lawsuit?
11      A.  The JetBlue?  Ten.
12      Q.  What was the earliest e-mail that you had
13  with Mr. Bosco regarding JetBlue?
14      A.  2016.
15      Q.  Do you recall what month in 2016?
16      A.  Can I refer to a timeline?
17      Q.  Do you have something you've prepared to
18  help you with today?
19          MR. BYRNE:  I'll instruct you not to
20      answer for any attorney/client materials.
21          THE WITNESS:  Okay.
22  BY MS. JENKINS:
23      Q.  If you're not allowed to reference a
24  timeline that you have prepared with your counsel,
25  are you able to answer that question?
Page 39

1      Q.  And what did you tell Mr. Bosco in
2  response to that inquiry?
3      A.  Yes, that I had flown JetBlue.  And, yes,
4  I had taken out insurance.
5      Q.  What did Mr. Bosco say in response?
6      A.  Do you have any proof of that?
7      Q.  And did you go look for proof?
8      A.  Yes.
9      Q.  Did you find any?
10      A.  Yes.
11      Q.  Did you provide that to him in March of
12  2016?
13      A.  Yes.
14      Q.  What happened next?
15      A.  Not much.  I gave him some of the -- you
16  know, the JetBlue reward, the tally of, you know,
17  where I've traveled.  And we did not discuss it
18  again for -- not until, I think, almost '18, 2018.
19      Q.  So in March of 2016, when you were
20  discussing this with Mr. Bosco, did he tell you why
21  he was asking?
22      A.  He said there was just an insurance --
23  there's something wrong with -- no.  JetBlue and
24  insurance.  That's basically -- it was very cut and
25  dry.  I didn't -- he didn't go into it, and all I
Page 41

11 (Pages 38 - 41)

App. 004

1 could tell him was that I found that piece of -- a
2 credit card bill that showed that I had flown in
3 2013 with JetBlue and purchased the insurance.
4 Q. Did you provide him any information about
5 the fact that you made a claim?
6 A. Yes, I did mention to him that -- and I
7 said, well, I didn't have any bad experience. I
8 made a claim. So I told him that.
9 Q. So did you have a phone call with him as
10 well or just an e-mail exchange in 2016?
11 A. No, both.
12 Q. Was the phone call after the e-mail?
13 A. No. The phone call was before the e-mail.
14 Q. So it was first a phone call where you
15 were talking about Heartland Dental and then he
16 asked you whether or not you had --
17 A. Exactly.
18 Q. I'm sorry.
19 Whether or not you had flown JetBlue or
20 Spirit or Southwest and purchased travel insurance?
21 A. Yes.
22 Q. And when you had this conversation with
23 him, did he tell you what he thought the problem was
24 with JetBlue and travel insurance?
25 A. No.

Page 42

1 insurance when I fly.
2 Q. So it's your recollection that it's your
3 practice to always purchase the travel insurance?
4 A. Yes.
5 Q. When you went back through your travel
6 records, did you find that to be true?
7 A. Yes, except for one flight.
8 Q. So you had this conversation with
9 Mr. Bosco in March of 2016.
10 When was the next time that you had any
11 contact with Mr. Bosco regarding JetBlue?
12 A. Not until much, much later, like almost a
13 year later.
14 Q. Was that in April of 2017?
15 A. Yes.
16 Q. What conversation did you have with
17 Mr. Bosco in April of 2017 regarding JetBlue and
18 travel insurance?
19 A. He said that that case now has come up
20 again or, you know, they're pursuing it now.
21 Q. And what else did he tell you at that
22 time?
23 A. And I said, oh, tell me more.
24 Q. And what did he tell you?
25 A. He said that there was a problem with the

Page 44

1 Q. Did you ever have a discussion with him,
2 prior to your purchase in July of 2017, about what
3 he thought the problem was with JetBlue and travel
4 insurance?
5 A. But in a very Cliff Note fashion.
6 Q. What do you mean by that?
7 A. It has something to do with insurance. I
8 think, when you hear the term "insurance," you just,
9 like, kind of glaze over. It's kind of a boring
10 subject matter.
11 Q. So you don't recall exactly what he told
12 you?
13 A. No. It was just something JetBlue, and it
14 had to do with insurance. That's all I remember.
15 Q. Did he ask you whether or not you intended
16 to fly again and purchase insurance?
17 A. I think I told him I had it. I was going
18 to go to California.
19 Q. Did he encourage you to purchase the
20 insurance when you did so?
21 A. No.
22 Q. Did you discuss about whether or not you
23 were planning to purchase insurance when you
24 traveled to California?
25 A. I had told him that I always purchase

Page 43

1 insurance, that it was a fraud problem.
2 Q. He told you this in April of 2017?
3 A. Yes.
4 Q. And so when he told you that in April of
5 2017, what was your reaction?
6 A. I might have gotten the time wrong.
7 Q. What's your best recollection as to when
8 you had that conversation with Mr. Bosco and he told
9 you there was a fraud?
10 A. I'm really having trouble remembering if
11 it was -- what year it was.
12 Q. Is there a particular bookmark in your
13 mind as to when it happened, something else that you
14 can place it close to that you know the date of?
15 A. Maybe it was August. I really don't
16 recall. My sequencing of time and space is not as
17 good as it used to be.
18 Q. I'll represent to you that, in your
19 interrogatories, you indicated you had a
20 communication with Mr. Bosco in April of 2017.
21 Does that ring a bell for you?
22 A. Yes.
23 Q. Was it in April of 2017 that you had a
24 discussion with Mr. Bosco about your trip insurance?
25 A. I believe that -- yes.

Page 45

12 (Pages 42 - 45)

Page 46

```
1      Q.   In April of 2017, did Mr. Bosco tell you
2   that there was a fraud that was going on?
3      A.   That's my word.  I don't believe he used
4   that word.
5      Q.   What word did -- what explanation did he
6   use that made you conclude that what he was talking
7   about was a fraud?
8      A.   A misrepresentation having to do with the
9   insurance.
10     Q.   And so when he told you about that, what
11  was your reaction?
12     A.   Really?  Tell me more.
13     Q.   And what did he tell you about it?
14     A.   That there was something going on with
15  insurance, that how much you paid for it was not
16  all -- if you paid $25 for it, the $25 did not just
17  go directly to the insurance company, that somehow
18  money was being kicked back to JetBlue.
19     Q.   And what further conversation did you have
20  about JetBlue when he told you that?
21     A.   Would you be interested in being a
22  plaintiff?
23     Q.   What was your response?
24     A.   I have to know more about it, but
25  probably.
```

Page 47

```
1      Q.   And this conversation was in April of
2   2017?
3      A.   Yes.  To the best of my recollection.
4      Q.   Did you have any written communications
5   with Mr. Bosco after you told him that you were
6   interested in being a plaintiff?
7      A.   Yes.  This is where we found in the
8   e-mails, he kept sending me engagement letters -- I
9   don't know if that was -- can I --
10     Q.   Actually, this is a question I need you to
11  answer before you consult with counsel.
12     A.   I know that he kept sending me engagement
13  letters and I was not responding.
14     Q.   Those were all from Mr. Bosco?
15     A.   Yes.
16     Q.   How many communications did you have with
17  Mr. Bosco in 2017 in relation to JetBlue, if you had
18  to estimate?
19     A.   Ten.
20     Q.   And some of them were before your purchase
21  for your trip?
22     A.   Yes.
23     Q.   So just so that the question is clear.
24         Some of the conversations that you had
25  with Mr. Bosco about JetBlue and the travel
```

Page 48

```
1   insurance occurred before your purchase of travel
2   insurance in July of 2017, correct?
3      A.   Yes.
4      Q.   Did you speak with anyone else at
5   Mr. Bosco's firm before you made your purchase in
6   July of 2017 regarding JetBlue?
7      A.   I do not believe so.
8      Q.   I'm sorry.  Maybe I asked you before.
9          Have you ever met Mr. Bosco in person?
10     A.   No.
11     Q.   And so when you searched your text
12  messages, you determined that none of the text
13  messages between yourself and Mr. Byrne were about
14  JetBlue at all?
15         MR. BYRNE:  Objection, assumes facts not
16  in evidence.
17  BY MS. JENKINS:
18     Q.   I'm sorry.  I said the wrong name.
19         Have you texted with Mr. Byrne?
20     A.   No.
21     Q.   I said Byrne instead of Bosco, right?
22         So let me ask the question again.
23         When you checked your texts with
24  Mr. Bosco, is Mr. Bosco the only person at Leon
25  Cosgrove with whom you've texted?
```

Page 49

```
1      A.   I believe, yes.
2      Q.   So when you reviewed all your texts with
3   Mr. Bosco from the last two years, are you sure that
4   none of them had anything to do with JetBlue?
5      A.   Yes.
6      Q.   Okay.  But you still provided all those
7   texts to counsel so that they could review them as
8   well?
9      A.   Yes.
10     Q.   How did you provide them to them?
11     A.   Looking on the computer.  We did it
12  together.
13     Q.   Who did you do it with?
14     A.   John.
15     Q.   John Byrne?
16     A.   Yes.
17     Q.   When did that occur?
18     A.   Yesterday.
19     Q.   So was there ever a time between -- before
20  May 24th, when the response to the request for
21  production was due, that you looked at your texts
22  between yourself and Mr. Bosco regarding whether or
23  not there were any communications having to do with
24  JetBlue?
25     A.   No.
```

13 (Pages 46 - 49)

1    the TrueBlue printout.
2        Q.   Didn't you testify earlier that when you
3    were looking for e-mails, you found e-mails from
4    both JetBlue and from Allianz?
5        A.   John was able to do a better search than I
6    did.
7        Q.   So the locating of the e-mails that I
8    asked you about, your earlier testimony refers to
9    things that were found yesterday?
10       A.   Yes.
11       Q.   So in your earlier search and the
12   documents that you turned over to counsel prior to
13   the May 24th date that the exhibit was served, no
14   e-mails had been located?
15       A.   No.
16       MS. JENKINS:  So, John, do you have any
17   non-privileged documents that you'd like to
18   turn over today?
19       MR. BYRNE:  Given the timing, no, I do
20   not.  If we make a supplemental production,
21   we'll make a supplemental production.
22       MS. JENKINS:  Will you present the witness
23   again?
24       MR. BYRNE:  Again, I'm not going to agree
25   to do that today, but we can discuss it after

Page 54

1    documents regarding the 2013 trip, correct?
2        A.   I believe I did.
3        Q.   Did you find the 2013 -- documents related
4    to 2013, again, during your search with Mr. Byrne
5    yesterday?
6        A.   Yes.
7        Q.   When you sat down at your computer to
8    conduct a search by yourself in response to the
9    request for production documents served in this
10   case, right, so not what Mr. Bosco was asking you,
11   not with Mr. Byrne with you yesterday, but when you
12   were doing it on your own, did you locate any
13   e-mails?
14       A.   But just related to -- you said not
15   involving John Bosco?
16       Q.   Right.  Not the 2013.
17       A.   Okay.
18       Q.   Unless that was something you found again.
19       A.   Uh-huh.
20       Q.   But I'm asking you, other than the search
21   you did in 2013 relating to Mr. Bosco, and other
22   than what you did today with Mr. Byrne, when you sat
23   down at your computer to find e-mails responsive to
24   the request for production of documents, what
25   e-mails did you locate at that time?

Page 56

1    the deposition.
2    BY MS. JENKINS:
3        Q.   Ms. Dolan, did you actually engage in a
4    search yourself of the e-mails before Mr. Byrne was
5    with you yesterday?
6        A.   Yes.
7        Q.   Okay.  And so when you engaged in a
8    search, what did you look for?
9        A.   I looked for anything that came from
10   JetBlue.  I looked for anything that came from
11   Hotwire.  You know, all my trips -- and I looked
12   through vast numbers of credit card statements from
13   different credit cards.
14       Q.   So you indicated earlier, though, that you
15   told Mr. Bosco about the 2013 trip and actually sent
16   him documents about that.
17       A.   Correct.
18       Q.   Did you find those documents again in your
19   search in response to Exhibit 45?
20       A.   I had it there.  I don't know if -- we
21   didn't just discover that.  That was the original
22   trip that I told him about --
23       Q.   But --
24       A.   -- in 2016.
25       Q.   In 2016, you had actually provided him

Page 55

1        MR. BYRNE:  Objection, asked and answered.
2        THE WITNESS:  I still have to respond?
3        MR. BYRNE:  Yes.
4        THE WITNESS:  Yes, I found documents.
5    BY MS. JENKINS:
6        Q.   How many e-mails did you find at that
7    point?
8        A.   Maybe, three, four, a few.
9        Q.   Who were they from?
10       A.   I believe it was from John.
11       Q.   When you engaged in your own e-mail search
12   in response to the request for production that's
13   attached as Exhibit 45, did you find any e-mails
14   from JetBlue or Allianz?
15       A.   JetBlue.  Allianz, I believe I had one.
16       Q.   And this is something you found before
17   Mr. Byrne helped you yesterday?
18       A.   No, not the Allianz.  I hadn't found that
19   one before.
20       Q.   So right now, I'm really asking you just
21   what you had found before May 24th.
22       A.   Okay.  So it would have been -- like I had
23   stated before, the back-and-forth with John, the
24   JetBlue summary of trips I had taken, and credit
25   card receipts.

Page 57

15 (Pages 54 - 57)

App. 007

1    A.  I've looked at -- I think there was an
2  e-mail I had -- I'm not sure.
3    Q.  Okay.  So when you said that you learned
4  things through discovery, what are you referring to?
5    A.  That there was more than just JetBlue was
6  doing the same sort of practice, that -- about the
7  commissions.
8    Q.  What are you referring to that you've seen
9  that has this information in it?
10    A.  I don't recall.  Obviously, I've seen it
11  somewhere.
12    Q.  Did you see it before the lawsuit was
13  filed or after?
14    A.  After.
15    Q.  What have you reviewed prior to the filing
16  of the lawsuit?
17    A.  Nothing.  I mean, there wasn't anything
18  for me -- well, there was an engagement letter, but
19  I don't even know if I read that, because I had not
20  responded.  That was one of the times when I was
21  really ill.  It was never signed.
22    Q.  And you said there were at least three or
23  four?
24    A.  They sent that three times to me.
25    Q.  And do you recall the date period when the
Page 134

1  first one was sent to you?
2    A.  I would say it's between April and May of
3  2017.
4    Q.  At the time that you first received it,
5  was it directly after you had provided information
6  to Mr. Bosco about your 2013 trip?
7    A.  The only response I got from Mr. Bosco
8  concerning that was thank you for the information.
9    Q.  Was the engagement letter that you
10  received in April or May of 2017 from Mr. Bosco or
11  someone else at the firm?
12    A.  I believe it was Mr. Bosco.
13    Q.  At the time he sent you that engagement
14  letter, did he provide you with any information
15  about what he thought the basis of the claim was,
16  that he was asking you to sign off on?
17    A.  He just asked -- at that point, we weren't
18  communicating.
19    Q.  When you received the engagement letter
20  that you did not return to him --
21    A.  Three times.
22    Q.  Let's stick with the first time.
23    A.  Okay.
24    Q.  When you received the first one, had he
25  shared with you for what purpose he wanted you to
Page 135

1  hire his firm?
2    A.  Yes.
3    Q.  What was that?
4    A.  To participate in the class action suit
5  against JetBlue having to do with, my word now,
6  fraudulent practices and their insurance policies,
7  their travel insurance policy.
8    Q.  This was before you bought the July
9  policy, correct?
10    A.  Yes.
11    Q.  So before you bought the July 2017 policy,
12  Mr. Bosco had already shared with you that he
13  thought there were -- your word is fraudulent -- but
14  practices that he thought that you needed to --
15    A.  Questionable.
16    Q.  Were questionable and needed to be sued
17  about, correct, sued over?
18    A.  Needed to be looked at, yes.
19    Q.  But he hadn't actually articulated to you
20  what he thought the problem with the relationship
21  was?
22    A.  Just the best of my recollection, it was
23  just having to do with insurance and some sort of
24  payment that was not going -- that Allianz was
25  kicking back money on every policy.
Page 136

1    Q.  Did he tell you he knew about that?
2    A.  No.
3    Q.  Did he mention that he had seen documents
4  that supported that?
5    A.  No.
6    Q.  So you agree that, if you already knew
7  about that theory as of your purchase on July 4,
8  2017, that you weren't unaware of that fact at the
9  time you made this purchase?
10    A.  I didn't really think about it.
11    Q.  But you were aware, as of --
12    A.  That there was something going on, but I
13  really was not -- I knew I needed insurance.  This
14  was convenient, and that's what I did.
15    Q.  When was the first time that you formed
16  the belief that you've articulated now, that there
17  should be something different about the way that the
18  policies are sold on the JetBlue website, when did
19  you first form that opinion?
20    A.  I don't know if it was in a discussion
21  or -- it could have been with John just the other
22  day.
23    Q.  So when this lawsuit was filed as of
24  September 2018, what was your understanding as the
25  reason the lawsuit was being filed?
Page 137

35 (Pages 134 - 137)

1  bought the insurance.
2    Q.  And why is that?
3    A.  Because I would feel like I'm being
4  defrauded.
5    MR. BYRNE:  I have no further questions.
6    REDIRECT EXAMINATION
7  BY MS. JENKINS:
8    Q.  Did Mr. Byrne tell you he was going to ask
9  you questions?
10   A.  Yes.
11   Q.  And why did he tell you he needed to ask
12 you some questions?
13   A.  To help with the timeline.
14   Q.  What about the timeline did he say you had
15 gotten wrong?
16   A.  Right now, nothing.
17   Q.  But when you took your first break this
18 morning, when he first said to you we're going to
19 have to do some questions, do you remember that?
20   A.  Yes.
21   Q.  What did he tell you then you had gotten
22 wrong?
23   A.  He didn't say anything that I had gotten
24 wrong.
25   Q.  What did he say he needed to cover with

Page 242

1  complaint should be fixed to identify the 2013
2  policy, correct?
3    A.  To start then.
4    Q.  What else did you cover with Mr. Byrne
5  during the breaks about your testimony?
6    A.  Nothing.  We talked about children.  I saw
7  pictures of his twins.  We talked about Vero Beach,
8  and we waited a long time for food at the Tijuana
9  Flats.
10   Q.  Did you discuss a certain set of questions
11 that he was going to ask you?
12   A.  No.
13   Q.  Did he tell you how many questions he
14 would ask you?
15   A.  No.
16   Q.  Did he cover any of the subject matter of
17 the questions with you?
18   A.  No.  He said that he was not allowed to
19 comment one way or the other because it wouldn't be
20 ethical.  Because I said, how am I doing.
21   Q.  During the first break, though, didn't he
22 tell you that there was some redirect he was going
23 to want to do with you?
24   A.  That we'll clear up things during
25 redirect, I believe he said.

Page 244

1  you to clear up the record?
2    A.  No.  I know that I -- I feel like I had
3  gotten some of the timelines wrong.
4    Q.  Did any of the questions that he asked you
5  have anything to do with the timeline?
6    A.  No.
7    Q.  So when he said he was going to ask you
8  some questions, what did he tell you he needed to
9  fix in your testimony?
10   A.  Well, I believe it was the date, the two
11 thousand -- what I believed was the wrong date,
12 which should have been the 2013 date as opposed to
13 the 2017 date.
14   Q.  Which policy are you suing on?
15   A.  My understanding was the 2013.
16   Q.  And as you sit here testifying right now,
17 it's still your understanding that it's the 2013
18 policy?
19   A.  Well, now it's that and the '17 -- 2013 as
20 well.
21   Q.  What makes you now think it's also based
22 on the 2017 policy?
23   A.  Because you've asked me a whole lot of
24 questions about it.
25   Q.  But you're the one who told me that your

Page 243

1    Q.  Okay.  Didn't he tell you then exactly
2  what areas he wanted to cover?
3    A.  No.
4    Q.  You understand you're under oath, right?
5    A.  Yes.
6    Q.  What, if anything, had Mr. Bosco told you
7  about the relationship between JetBlue and Allianz
8  before you bought your policy in 2017?
9    A.  I believe I've answered that a number of
10 times, but all I know is that there was some sort of
11 problem between the insurance -- that buying the
12 insurance, all your money wasn't going just to the
13 insurance, that there was some sort of problem
14 between JetBlue and the travel insurance.
15   MS. JENKINS:  Thank you.  I have no
16 further questions.
17   MR. BYRNE:  I'll redirect briefly on that.
18   REDIRECT EXAMINATION
19 BY MR. BYRNE:
20   Q.  Ms. Dolan, to clarify, before you bought
21 your travel insurance on July 4, 2017, Mr. Bosco,
22 did he specifically tell you what specifically was
23 wrong with the travel insurance or did he just say
24 there's something with insurance?
25   MS. JENKINS:  Objection, leading.

Page 245

62 (Pages 242 - 245)

**Exhibit B**

 **Milita Dolan**  12:36 PM   ···

Jul 23, 2016
John D. Bosco sent the following
message at 2:52 PM
View John D.'s profile

Status is online
John D. Bosco 2:52 PM


Hi Milita:

I hope you are having a good summer.
My firm is working on a new case with
the airline industry and I need to identify
some Florida residents who have
purchased a flight on-line and bought
the optional trip insurance as part of the
ticket purchase. If you or anyone you
know has I would greatly appreciate you
letting me know. Thank you very much.
John
Jul 26, 2016
Milita Dolan sent the following message
at 7:34 PM
View Milita's profile

Status is online
Milita Dolan 7:34 PM

DOLAN_000000181

Hi John, I myself have bought a number
of tickets on line and have always
purchased the insurance. In addition, I
will ask my friends.
John D. Bosco sent the following
message at 9:08 PM
View John D.'s profile

Status is online
John D. Bosco 9:08 PM


Thank you Milita. That is very helpful.
What airlines did you purchase the
insurance with? Any chance you have the
email confirmations or any
documentations so we can get you the
recovery?
Jul 27, 2016
Milita Dolan sent the following messages
at 11:29 AM
View Milita's profile

Status is online
Milita Dolan 11:29 AM


No I am afraid not. One trip was with
Jetblue and the other was Southwest.
View Milita's profile

DOLAN_000000182

View John D.'s profile

Status is online
John D. Bosco 9:04 AM

Hi Milita,

Congrats on the anniversary! Hope you're doing well.

John D. Bosco
Apr 21, 2017
View John D.'s profile

Status is online
John D. Bosco 11:46 AM

Hi Milita: How is everything with you? I am following up on our previous conversation. After some delay, the airline trip-insurance matter has picked up. Please let me know if you or anyone you know has purchased trip insurance from an airline in the past 4 years. Also, if you have anything that would confirm your prior purchases (southwest or jet blue - credit card line item that would be very helpful) Thank you, John
Nov 26, 2018

DOLAN_000000184

# Redacted

> **Attorney-Client Privilege (unrelated matter)**

Sent from my Verizon, Samsung Galaxy smartphone
-------- Original message --------
From: John Bosco <jbosco@leoncosgrove.com>
Date: 5/9/17 10:50 AM (GMT-05:00)
To: Milita Dolan <militadolan@gmail.com>
Subject: RE: Attorney-Client Privilege

Hi Milita:

> **Attorney-Client Privilege (unrelated matter)**

Also, can you please let me know any of the dates you traveled on Jet Blue in the past 2-4 years and purchased the travel insurance?

Thank you,

John

**John D. Bosco**
León Cosgrove, LLC
8117 Preston Road
Dallas, TX 75225

1

DOLAN_000000155

255 Alhambra Circle – 800
Coral Gables, FL  33134
Assistant Krystal Vasquez
kvasquez@leoncosgrove.com



---

**From:** militadolan [mailto:militadolan@gmail.com]
**Sent:** Wednesday, May 10, 2017 3:04 PM
**To:** John Bosco <jbosco@leoncosgrove.com>
**Subject:** RE: Attorney-Client Privilege (unrelated matter)

Hi John,

# Attorney-Client Privilege (unrelated matter)

I have two flights that I took on JetBlue the first is 11/26/14  to 11/29/14.  I went to Washington DC.  The next flight  was on  9/15/16 to 9 / 21/ 16  to LA. I am pretty certain that I took out insurance on both these flights.

I hope this helps.


Regards,

Milita




Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------

From: John Bosco <jbosco@leoncosgrove.com>

Date: 5/4/17 2:51 PM (GMT-05:00)

To: Milita Dolan <militadolan@gmail.com>

2

# Redacted

---------- Forwarded message ---------
From: **John Bosco** <jbosco@leoncosgrove.com>
Date: Thu, May 11, 2017 at 11:45 AM
Subject: RE: Attorney-Client Privilege (unrelated matter)
To: militadolan <militadolan@gmail.com>


Thank you Milita.   **Attorney-Client Privilege (unrelated matter)**


Yes, that is very helpful about the Jet Blue flights.  All we would need to pursue the claim would be any documentation confirming those purchases.  Would you mind pulling up an old statement on line possibly to show the purchases were made (From a credit card or any method of payment used).  Either that or an email confirmation that was sent after you purchased the tickets.


I don't need any account information or private details.  Everything can be redacted out except date confirming the purchases.


I greatly appreciate it.


John


**John D. Bosco**
León Cosgrove, LLC
8117 Preston Road
Dallas, TX 75225
O 305.740.1985  |  M 214.578.3529
jbosco@leoncosgrove.com

1

DOLAN_000000166

# Redacted

-----Original Message-----
From: John Bosco <jbosco@leoncosgrove.com>
To: DolanFM@aol.com <DolanFM@aol.com>
Sent: Fri, Jun 9, 2017 2:59 pm
Subject: RE: Jet Blue

Hi Milita:

Engagement letter attached for the Jet Blue matter discussed.

## Attorney-Client Privilege (unrelated matter)

Thank you,
John

**John D. Bosco**
León Cosgrove, LLC
8117 Preston Road
Dallas, TX 75225
O 305.740.1985  |  M 214.578.3529
jbosco@leoncosgrove.com
255 Alhambra Circle – 800
Coral Gables, FL  33134
Assistant Krystal Vasquez
kvasquez@leoncosgrove.com
LEÓN | C COSGROVE

**From:** John Bosco
**Sent:** Monday, June 05, 2017 4:01 PM
**To:** DolanFM@aol.com
**Subject:** Re: Jet Blue

Hi Milita:

Do you have any questions on the Jet Blue engagement?

Thanks,
John

On May 23, 2017, at 10:04 AM, John Bosco <jbosco@leoncosgrove.com> wrote:

Hi Milita:

We would like to represent you in bringing the action against Jet Blue.

1

DOLAN_000000068

There would be no cost or risk from you and my firm would cover expenses.

Attached is an engagement letter.  Please let me know if you have any questions or would like to discuss.

Thank you,
John

**John D. Bosco**
León Cosgrove, LLC
8117 Preston Road
Dallas, TX 75225
O 305.740.1985  |  M 214.578.3529
jbosco@leoncosgrove.com
255 Alhambra Circle – 800
Coral Gables, FL  33134
Assistant Krystal Vasquez
kvasquez@leoncosgrove.com
<image001.png>

**From:** DolanFM@aol.com [mailto:DolanFM@aol.com]
**Sent:** Friday, May 12, 2017 3:44 PM
**To:** John Bosco <jbosco@leoncosgrove.com>
**Subject:** Jet Blue

Hi John,
  Attached are my records from Jetblue.  This is all I have.  I hope it helps.

Regards,

Milita

DOLAN_000000069

L E Ó N  LE  C O S G R O V E

May 23, 2017

Milita Dolan
Hollywood, FL

Re:      Representation adverse to JetBlue Airways

Dear Ms. Dolan:

      **1.**      **IDENTIFICATION OF PARTIES.**  This agreement is entered into by and between León Cosgrove, LLC ("Attorneys") and Milita Dolan ("Client").

      **2.**      **LEGAL SERVICES TO BE PROVIDED.**  Attorneys shall represent Client in connection with her class action claims against JetBlue Airways and/or other entities, for damages and injuries related to JetBlue Airways' practices as it relates to its sale of trip insurance (the "Litigation").  Client authorizes Attorneys to pursue this Litigation as a class action and to seek the appointment of Client as a lead plaintiff in the class action, if appropriate.

      **3.**      **CLASS REPRESENTATIVE RIGHTS AND RESPONSIBILITIES.**  To assist in understanding the role of a class representative and/or a lead plaintiff, below is a brief description of Client's responsibilities.  If you have any questions or need clarification regarding these or any other responsibilities, please feel free to contact us at any time.

      a.    **You are suing as a class representative.**  As such, you represent the interests of all class members who have been affected by the challenged conduct.  In this Litigation, the proposed class currently consists of, roughly speaking, all United States residents or consumers who purchased trip insurance on JetBlue Airways' website.

      b.    **Duty as a class representative.**  As a class representative, the court requires that you will fairly and adequately represent the class.  This is your duty.  Here is how you are expected to accomplish that duty:

Page 2

    i. **You must be generally familiar with the Litigation.** This does not mean that you must know every aspect of the Litigation. You should know who the parties are and why you are suing. You should also read the complaint and understand the causes of action. We will keep you informed of all other major events, and this will satisfy your duty. You may and should confer with us at any time you feel it is appropriate to do so.

    ii. **You must vigorously prosecute the Litigation.** This means that you will authorize your Attorneys to do what is necessary to successfully prosecute this Litigation on behalf of the class. You have done so, and we will vigorously pursue the Litigation.

c. **Preservation of documents.** You must preserve all of your documents that are related to this case until it has concluded or until Attorneys inform you otherwise. Those documents include any information that you have, no matter how it is recorded, including not only "paper" records but also e-mail and other types of electronic and computer data that are stored on hard drives, CDs, DVDs, floppy discs, or the like. Those documents also include any records that someone else is keeping for you. If you have any questions about whether certain information should be retained, ask your Attorneys.

d. **Responsibility for costs.** In a class action such as this, Attorneys are permitted to advance the costs of the Litigation and hold Client harmless with regard to these costs. Examples of such costs are: court fees, costs of serving process, expert witness fees, class notice costs, court reporter fees, copying fees and costs awarded to defendants and taxed to plaintiffs or your Attorneys. Attorneys will advance all costs in this Litigation. In the event that we are not successful in obtaining a recovery for the class, the responsibility for these expenses is Attorneys' alone. If we are successful, the costs are typically paid (pursuant to an order from the presiding judge) from any amounts recovered from the defendant.

e. **No special treatment.** You have not been promised any special treatment or compensation beyond that which may be awarded to other class members.

f. **You do not have a duty to investigate or to be an expert.** Defendant may ask you in a deposition what investigation you have undertaken to fulfill your duty as a class representative. You have no such duty personally—this is why you have hired experienced Attorneys. We have conducted a thorough investigation, and you have fulfilled your duty by relying on us to do so. We will and have discussed our investigation with you. Nonetheless, it is a good practice for you to familiarize yourself with the allegations in the complaint, to keep a file on this matter, to read our reports to you, and to stay generally abreast of case developments.

g. **Attorneys' fees.** You will have no responsibility for the payment of any legal fees for the legal representation required to prosecute the Litigation. In a class action, legal fees are typically paid only out of the recovery obtained for the class and then only after notice of the fees requested is sent to the class and a full hearing is held before the court, at which time the court will set the final fee award. Courts have typically awarded approximately 25% to 35% of the total amount recovered for the class as appropriate legal fees plus reimbursement for out-of-pocket expenses incurred by the Attorneys. If there is no recovery for the class, there is no obligation to pay any legal fees. You will be provided

DOLAN_000000071

Page 3

with notice of our fee request, and you will have an opportunity to discuss it with us and object to our request if you choose to do so.

h. **Settlement.**  If this Litigation settles and does not go to trial, the settlement must be approved by the court.  You are entitled to object to the settlement if you do not agree with our recommendation to settle.   We will consult with you before recommending a settlement.

i. **Judicial approval.**  In prosecuting a class action, many of our actions are subject to judicial approval and courts take that approval seriously.  Thus, we are subject to scrutiny that other lawyers, including defendants' counsel, never receive.  This should give you comfort that our actions will be of the highest professional caliber.

j. **Denial of class certification.**  If class certification is denied, Attorneys do not have any obligation to represent you in your individual claims against defendants unless we enter into a separate legal services agreement with you.

k. **Attorneys.** Attorneys shall have the right to associate additional counsel, provided such additional counsel shall be compensated from the attorneys' fees described in paragraphs 3(d) and 3(g), above.

Please review this letter carefully, and raise and discuss with me any questions which you may have.  If this letter accurately reflects your understanding of our attorney-client relationship, please indicate your approval and acceptance by dating and signing a duplicate of the letter and returning it to me.

Again, thank you for the opportunity to represent you.

Sincerely,


Alec H. Schultz, Esq.

**AGREED AND ACCEPTED**


By:   _____
        Milita Dolan

Date:   _____

DOLAN_000000072

# Redacted

-----Original Message-----
From: John Bosco <jbosco@leoncosgrove.com>
To: DolanFM@aol.com <DolanFM@aol.com>
Sent: Fri, Jun 9, 2017 2:59 pm
Subject: RE: Jet Blue

Hi Milita:

Engagement letter attached for the Jet Blue matter discussed.

> ## Attorney-Client Privilege (unrelated matter)

Thank you,
John

**John D. Bosco**
León Cosgrove, LLC
8117 Preston Road
Dallas, TX 75225
O 305.740.1985  |  M 214.578.3529
jbosco@leoncosgrove.com
255 Alhambra Circle – 800
Coral Gables, FL  33134
Assistant Krystal Vasquez
kvasquez@leoncosgrove.com



---

**From:** John Bosco
**Sent:** Monday, June 05, 2017 4:01 PM
**To:** DolanFM@aol.com
**Subject:** Re: Jet Blue

Hi Milita:

Do you have any questions on the Jet Blue engagement?

Thanks,
John

On May 23, 2017, at 10:04 AM, John Bosco <jbosco@leoncosgrove.com> wrote:

> Hi Milita:
>
> We would like to represent you in bringing the action against Jet Blue.

1

DOLAN_000000068

# Redacted

-----Original Message-----
From: John Bosco <jbosco@leoncosgrove.com>
To: DolanFM@aol.com <DolanFM@aol.com>
Sent: Fri, Jun 9, 2017 2:59 pm
Subject: RE: Jet Blue

Hi Milita:

Engagement letter attached for the Jet Blue matter discussed.

| **Attorney-Client Privilege (unrelated matter)** |
| --- |

Thank you,
John

**John D. Bosco**
León Cosgrove, LLC
8117 Preston Road
Dallas, TX 75225
O 305.740.1985  |  M 214.578.3529
jbosco@leoncosgrove.com
255 Alhambra Circle – 800
Coral Gables, FL  33134
Assistant Krystal Vasquez
kvasquez@leoncosgrove.com
LEÓN LC COSGROVE

---

**From:** John Bosco
**Sent:** Monday, June 05, 2017 4:01 PM
**To:** DolanFM@aol.com
**Subject:** Re: Jet Blue

Hi Milita:

Do you have any questions on the Jet Blue engagement?

Thanks,
John

On May 23, 2017, at 10:04 AM, John Bosco <jbosco@leoncosgrove.com> wrote:

Hi Milita:

We would like to represent you in bringing the action against Jet Blue.

1

DOLAN_000000068

# Redacted

---------- Forwarded message ---------
From: **Milita Dolan** <militadolan@gmail.com>
Date: Fri, Jan 26, 2018 at 4:09 PM
Subject: Flights
To: John Bosco <Jbosco@leoncosgrove.com>

Hi John,

  I am sorry for the delay of your requests.  I am having some medical issues and have a surgery scheduled for  Feb. 15th.

I have attached some info on my recent travels as requested.

> # Attorney-Client Privilege (unrelated matter)

Regards,

Milita B. Dolan

1

DOLAN_000000162

# My Booking

## You're all set to jet!

ITINERARY OPTIONS

## Confirmation code: UAUVIE

## Travelers

### Ms. Milita Barbara Dolan

| Flight | Ticket Number | 2792178961676 |
| | Frequent Flyer | JetBlue - TrueBlue - 3395189672 |
| | Special Request | Need wheelchair, can walk |

| | | FLL ➔ SFO | SFO ➔ FLL |
| --- | --- | --- | --- |
| | Seat | 11A | 11A |
| | Checked bags included | 1 bag | 1 bag |

| Insurance | Trip Protector |

## Your flights

| Fort Lauderdale, FL (FLL) | San Francisco, CA (SFO) | Flight 577 | Fare: Blue Plus |
| Wed Aug 16 2017, **8:51 AM** | Wed Aug 16 2017, **11:49 AM** | JetBlue | Nonstop |
| A321/Mint | | | |

| San Francisco, CA (SFO) | Fort Lauderdale, FL (FLL) | Flight 278 | Fare: Blue Plus |
| Sun Aug 20 2017, **9:57 PM** | Mon Aug 21 2017, **6:37 AM** | JetBlue | Nonstop |
| A321/Mint | | | |

### Fare breakdown

| Passenger Type | Base Fare per person | Taxes & fees per person | Total Fare per person | Number of travelers | Total Fare |
| --- | --- | --- | --- | --- | --- |
| Adult | $345.32 | $54.30 | $399.62 | x1 | **$399.62 USD** |

+ FLL - SFO: Blue Plus details

+ SFO - FLL: Blue Plus details

| | **Total fare:** | **$399.62** USD |

## Extras

DOLAN_000000163

**+ Seats**

| | | |
|---|---|---|
| | **Total Extras:** | **$0.00** USD |

## Travel Insurance

**Policy Number: EUSP2091184947**

**Allianz Global Assistance**

Trip Protector

Travel insurance includes reimbursement for: Trip Cancellation or Interruption; Travel Delay; Lost, Stolen or Damaged Baggage; Baggage Delay; 24-hour traveler assistance

Click here to learn more and read all limitations and policy restrictions price breakdown benefits

**Please watch your email for a confirmation for your insurance.**

| | | |
|---|---|---|
| | **Total Insurance:** | **$25.98** USD |
| | **Charged to Visa ending in 3320** | **$399.62** USD |
| | **Charged to Visa ending in 3320** | **$25.98** USD |
| | **Total** | **$425.60** USD |

DOLAN_000000164

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 18-cv-62193-RNS

MILITA BARBARA DOLAN,
on behalf of herself and all others
similarly situated,

       Plaintiffs,                                      **CLASS ACTION**

vs.

JETBLUE AIRWAYS CORPORATION,

       Defendant.

_____/

## **DEFENDANT'S INITIAL DISCLOSURES**

Defendant, JetBlue Airways Corporation ("JetBlue"), pursuant to Federal Rule of Civil Procedure 26, hereby submits the following initial disclosures based on information reasonably available to it at this time:

### **RESERVATIONS**

1.     JetBlue has moved to dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction and failure to state a claim.  By making these disclosures, JetBlue does not waive any jurisdictional or other defenses.

2.     These disclosures are based upon information reasonably available to JetBlue as of this date. Continuing investigation and discovery may alter these disclosures.  Accordingly, JetBlue reserves the right to amend and/or supplement the information disclosed below if additional information becomes available.

3.     By making these disclosures, JetBlue does not represent that any particular document exists within its possession, custody or control.

4.      These initial disclosures are made without waiver of, or prejudice to, any objections JetBlue may have.  JetBlue expressly reserves all objections, including, but not limited to, objections on the grounds of (a) relevance, (b) attorney-client privilege, (c) the attorney work-product doctrine, (d) any other applicable privilege or protection under federal or applicable state law, (e) undue burden, (f) immateriality, and (g) overbreadth.

5.      JetBlue expressly reserves the right to identify and call as witnesses additional persons other than those listed below, if, during the course of discovery and investigation relating to these actions, JetBlue learns that such additional persons have knowledge of relevant matters.

6.      These initial disclosures are made subject to and without limiting any of the foregoing reservations.

**I.      Rule 26(a)(1)(A)(i)**

| # | Witness | Subject of Information | Contact Information |
|---|---------|------------------------|---------------------|
| 1 | Michael Quiello | The relationship between JetBlue and the travel protection plan provider; the availability of travel protection plans to customers (including Plaintiff) who book JetBlue-operated flights through the JetBlue website; federal regulation of travel insurance as an ancillary service of an air carrier; availability of travel insurance in booking paths of all major domestic airlines and online travel agencies to their customers; the travel protection plan provider's control over the content of the offer box in the booking path; the travel protection provider's control of pricing offered to the customer for the travel protection plan; the circumstances alleged in the Complaint; and JetBlue's defenses | c/o Defendant's attorney |
| 2 | Milita Dolan | Plaintiff's use of JetBlue's services, decision to purchase of travel protection plan, Plaintiff's suitability as a proposed class representative whether Plaintiff has ever made a claim under any policy of insurance she purchased from any travel protection company; the acts she undertook to purchase a travel protection plan from a third | c/o Plaintiff's attorney |

2

| # | Witness | Subject of Information | Contact Information |
|---|---------|------------------------|---------------------|
| | | party on JetBlue's booking path; the circumstances alleged in the Complaint; the damages she contends she incurred, if any; the other members of the putative class as alleged in the Complaint; her ability to represent the interests of the putative class as alleged in the Complaint, and JetBlue's defenses | |
| 3 | James Ackford | Mr. Ackford's use of JetBlue's services, Plaintiff's decision to purchase of travel protection plan, whether Plaintiff or Mr. Ackford has ever made a claim under any policy of insurance purchased from any travel protection company; and facts relevant to JetBlue's defenses | c/o Plaintiff's attorney |
| 4 | Kristian Zamber | Contact with Leon Cosgrove that led to Mr. Zamber being a proposed class representative in an action against an airline | c/o Plaintiff's attorney |
| 5 | Colin Bowe | Contact with Leon Cosgrove that led to Mr. Bowe suing as a proposed class representative in an action against a storage company regarding insurance | c/o Plaintiff's attorney |
| 6 | Jerry Lee Coleman | Contact with Leon Cosgrove that led to Mr. Coleman suing as a proposed class representative in an action against a storage company regarding insurance | c/o Plaintiff's attorney |
| 7 | Tiffany Anderson | Pre-retention contact with Plaintiff regarding lawsuits against airlines involving the purchase of travel insurance | c/o Plaintiff's attorney |
| 8 | James Bryan | Pre-retention contact with Plaintiff regarding lawsuits against airlines involving the purchase of travel insurance | c/o Plaintiff's attorney |
| 9 | AGA Service Co. dba Allianz Global Assistance | JetBlue anticipates that one or more individuals at Allianz have knowledge or information regarding the manner in which Allianz displays its travel insurance offers to customers booking travel on JetBlue-operated flights through the JetBlue website; the relationship between JetBlue and Allianz, the travel protection plans offered by Allianz to customers (including Plaintiff) that | 9950 Mayland Drive, Richmond, VA 23233 |

| # | Witness | Subject of Information | Contact Information |
|---|---------|------------------------|---------------------|
|   |         | book JetBlue-operated flights through the JetBlue website; Allianz's direct collection of insurance premiums from its customers that purchase travel protection plans; Plaintiff's other travel insurance purchases, if any, from Allianz and claims, if any tendered by Plaintiff; the circumstances alleged in the Complaint; and JetBlue's defenses | |

## II.      Rule 26(a)(1)(A)(ii)

| # | Categories of Documents |
|---|-------------------------|
| 1 | Documents reflecting Plaintiff's flight records/ticket records with JetBlue |
| 2 | Documents reflecting JetBlue's agreements with AGA Service Co. regarding AGA's travel protection plan program for purchases made in the JetBlue booking path |
| 3 | Documents reflecting JetBlue's contract of carriage applicable to Plaintiff's purchase regarding which the suit is based |
| 4 | Documents reflecting JetBlue's website's terms and conditions applicable to Plaintiff's purchase regarding which the suit is based |
| 5 | Documents reflecting that pricing and content of offer box in JetBlue booking path is controlled by AGA Service Co. |
| 6 | Documents reflecting that travel protection plans offered by AGA Service Co. to customers purchasing air travel on www.jetblue.com constitute ancillary services of an airline, which are subject to regulation by the Department of Transportation and which may not be regulated by the states pursuant to the Airline Deregulation Act |

## III.      Rule 26(a)(1)(A)(iii)

Not applicable.

## IV.      Rule 26(a)(1)(A)(iv)

Not applicable.

Dated:  November 7, 2018                    Respectfully submitted,

                                           s/ Lazaro Fernandez, Jr.

4

Lazaro Fernandez, Jr.
Fla. Bar No. 716545
Email:  lfernandez@stackfernandez.com
Denise B. Crockett
Email:  dcrockett@stackfernandez.com
Fla. Bar No. 327913
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
phone: (305) 371-0001
*Attorneys for Defendant, JetBlue Airways
Corporation*

Gayle I. Jenkins, Esq.  (*Admitted Pro Hac Vice*)
Email: gjenkins@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863
*Attorneys for Defendant, JetBlue Airways
Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served electronically on November 7, 2018, to all counsel of record.

Scott B. Cosgrove, Esq.
scosgrove@leoncosgrove.com
Alec H. Schultz, Esq.
aschultz@leoncosgrove.com
John R. Byrne, Esq.
jbyrne@leoncrosgrove.com
Jeremy Kahn, Esq.
jkahn@leoncosgrove.com
**LEÓN COSGROVE LLC**
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Telephone: 305.740.1975
Facsimile: 305.437.8158


s/ Gayle I. Jenkins

**Exhibit D**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

Case No. 0:18-cv-62193-SCOLA/SNOW

MILITA BARBARA DOLAN, on Behalf of      <u>CLASS ACTION</u>
Herself and All Others Similarly Situated,

             Plaintiff,

  vs.

JETBLUE AIRWAYS CORPORATION,

             Defendant.

_____ /

## <u>PLAINTIFF'S RESPONSE TO DEFENDANT'S FIRST SET OF INTERROGATORIES</u>

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Milita Barbara Dolan ("Plaintiff"), on behalf of herself and all others similarly situated, submits the following responses and objections to JetBlue Airways Corporation's ("Defendant" or "JetBlue") First Set of Interrogatories dated April 24, 2019.

## <u>RESPONSES AND OBJECTIONS</u>

### <u>Interrogatory No. 1:</u>

Please describe all facts that support your contention in paragraph 33 of the Amended Complaint that JetBlue is receiving "illegal" "commissions" or "kickbacks" including the specific provision(s) of each state's insurance code or regulation that you contend render the alleged commissions "illegal." *See, e.g.*, Am. Compl. ¶¶ 5, 24, 35, 37, 57, 58, 60.

Case No. 0:18-cv-62193-SCOLA/SNOW

**Response to Interrogatory No. 1:**

Plaintiff objects to this interrogatory, as it is a premature contention interrogatory and is not proportional to the needs of the case. *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *2 (S.D. Fla. Dec. 16, 2010) ("[C]ontention interrogatories propounded early in discovery are often unproductive, expensive and overly burdensome."); *id.* at *3 (holding that contention interrogatories are "particularly wasteful where, as here, many of the interrogatories are directed to the proponents' own statements and conduct").

The response to this interrogatory is the proper subject of expert testimony to be discussed in plaintiff's expert's report which will be submitted according to the deadlines set by the court. With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff identifies the following facts. First, JetBlue's response to Plaintiff's Interrogatory No. 7. In that response, JetBlue states that it "has not applied for a limited lines license in the name of JetBlue Airways Corporation." Second, JetBlue's response to Plaintiff's Request for Admission No. 1. In that response, JetBlue states that it "is not licensed to transact the business of insurance in any state." Third, Plaintiff states that JetBlue's unlicensed receipt of commissions is violating the following state regulations: Cal. Ins. Code § 1623-1647.5; Cal. Ins. Code § 1631; Tex. Ins. Code § 4001.101; Tex. Ins. Code § 4055.1515; Fla. Stat. § 624.401; N.Y. Ins. Law § 1102; N.Y. Ins. Law § 2115; N.Y. Ins. Law § 3452; 31 Pa. Code § 37.11; 31 Pa. Code § 37.12; 31 Pa. Code § 146A.2; 215 Ill. Comp. Stat. Ann. 5/500-15; 215 Ill. Comp. Stat. Ann. 5/500-108; Ohio Rev. Code Ann. § 3905.02; Ohio Rev. Code Ann. § 3905.31; Ga. Code Ann. § 33-23-4; N.C. Gen. Stat. § 58-2-125; N.C. Gen. Stat. § 58-7-10; Mich. Comp. Laws Serv. § 500.402; Ala. Code § 27-3-1; Ala. Code § 27-3-2; Ala. Code § 27-7-5.2; Alaska Stat. § 21.09.010; Alaska Stat. § 21.27.152; Ariz. Rev. Stat.

§ 20-282; Ariz. Rev. Stat. § 20-206; Ariz. Rev. Stat. § 20-207; Ariz. Rev. Stat. § 20-283; Ariz. Rev. Stat. § 20-333; Ark. Code Ann. § 23-64-201; Ark. Code Ann. § 23-64-202; Colo. Rev. Stat. § 10-2-401; Colo. Rev. Stat. § 10-2-414.5; Del.Code Ann. tit. 18, § 1773; Del.Code Ann. tit. 18, § 1703; Del.Code Ann. tit. 18, § 1704; HRS § 431:3-201; HRS § 431:9A-103; HRS § 431:9A-107.5; Idaho Code § 41-305; Idaho Code § 41-1004; Idaho Code § 41-1005; Ind. Code Ann. § 27-1-15.6-3; Ind. Code Ann. § 27-1-15.6-18; Ind. Code Ann. § 27-1-15.6-19.7; Iowa Code § 522B.2.; Kan. Stat. Ann. § 40-214; Kan. Stat. Ann. § 40-4908; Kan. Stat. Ann. § 40-4903; Ky. Rev. Stat. § 304.9-080; Ky. Rev. Stat. § 304.1-110; Ky. Rev. Stat. § 304.3-070; La. Rev. Stat. Ann. § 22:1543; La. Rev. Stat. Ann. § 22:1544; Me. Rev. Stat. tit. 24-A, § 404; Me. Rev. Stat. tit. 24-A, § 7052; Me. Rev. Stat. tit. 24-A, § 7053; Md. Code Ann., Ins. § 4-101; Md. Code Ann., Ins. § 10-122; Mass. Ann. Laws ch. 175, § 162Z; Minn. Stat. Ann. § 60K.32; Minn. Stat. Ann. § 60K.34; Minn. Stat. Ann. § 60K.38; Miss. Code Ann. § 83-83-7; Miss. Code Ann. § 83-5-15; Miss. Code Ann. § 83-6-3; Mo. Rev. Stat. § 375.014; Mo. Rev. Stat. § 375.159; Mont. Code Ann. § 33-2-101; Mont. Code Ann. § 33-2-102; Mont. Code Ann. § 33-17-1403; Neb. Rev. Stat. Ann § 44-303; Neb. Rev. Stat. Ann § 44-304; Neb. Rev. Stat. Ann § 44-4068; Nev. Rev. Stat. Ann. § 680A.060; Nev. Rev. Stat. Ann. § 680A.070; Nev. Rev. Stat. Ann. § 683A.265; Nev. Rev. Stat. Ann. § 683A.242; N.H. Rev. Stat. Ann. § 402-J:3; N.H. Rev. Stat. Ann. § 402-J:4; N.H. Rev. Stat. Ann. § 402-L:2; N.J. Stat. § 17:17-10; N.M. Stat. Ann. § 59A-5-10; N.M. Stat. Ann. § 59A-5-11; N.M. Stat. Ann. § 59A-12-18.1; N.D. Cent. Code § 26.1-26-03; N.D. Cent. Code § 26.1-26-54; Okla. Stat. tit. 36, § 606; Okla. Stat. tit. 36, § 607; Okla. Stat. tit. 36, § 6681; Or. Rev. Stat. Ann. § 731.354; Or. Rev. Stat. Ann. § 744.053; 27 R.I. Gen. Laws § 2.4-3; 27 R.I. Gen. Laws § 2.4-5; 27 R.I. Gen. Laws § 79-3; S.C. Code Ann. § 38-5-10; S.C. Code Ann. § 38-43-730; S.D. Codified Laws § 58-6-1; S.D. Codified Laws § 58-6-4; S.D. Codified Laws § 58-

Case No. 0:18-cv-62193-SCOLA/SNOW

30-210; Tenn. Code Ann. § 56-2-102; Tenn. Code Ann. § 56-6-1403; Utah Code Ann. § 31A-4-102; Utah Code Ann. § 31A-4-103; Utah Code Ann. § 31A-23a-903; Vt. Stat. Ann. tit. 8, § 3362; Vt. Stat. Ann. tit. 8, § 4800; Va. Code Ann. § 38.2-1887; Va. Code Ann. § 38.2-1888; W. Va. Code § 33-3-1; W. Va. Code § 33-12-32b; Wash. Rev. Code Ann. § 48.05.030; Wash. Rev. Code Ann. § 48.17.170; Wis. Stat. Ann. § 610.11; Wis. Stat. Ann. § 632.977; Wyo. Stat. Ann. § 26-3-101; Wyo. Stat. Ann. § 26-3-102; and Wyo. Stat. Ann. § 26-9-234.

**Interrogatory No. 2:**

Please identify the specific law(s) that you contend "prohibit[s] . . . the receipt of commissions by people or entities without a license." *Id.* ¶ 31.

**Response to Interrogatory No. 2:**

Plaintiff objects to this interrogatory, as it is a premature contention interrogatory. *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *2 (S.D. Fla. Dec. 16, 2010) ("[C]ontention interrogatories propounded early in discovery are often unproductive, expensive and overly burdensome."); *id.* at *3 (holding that contention interrogatories are "particularly wasteful where, as here, many of the interrogatories are directed to the proponents' own statements and conduct").

The response to this interrogatory is the proper subject of expert testimony to be discussed in plaintiff's expert's report which will be submitted according to the deadlines set by the court. With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states that JetBlue is violating the following statutes: Cal. Ins. Code § 1623-1647.5; Cal. Ins. Code § 1631; Tex. Ins. Code § 4001.101; Tex. Ins. Code § 4055.1515; Fla. Stat. § 624.401; N.Y. Ins. Law § 1102; N.Y. Ins. Law § 2115; N.Y. Ins. Law § 3452; 31 Pa. Code § 37.11;

31 Pa. Code § 37.12; 31 Pa. Code § 146A.2; 215 Ill. Comp. Stat. Ann. 5/500-15; 215 Ill. Comp. Stat. Ann. 5/500-108; Ohio Rev. Code Ann. § 3905.02; Ohio Rev. Code Ann. § 3905.31; Ga. Code Ann. § 33-23-4; N.C. Gen. Stat. § 58-2-125; N.C. Gen. Stat. § 58-7-10; Mich. Comp. Laws Serv. § 500.402; Ala. Code § 27-3-1; Ala. Code § 27-3-2; Ala. Code § 27-7-5.2; Alaska Stat. § 21.09.010; Alaska Stat. § 21.27.152; Ariz. Rev. Stat. § 20-282; Ariz. Rev. Stat. § 20-206; Ariz. Rev. Stat. § 20-207; Ariz. Rev. Stat. § 20-283; Ariz. Rev. Stat. § 20-333; Ark. Code Ann. § 23-64-201; Ark. Code Ann. § 23-64-202; Colo. Rev. Stat. § 10-2-401; Colo. Rev. Stat. § 10-2-414.5; Del.Code Ann. tit. 18, § 1773; Del.Code Ann. tit. 18, § 1703; Del.Code Ann. tit. 18, § 1704; HRS § 431:3-201; HRS § 431:9A-103; HRS § 431:9A-107.5; Idaho Code § 41-305; Idaho Code § 41-1004; Idaho Code § 41-1005; Ind. Code Ann. § 27-1-15.6-3; Ind. Code Ann. § 27-1-15.6-18; Ind. Code Ann. § 27-1-15.6-19.7; Iowa Code § 522B.2.; Kan. Stat. Ann. § 40-214; Kan. Stat. Ann. § 40-4908; Kan. Stat. Ann. § 40-4903; Ky. Rev. Stat. § 304.9-080; Ky. Rev. Stat. § 304.1-110; Ky. Rev. Stat. § 304.3-070; La. Rev. Stat. Ann. § 22:1543; La. Rev. Stat. Ann. § 22:1544; Me. Rev. Stat. tit. 24-A, § 404; Me. Rev. Stat. tit. 24-A, § 7052; Me. Rev. Stat. tit. 24-A, § 7053; Md. Code Ann., Ins. § 4-101; Md. Code Ann., Ins. § 10-122; Mass. Ann. Laws ch. 175, § 162Z; Minn. Stat. Ann. § 60K.32; Minn. Stat. Ann. § 60K.34; Minn. Stat. Ann. § 60K.38; Miss. Code Ann. § 83-83-7; Miss. Code Ann. § 83-5-15; Miss. Code Ann. § 83-6-3; Mo. Rev. Stat. § 375.014; Mo. Rev. Stat. § 375.159; Mont. Code Ann. § 33-2-101; Mont. Code Ann. § 33-2-102; Mont. Code Ann. § 33-17-1403; Neb. Rev. Stat. Ann § 44-303; Neb. Rev. Stat. Ann § 44-304; Neb. Rev. Stat. Ann § 44-4068; Nev. Rev. Stat. Ann. § 680A.060; Nev. Rev. Stat. Ann. § 680A.070; Nev. Rev. Stat. Ann. § 683A.265; Nev. Rev. Stat. Ann. § 683A.242; N.H. Rev. Stat. Ann. § 402-J:3; N.H. Rev. Stat. Ann. § 402-J:4; N.H. Rev. Stat. Ann. § 402-L:2; N.J. Stat. § 17:17-10; N.M. Stat. Ann. § 59A-5-10; N.M. Stat. Ann. § 59A-5-11; N.M. Stat.

Ann. § 59A-12-18.1; N.D. Cent. Code § 26.1-26-03; N.D. Cent. Code § 26.1-26-54; Okla. Stat. tit. 36, § 606; Okla. Stat. tit. 36, § 607; Okla. Stat. tit. 36, § 6681; Or. Rev. Stat. Ann. § 731.354; Or. Rev. Stat. Ann. § 744.053; 27 R.I. Gen. Laws § 2.4-3; 27 R.I. Gen. Laws § 2.4-5; 27 R.I. Gen. Laws § 79-3; S.C. Code Ann. § 38-5-10; S.C. Code Ann. § 38-43-730; S.D. Codified Laws § 58-6-1; S.D. Codified Laws § 58-6-4; S.D. Codified Laws § 58-30-210; Tenn. Code Ann. § 56-2-102; Tenn. Code Ann. § 56-6-1403; Utah Code Ann. § 31A-4-102; Utah Code Ann. § 31A-4-103; Utah Code Ann. § 31A-23a-903; Vt. Stat. Ann. tit. 8, § 3362; Vt. Stat. Ann. tit. 8, § 4800; Va. Code Ann. § 38.2-1887; Va. Code Ann. § 38.2-1888; W. Va. Code § 33-3-1; W. Va. Code § 33-12-32b; Wash. Rev. Code Ann. § 48.05.030; Wash. Rev. Code Ann. § 48.17.170; Wis. Stat. Ann. § 610.11; Wis. Stat. Ann. § 632.977; Wyo. Stat. Ann. § 26-3-101; Wyo. Stat. Ann. § 26-3-102; and Wyo. Stat. Ann. § 26-9-234.

**Interrogatory No. 3:**

Please describe all facts that support your contention in paragraph 37 of the Amended Complaint that "[t]his pricing mechanism for a consumer's travel insurance policy perfectly reveals the inherent illegality of the entire travel insurance program."

**Response to Interrogatory No. 3:**

Plaintiff objects to this interrogatory, as it is a premature contention interrogatory. *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *2 (S.D. Fla. Dec. 16, 2010) ("[C]ontention interrogatories propounded early in discovery are often unproductive, expensive and overly burdensome."); *id.* at *3 (holding that contention interrogatories are "particularly wasteful where, as here, many of the interrogatories are directed to the proponents' own statements and conduct"). Furthermore, the quoted language does not appear in paragraph 37 of the Amended Complaint, rather it appears in paragraph 35 of the Amended Complaint.

Case No. 0:18-cv-62193-SCOLA/SNOW

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states that, when a person buys trip insurance through JetBlue's website, policies are automatically issued with the actual insurance underwriters for the insurance policies performing no underwriting on the individual customer level. Therefore, the policy price bears no relationship to the insured risk.

**Interrogatory No. 4:**

Please describe all facts that support your contention in paragraph 45 of the Amended Complaint that JetBlue's "representations and material omissions necessarily inform the consumer that JetBlue does not receive a commission or otherwise profit from the sale of trip insurance," including a description of the precise representations, if any, that inform the consumer that JetBlue does not receive any profit from the sale of trip insurance.

**Response to Interrogatory No. 4:**

Plaintiff objects to this interrogatory, as it is a premature contention interrogatory. *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *2 (S.D. Fla. Dec. 16, 2010) ("[C]ontention interrogatories propounded early in discovery are often unproductive, expensive and overly burdensome. This is particularly true when the propounding party has in its position [sic] or, readily available, the identical material.").

The Plaintiff has described these facts in her Amended Complaint.  By way of summary, Plaintiff states that (1) JetBlue omits any mention of its financial interest in the sale of trip insurance; (2) JetBlue falsely identifies "AGA Service Company" as "the licensed producer and administrator of this plan" when, in fact, JetBlue, by receiving a commission every time a consumer buys trip insurance, is also acting as a producer; (3) JetBlue misrepresents to the consumer that the party

"recommending" the purchase of insurance is AGA Service Company, not JetBlue, when JetBlue

works with Allianz Global Assistance with respect to the offer of the insurance product; and (4) on

JetBlue's website, including the "learn more" hyperlinked pop-up window relating to the offered

travel insurance, JetBlue omits any reference to its retention or receipt of a commission or kickback

for every trip insurance policy sold on its website.

**Interrogatory No. 5:**

Please describe all facts that support your contention in paragraph 115 of the Amended

Complaint that "JetBlue's role in the sale of trip insurance on its website is materially equivalent to

that of an insurance agent or broker."

**Response to Interrogatory No. 5:**

Plaintiff objects to this interrogatory, as it is a premature contention interrogatory. *In re*

*Checking Account Overdraft Litig.*, 2010 WL 5136043, at *2 (S.D. Fla. Dec. 16, 2010)

("[C]ontention interrogatories propounded early in discovery are often unproductive, expensive and

overly burdensome."); *id.* at *3 (holding that contention interrogatories are "particularly wasteful

where, as here, many of the interrogatories are directed to the proponents' own statements and

conduct").

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to

supplement this answer, Plaintiff states as follows.  First, every time a consumer purchases trip

insurance, JetBlue receives a portion of the consumer's payment, which qualifies the payment as a

commission.  Second, in emails, JetBlue refers to its payments from Allianz as "commissions."

Third, JetBlue solicits the sale of trip insurance on its website by (i) describing the benefits or terms

of insurance coverage, including premiums; (ii) distributing an invitation to contract to prospective

Case No. 0:18-cv-62193-SCOLA/SNOW

purchasers of insurance; (iii) making general and specific recommendations as to insurance products; (iv) completing orders or applications for insurance products, and (v) advising as to insurance matters.

**Interrogatory No. 6:**

Please describe all facts that support your contention in paragraph 118 of the Amended Complaint that "[u]nder state insurance regulations, Allianz, BCS, and Jefferson must report to the state a list of agents who provide them with insurance risks as great as that coming from JetBlue," including by identifying the "state" and "state insurance regulations" to which you are referring.

**Response to Interrogatory No. 6:**

Plaintiff objects to this interrogatory, as it is a premature contention interrogatory. *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *2 (S.D. Fla. Dec. 16, 2010) ("[C]ontention interrogatories propounded early in discovery are often unproductive, expensive and overly burdensome. This is particularly true when the propounding party has in its position [sic] or, readily available, the identical material.").

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows. The response to this interrogatory is the proper subject of expert testimony to be discussed in plaintiff's expert's report which will be submitted according to deadlines set by the court.

**Interrogatory No. 7:**

Please describe all facts that support your contention in paragraph 119 of the Amended Complaint that "Allianz, BCS, and Jefferson make material misrepresentations in their reports to and filings with state agencies by failing to disclose the amount of risk they receive from JetBlue, who is

acting as an insurance agent," including setting forth the content of the material misrepresentations, identifying the reports and the filings, and by identifying the "state agencies" to which you are referring.

**Response to Interrogatory No. 7:**

Plaintiff objects to this interrogatory, as it is a premature contention interrogatory. *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *2 (S.D. Fla. Dec. 16, 2010) ("[C]ontention interrogatories propounded early in discovery are often unproductive, expensive and overly burdensome. This is particularly true when the propounding party has in its position [sic] or, readily available, the identical material.").

The response to this interrogatory is the proper subject of expert testimony to be discussed in plaintiff's expert's report which will be submitted according to the deadlines set by the court. With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows. Neither JetBlue nor Allianz nor BCS nor Jefferson disclose to any state regulator the fact that JetBlue lacks a license but that it nonetheless receives a commission on each policy sold.

**Interrogatory No. 8:**

Please describe all facts that support your contention in paragraph 124 of the Amended Complaint that the price was "higher than [it] would be absent the Defendant's misconduct."

**Response to Interrogatory No. 8:**

Plaintiff objects to this interrogatory, as it is a premature contention interrogatory. *In re Checking Account Overdraft Litig.*, 2010 WL 5136043, at *2 (S.D. Fla. Dec. 16, 2010) ("[C]ontention interrogatories propounded early in discovery are often unproductive, expensive and

overly burdensome.  This is particularly true when the propounding party has in its position [sic] or, readily available, the identical material.").

      With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows.  As a result of JetBlue's receipt of an illegal kickback, Plaintiff paid an inflated price for travel insurance.

**Interrogatory No. 9:**

      Please identify each and every "false and deceptive statement[]" that you contend JetBlue made on its website as stated in paragraph 127 of the Amended Complaint.

**Response to Interrogatory No. 9:**

      Plaintiff refers JetBlue to her Amended Complaint as well as her Response to Interrogatory No. 4.

**Interrogatory No. 10:**

      Please describe in full and complete detail all investigation, including the timing of the same, that you personally undertook to determine whether you could secure the same or similar Trip Insurance Policy from a source other than www.jetblue.com and the prices that you identified associated with such other policies.

**Response to Interrogatory No. 10:**

      Plaintiff objects to this interrogatory on relevance grounds.  Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1).  Under the Federal Rules of Evidence, evidence is "relevant" if it has "any tendency to make a fact" that is "of consequence" "more or less probable than it would be without the

evidence[.]" Fed. R. Evid. 401.  Under binding case law, a plaintiff need not show that he or she

could have purchased the trip insurance for a lower price.  *Latman v. Costa Cruise Lines, N.V.*, 758

So. 2d 699, 703 (Fla. 3d DCA 2000) ("Reliance and damages are sufficiently shown by the fact that

the passenger parted with money for what should have been a 'pass-through' port charge, but the

cruise line kept the money.").

**Interrogatory No. 11:**

Please describe any consumer complaint or inquiry that you have lodged with any state

regulator to determine whether that regulator agrees with your contention that JetBlue is conducting

business as an unlicensed insurance producer, broker or agent.

**Response to Interrogatory No. 11:**

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to

supplement this answer, Plaintiff states as follows.  Plaintiff has not lodged any consumer complaint

or inquiry.

**Interrogatory No. 12:**

Please identify all other legal proceedings to which you have been—or are currently—a

party.

**Response to Interrogatory No. 12:**

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to

supplement this answer, Plaintiff states as follows.  Plaintiff refers JetBlue to:

- *Dolan v. Inter-Continental Hotels Corp.*, No. 1:18-cv-02039 (N.D. Ga.);
- *Dolan v. Sage Hosp. Res., LLC*, No. 1:18-cv-02038 (N.D. Ga.);
- *Dolan v. TPG Hotels & Resorts, Inc.*, No. 1:18-cv-02309 (N.D. Ga.);
- *Muschong v. Weingarten Realty Inv'rs*, No. 9:18-cv-00107 (M.D. Fla.);
- *Muschong v. Weingarten Realty Inv'rs*, No. 6:18-cv-00258 (M.D. Fla.); and

Case No. 0:18-cv-62193-SCOLA/SNOW

- *United Spinal Ass'n v. Heartland Dental, LLC*, No. 1:15-cv-05570 (N.D. Ill.).

**Interrogatory No. 13:**

Please state whether the attorneys (or law firms) who represent you in this matter have represented—or are currently representing—you in any other legal proceeding.

**Response to Interrogatory No. 13:**

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows. The attorneys representing me in this matter have represented me in various other legal proceedings.

**Interrogatory No. 14:**

Please identify, by setting forth the name of the attorney and the date on which the communication occurred, the date on which you first discussed your trip insurance purchase with any attorney.

**Response to Interrogatory No. 14:**

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows. Plaintiff discussed her trip insurance purchase with John Bosco in approximately April of 2017.

**Interrogatory No. 15:**

Please state whether you have ever been deemed by any court to be an inadequate class representative.

**Response to Interrogatory No. 15:**

Plaintiff has never been deemed by any court to be an inadequate class representative.

Case No. 0:18-cv-62193-SCOLA/SNOW

**Interrogatory No. 16:**

Please describe all of the reasons and bases on which you decided to purchase the Trip Insurance Policy.

**Response to Interrogatory No. 16**:

Plaintiff objects to this interrogatory on the grounds of relevance.  Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  Under the Federal Rules of Evidence, evidence is "relevant" if it has "any tendency to make a fact" that is "of consequence" "more or less probable than it would be without the evidence[.]"  Fed. R. Evid. 401.  Here, under *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) and *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013), the "reasons and basis on which" Plaintiff "decided to purchase the Trip Insurance Policy" is not relevant to any of the Plaintiff's claims.  Nor is such information relevant to the Plaintiff's RICO claims.

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer and to object to the admissibility of this interrogatory and any answer thereto, Plaintiff states as follows. Plaintiff bought the travel insurance to protect her investment in the trip.

**Interrogatory No. 17:**

Please describe whether you made a claim under a trip insurance policy, and, if so, whether you contend that you did not receive the coverage for which you paid.

**Response to Interrogatory No. 17**:

Plaintiff objects to this interrogatory on the grounds of relevance.  Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  Under the Federal Rules of Evidence, evidence is "relevant" if it has "any tendency to make a fact" that is "of consequence" "more or less probable than it would be without the evidence[.]"  Fed. R. Evid. 401.  Here, under *Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699, 703 (Fla. 3d DCA 2000) and *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab*, 739 F.3d 579, 584 (11th Cir. 2013), the "reasons and basis on which" Plaintiff "decided to purchase the Trip Insurance Policy" is not relevant to any of the Plaintiff's claims.

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows.  Plaintiff did not make a claim under the Trip Insurance Policy.

**Interrogatory No. 18:**

Please state the amount of monetary damage that you claim to have incurred as a result of Defendant's actions described in the Amended Complaint, including how you calculated that amount.

**Response to Interrogatory No. 18**:

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows.  Plaintiff seeks to recover all undisclosed monies that JetBlue received as a direct result of Plaintiff's purchase of the travel insurance policy described in Plaintiffs Amended Complaint.

**Interrogatory No. 19:**

Case No. 0:18-cv-62193-SCOLA/SNOW

Please set forth the wording, if any, that you are seeking to have the Court order to be included on JetBlue's website as part of your request for injunctive relief.

**Response to Interrogatory No. 19**:

Plaintiff objects on the basis that any such ruling is within the purview of the presiding Court, not Plaintiff, but states that Plaintiff will ask the Court to order JetBlue to disclose, in a manner the Court deems adequate, its financial interest in the Allianz insurance.

**Interrogatory No. 20:**

Please identify any other trip insurance purchaser whom you contend is a member of the class with whom you have communicated about trip insurance.

**Response to Interrogatory No. 20**:

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows.  Plaintiff has not knowingly spoken about trip insurance with any other trip purchaser whom Plaintiff contends is a member of the class.

**Interrogatory No. 21:**

Please identify all witnesses with whom you communicated regarding your trip insurance policy purchase described in the Amended Complaint.

**Response to Interrogatory No. 21**:

With the understanding that discovery is still ongoing and that Plaintiff reserves the right to supplement this answer, Plaintiff states as follows.  Plaintiff has not communicated with any witnesses regarding the trip insurance policy purchase described in the Amended Complaint.

**Interrogatory No. 22:**

Please identify all airlines on which you have traveled in the four (4) year preceding the

Case No. 0:18-cv-62193-SCOLA/SNOW

filing of the complaint, and the dates of travel on same.

**Response to Interrogatory No. 22**:

Plaintiff objects to this interrogatory on the grounds of relevance.  Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  Under the Federal Rules of Evidence, evidence is "relevant" if it has "any tendency to make a fact" that is "of consequence" "more or less probable than it would be without the evidence[.]"  Fed. R. Evid. 401.  Here, this information does not relate to any fact of consequence in the Plaintiff's claim or make JetBlue's defenses more or less probable.

**Interrogatory No. 23:**

Please identify all travel insurance companies from which you purchased travel insurance in the four (4) year preceding the filing of the complaint, including the dates of those purchases.

**Response to Interrogatory No. 23**:

Plaintiff objects to this interrogatory on the grounds of relevance.  Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1).  Under the Federal Rules of Evidence, evidence is "relevant" if it has "any tendency to make a fact" that is "of consequence" "more or less probable than it would be without the evidence[.]"  Fed. R. Evid. 401.  Here, this information does not relate to any fact of consequence in the Plaintiff's claim or make JetBlue's defenses more or less probable.

{00189103. 6 }

- 17 -

## VERIFICATION

I, Milita Dolan, declare as follows:


1.      I am over the age of eighteen and the plaintiff in the matter of *Milita Barbara*

*Dolan, on Behalf of Herself and All Others Similarly Situated v. JetBlue Airways Corporation.*

2.      I submit this declaration in conjunction with my Response to Defendant JetBlue

Airways Corporation's First Set of Interrogatories.

3.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

Response to Defendant's First Set of Interrogatories is true and correct.

Dated **5/24**, 2019.



Milita Dolan

Case No. 0:18-cv-62193-SCOLA/SNOW

Dated: May 29, 2019

Respectfully submitted,

*/s/ Alec H. Schultz*
Scott B. Cosgrove, Esq.
  Fla. Bar No. 161365
Alec H. Schultz, Esq.
  Fla. Bar No. 35022
John R. Byrne, Esq.
  Florida Bar No. 126294
Jeremy L. Kahn, Esq.
  Florida Bar No. 105277
LEÓN COSGROVE, LLP
255 Alhambra Circle, Suite 800
Coral Gables, Florida 33134
Tel:     305.740.1975
Email:  scosgrove@leoncosgrove.com
Email:  aschultz@leoncosgrove.com
Email:  jbyrne@leoncosgrove.com
Email:  jkahn@leoncosgrove.com

-and-

Paul J. Geller, Esq.
  Florida Bar No. 984795
Stuart A. Davidson, Esq.
  Florida Bar No. 84824
Jason H. Alperstein, Esq.
  Florida Bar No. 64205
Christopher C. Gold, Esq.
  Florida Bar No. 088733
Bradley Beall, Esq.
  Florida Bar No. 1010635
ROBBINS GELLER RUDMAN & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, Florida  33432
Email:  pgeller@rgrdlaw.com
Email:  sdavidson@rgrdlaw.com
Email:  jalperstein@rgrdlaw.com
Email:  cgold@rgrdlaw.com
Email:  bbeall@rgrdlaw.com

*Counsel for Dolan and the Class*

## CERTIFICATE OF SERVICE

I certify that on May 29, 2019, I served a true and correct copy of the foregoing by e-mail to all counsel of record listed below.

| | |
|---|---|
| Lazaro Fernandez, Jr.<br>Fla. Bar No. 716545<br>Denise B. Crockett<br>Fla. Bar No. 327913<br>**STACK FERNANDEZ & HARRIS, P.A.**<br>1001 Brickell Bay Drive, Suite 2650<br>Miami, Florida 33131<br>Tel: (305) 371-0001<br>Email: lfernandez@stackfernandez.com<br>Email: dcrockett@stackfernandez.com<br>Email: gmartich@stackfernandez.com<br>Email: mwolf@stackfernandez.com | Gayle I. Jenkins, Esq.<br>**WINSTON & STRAWN LLP**<br>333 South Grand Avenue, 38th Floor<br>Los Angeles, CA 90071-1543<br>Tel: (213) 615-1863<br>Email: gjenkins@winston.com<br>Email: rsalyer@winston.com<br>Email: docketla@winston.com |

*Attorneys for Defendant JetBlue Airways Corporation*

*/s/ Alec H. Schultz*
Alec H. Schultz, Esq.

{00189103. 7 }