UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-cv-62193-SMITH

MILITA BARBARA DOLAN,
on behalf of herself and all others
similarly situated,

      Plaintiff,                         **CLASS ACTION**

vs.

JETBLUE AIRWAYS CORPORATION,

      Defendant.

_____/

**DEFENDANT JETBLUE AIRWAYS CORPORATION'S
MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT**

Defendant, JetBlue Airways Corporation ("JetBlue"), moves pursuant to Fed. R. Civ. P. 56 and S.D. Fla. L.R. 56.1 for the entry of summary judgment in its favor and against Plaintiff, Milita Barbara Dolan ("Plaintiff"), on behalf of herself and all others similarly situated.[1] The grounds for this motion are set forth in the following memorandum of law. A separate Statement of Undisputed Material Facts ("SUMF") has been contemporaneously filed in accordance with Local Rule 56.1. The motion and SUMF cross-reference a Notice of Filing to which are attached evidentiary materials in support of the motion and statement.

## MEMORANDUM OF LAW

## I.     INTRODUCTION

Plaintiff's Amended Complaint [ECF 17] purports to assert claims for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), unjust enrichment, and violation of the substantive and conspiracy provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO") stemming from Plaintiff's purchase of a travel insurance policy through JetBlue's website.[2] There are multiple independently sufficient reasons why JetBlue is entitled to the entry of summary judgment on each of Plaintiff's claims. *First*, as to each of the claims, Plaintiff cannot prove that JetBlue acted deceptively by not disclosing that it was being compensated for allowing the marketing of insurance on its website. The evidence shows that JetBlue made no material misrepresentations or actionable omissions, and Plaintiff admitted that she was not misled by JetBlue (nor were the vast majority of those surveyed). *Second*, Plaintiff cannot prove that she was damaged or injured as a result of any conduct by JetBlue. The evidence firmly establishes that Plaintiff got the insurance policy she bargained for at the price she agreed to pay, and that price was not inflated. Indeed, travel policies issued by AGA Service Company

---

[1] Plaintiff's Motion for Class Certification [ECF 89] is fully briefed and currently pending. "Typically, district courts rule upon class certification motions before deciding summary judgment. Federal Rule of Civil Procedure 23(c) provides that the court should decide class certification at 'an early practicable time,' which suggests it should precede any summary judgment rulings." *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1232 (S.D. Fla. 2013), *rev'd in part on other grounds*, 768 F.3d 1110 (11th Cir. 2014); *Lamb v. Graco Prods. Inc.*, 291 F.R.D. 665, 666 (N.D. Fla. 2013) ("In most cases, class certification should be addressed before summary judgment."). Thus, JetBlue respectfully requests that this Court rule on the pending Motion for Class Certification before ruling on any motions for summary judgment.

[2] The product purchased by Plaintiff upon which her claims are premised contains insurance and assistance features. SUMF, ¶ 1. Unless otherwise indicated, the product shall be referred to as "insurance" or "travel insurance" or "trip insurance."

("AGA"), which issued Plaintiff's policy, are amongst the least expensive in the market. *Third,* Plaintiff cannot prove that JetBlue *caused* her any damage or injury. Indeed, Plaintiff admitted that she assumed that JetBlue was being compensated but she still purchased the policy because that fact was immaterial to her. *Fourth,* the evidence demonstrates that JetBlue did not receive a direct benefit from Plaintiff, a showing essential to Plaintiff's unjust enrichment claim. *Fifth,* Plaintiff cannot prove an agreement to violate RICO, a showing essential to her RICO conspiracy claim. *Sixth,* all of Plaintiff's claims are barred by the filed-rate doctrine because the relief Plaintiff seeks would result in her paying less for her insurance benefits than the filed rate. Accordingly, summary judgment on all of Plaintiff's claims is warranted and appropriate.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Undisputed Material Facts

On July 4, 2017, Plaintiff, utilizing JetBlue's website, booked a round trip for herself on JetBlue, and also purchased travel insurance pursuant to the travel insurance offer from AGA on JetBlue's website. SUMF, ¶¶ 18, 19. Plaintiff does not recall any of the content on the website on the date the offer was presented to her in relation to her July 2017 insurance purchase. SUMF, ¶ 28. The travel insurance Plaintiff purchased from AGA in July 2017 is the travel insurance that forms the basis of her claims. SUMF, ¶ 21. Significantly, Plaintiff admits that even before she booked the trip and purchased the insurance on July 4, 2017, she knew ███████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████. SUMF, ¶¶ 53, 54. In August 2017, Plaintiff again booked travel on JetBlue and purchased the travel insurance from AGA. SUMF, ¶¶ 23-25. Plaintiff nearly always purchases travel insurance when she flies because she ████████████████████████████████████████ ██████████████████████████████████████████████████████████. SUMF, ¶ 27. Plaintiff has no reason to believe that the travel insurance that she purchased in July and August 2017 was not valid, and she expected that any claims under the policies would have been covered. SUMF, ¶ 29. Critically, nowhere on JetBlue's website does JetBlue represent that it is not being compensated by AGA for allowing AGA to market insurance on its website. SUMF, ¶ 4, 33. Notwithstanding each of these undisputed facts, Plaintiff's claims are all premised on the contention that JetBlue acted deceptively by giving consumers using its website the "false

impression" that it was not being compensated.  Plaintiff's Amended Complaint alleges that "JetBlue leaves the consumer with the false impression that the charge for trip insurance is a pass-through fee, i.e., a fee that is passed on to another entity and for which JetBlue has no financial interest."  SUMF, ¶ 34. However, the evidence belies Plaintiff's futile attempt to analogize this case to the pass-through line of authority.  Indeed, Plaintiff's own survey shows that ███████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████. SUMF, ¶¶ 43-46; *see also* n.8, *infra*. And this includes Plaintiff who admitted that she expected that JetBlue should be compensated, that it was absolutely fair that JetBlue be compensated, that she never had the belief or impression that JetBlue was not being compensated, and that consumers viewing the website knew that JetBlue was being compensated. SUMF, ¶¶ 48-52. Moreover, the undisputed evidence shows that—even if there had been a disclosure on JetBlue's website advising that JetBlue receives compensation from AGA— ████████████████████████████████████████████████████████████████████████████████ ██████████████████████████. SUMF, ¶¶ 35, 37-42. ████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████. SUMF, ¶¶ 48-54.

     The travel insurance offer that forms the basis of Plaintiff's claims appears on JetBlue's website pursuant to a Marketing Agreement entered into between JetBlue and AGA, a licensed insurance producer and broker, pursuant to which JetBlue provides AGA space on JetBlue's website for AGA to offer travel insurance policies to JetBlue's customers.  SUMF, ¶¶ 2, 6-8. ██████ ████████████████████████████████████████████████████████████████████████████████ ███████. SUMF, ¶¶ 9. Under the Marketing Agreement, ████████████████████████████ ███████████████████████████████████████████████. SUMF, ¶ 30. Notably, █████████ ████████████████████████████████████████████████████████████████████████████████ ████████████████. SUMF, ¶ 13, 14. ████████████████████████████████████████████████ ███████████████████████████████████████████. SUMF, ¶ 15. █████████████████████ ████████████████████████████████████████████████████████████████████████████████ ███████████████████████████. SUMF, ¶ 31, 32. These undisputed facts further distinguish this case from the pass-through line of authority in which the defendant collects and keeps a portion of the money paid by the plaintiff.

Plaintiff's theory of actual damages against JetBlue is based on her assertion that JetBlue's omissions and misrepresentations "result[] in consumers paying prices for insurance policies that are higher than they would be absent the Defendant's conduct." SUMF, ¶ 55.  However, there is no evidence that Plaintiff (who considered the price she paid for the insurance a "good deal"), or any other consumer, could have purchased comparable insurance for less than the cost of the insurance offered by AGA on JetBlue's website. SUMF, ¶¶ 57-66. Indeed, it is uncontested that the travel insurance policies offered by AGA on JetBlue's website are actually among the least expensive comparable travel products offered in the marketplace. SUMF, ¶ 63-66.

Finally, it is undisputed that Plaintiff was charged the filed rate for her insurance. SUMF, ¶¶ 67-70.  If Plaintiff were granted the relief she seeks—disgorgement of the fees paid to JetBlue by AGA in connection with Plaintiff's policy—she would in effect be paying less than the filed rate for her insurance benefits, which is prohibited by law. SUMF, ¶¶ 71-74.

### B.    Plaintiff's Claims and Procedural Posture

JetBlue moved to dismiss the Amended Complaint on December 18, 2018 [ECF 32].  On May 29, 2019, Judge Scola entered an Order Granting in Part and Denying in Part Motion to Dismiss [ECF 87] ("Dismissal Order"), holding, among other things, that:

1.  The RICO claims are barred by the McCarran-Ferguson Act to the extent they are premised on allegations regarding the business of insurance (e.g., that JetBlue violated the insurance statutes by soliciting insurance without a license and committing deceptive acts in connection with the business of insurance), but that the RICO claims had sufficient *allegations* to survive dismissal at the pleadings stage based on JetBlue allegedly receiving undisclosed kickbacks and allegedly fraudulently representing "that the price the consumer paid was not grossly inflated by amounts received by JetBlue …." Dismissal Order, 5-10.[3]

2.  The FDUTPA claim is precluded to the extent it is premised on alleged violations of insurance statutes based on the insurance exemption in FDUTPA, but that the FDUTPA claim had sufficient *allegations* to survive dismissal at the pleadings stage based on the claim "that JetBlue [allegedly] markets the insurance as a pass-through charge." Dismissal Order, 10-12.

---

[3] In so ruling, Judge Scola noted that "JetBlue does not argue that [Plaintiff's] RICO claims cannot survive without the allegations that are barred under McCarran-Ferguson." *Id.* at 10.  JetBlue did not make that explicit argument in moving to dismiss because, in its view, the insurance-related allegations form the basis of the entirety of each of Plaintiff's claims.

3.   There is no private right of action under Florida law for violation of the insurance statutes relied upon by Plaintiff in the Amended Complaint. Dismissal Order, 9-10.

4.   The Amended Complaint contains sufficient *allegations* to support the unjust enrichment claim so as to survive dismissal at the pleadings stage based on a deception theory. Dismissal Order, 12-13.

As detailed below, the undisputed evidence belies each of Plaintiff's remaining claims, and JetBlue is entitled to judgment on each of the claims as a matter of law.

## III.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not." *Walker v. Super 8 Worldwide, Inc.*, 2012 WL 13102078, *2 (M.D. Fla. June 21, 2012), citing to *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1966).

Where, as here, the movant does not bear the burden of persuasion at trial, the movant "may satisfy Rule 56's burden of production by either (i) submitting 'affirmative evidence that negates an essential element of the non-moving party's claim,' or (ii) demonstrating to the court that 'the nonmoving party's evidence is insufficient to establish an essential element of the non-moving party's claim.'" *Blanco v. Capform, Inc.*, 2013 WL 85197, *2 (S.D. Fla. Jan. 7, 2013), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). "After the moving party satisfies its burden, a nonmoving party then has the burden of setting forth specific facts demonstrating a genuine dispute as to a material fact. The nonmoving party must also produce substantial evidence in support of those specific facts in order to defeat a motion for summary judgment." *Walker*, 2012 WL 13102078, at *2 (citations omitted).

## IV.    ARGUMENT

### A.    Plaintiff's Claims Fail Because There is No Evidence that JetBlue Engaged in Deceptive Conduct that Misled Plaintiff or a Reasonable Consumer

In order to prevail on any of her claims, Plaintiff must prove a deception by JetBlue.[4]

---

[4]  Conduct is deceptive under FDUTPA if it "'is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.' This standard requires a showing of 'probable,

Plaintiff asserts that JetBlue made the following misrepresentations on its website and/or on pages linked to its website in connection with the travel insurance: (1) JetBlue "falsely identifies [AGA] as the company brokering the policy; (2) "JetBlue identifies [AGA] as 'the licensed producer'" of the policies; and (3) JetBlue "represents to the consumer that the party 'recommending' the purchase of insurance is AGA," Am. Compl. [ECF 17], ¶¶ 23, 24, 27, 28, 34, 38-46.[5]

Even if Plaintiff had actually seen any of these statements (which she cannot prove), *see infra* at 15, each of the statements is true, *see* SUMF, ¶¶ 3-10 (establishing that AGA is the licensed producer and broker of the insurance offered on JetBlue's website and is the entity that offers, sells, administers and recommends the insurance). *See Allyn*, 2019 WL 297459, at *6-7 (true statements not deceptive as a matter of law), *adopting rep. and rec.*, 2019 WL 293277 (N.D. Fla. Jan. 23, 2019). And, the only other "representation" upon which Plaintiff purports to rely—the innocuous fact that the insurance charge is not billed with JetBlue's fare details and is itemized

---

not possible deception'…." *Zlotnick v. Premier Sales Grp., Inc.*, 480 F.3d 1281, 1284 (11th Cir. 2007) (citations omitted). Likewise, the RICO predicate acts alleged by Plaintiff—mail and wire fraud and money laundering—each require that JetBlue acted fraudulently. *See U.S. v. Ward*, 486 F.3d 1212, 1222 (11th Cir. 2007) (to prove mail and wire fraud, plaintiff must demonstrate, among other things, that defendant "intentionally participate[d] in a scheme or artifice to defraud another"); *Ellis v. Warner*, 2017 WL 634287, *9-10 (S.D. Fla. Feb. 16, 2017) (money laundering claim failed because plaintiff had "not sufficiently pled the predicate acts of wire and mail fraud" or any other "specified unlawful activity"). Finally, for unjust enrichment, inequity is absent where, among other things, the defendant has not obtained the benefit through deceptive or wrongful means. *See Kissner v. McDonald's Corp.*, 2018 WL 5832979, *4 (S.D. Fla. Nov. 2, 2018) (non-deceptive act "is not inequitable and therefore cannot form the basis of an unjust enrichment claim"); *Jaffe*, 667 F. Supp. 2d at 1322 (same). Significantly, while none of the courts handling similar cases against the airlines have yet ruled on summary judgment, in *Donoff v. Delta Air Lines, Inc.,* Case No. 18-81258 (S.D. Fla.) ("*Donoff*"), Judge Middlebrooks, after dismissing the RICO claims for, among other things, failure to allege causation, advised the parties of his "serious doubts about Plaintiff's ability to ultimately *prove*, rather than simply *allege*, the unjust enrichment element of inequity, and the FDUTPA element of deception" and further made clear that "Plaintiffs face a steep ascent in the class certification, summary judgment and trial phases." *Donoff* Order on Mot. to Dismiss [ECF 121], 19.

[5] While Plaintiff alleges that JetBlue made these statements because they appear on JetBlue's website, the evidence demonstrates that the content of the insurance offer was authored by AGA. *See* SUMF, ¶ 9. The fact that JetBlue did not make these statements is fatal to Plaintiff's claims. *See Allyn, M.D. v. Am. Bd. of Medical Specialties, Inc.*, 2019 WL 297459, *7 (M.D. Fla. Jan. 3, 2019) (plaintiff could not be held liable for statements on its website made by another because there is "no support for the proposition that parties can be liable for deceptive statements made by another."), *adopting rep. and rec.*, 2019 WL 297459 (M.D. Fla. Jan. 23, 2019).

separately on the passenger's bill, *see* Am. Compl., ¶¶ 32-33—is not deceptive. *See, e.g., Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007) (fact that charge is itemized separately "is not unfair or deceptive").

Because there is no evidence of an affirmative misrepresentation by JetBlue, Plaintiff can prevail only if she can prove an actionable omission by JetBlue. The evidence firmly establishes that she cannot. The alleged omission—that JetBlue did not disclose that AGA compensated JetBlue for allowing AGA to advertise on JetBlue's website—is not actionable because there is no duty owed by JetBlue to disclose this fact to Plaintiff. "[C]ommercial contractual relationships"— like the one between JetBlue and Plaintiff at issue here—"are generally not the type of special relationship of trust that imposes an affirmative duty to disclose information." *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1278 (S.D. Fla. 2003), *adopting rep. and rec.*, 2004 WL 7334073 (S.D. Fla. Aug. 17, 2004); *Almanza v. United Airlines, Inc.*, 162 F. Supp. 3d 1341, 1357-58 (S.D. Ga. 2016) (airline had no duty to disclose that plaintiff was exempt from a "tourism tax" where there were no allegations that they "shared a relationship that was anything more than arm's length and commercial in nature"), *aff'd*, 851 F.3d 1060 (11th Cir. 2017); *Clear Marine Ventures, Ltd. v. Cazadores, Inc.*, 2010 WL 11504348, *3 (S.D. Fla. Jan. 22, 2010) (granting summary judgment for defendant because "[t]here is no evidence that Defendant owed any duty to [Plaintiff] to disclose," i.e., no evidence of fiduciary relationship or contractual relationship of trust), *adopting rep. and rec.*, 2010 WL 11504516 (S.D. Fla. Mar. 18, 2010).[6]

While a duty of disclosure may arise when a defendant has concealed *material* information and where "disclosure was necessary to prevent" a plaintiff from being misled, *see In re Managed Care Litig.*, 298 F. Supp. 2d at 1278, the undisputed evidence establishes that those circumstances do not exist here. Nothing JetBlue said or did plausibly gave the impression that JetBlue was not being compensated in connection with the travel insurance. Indeed, Plaintiff knew JetBlue was being compensated, she testified "[o]f course, they got compensated," SUMF, ¶ 50, *see also* ¶¶ 48, 51, 52, which admission is fatal to her claims.[7] And, even accepting Plaintiff's expert's fatally

---

[6] Judge Scola's Dismissal Order acknowledged the broad body of case law holding that in a pure alleged omissions case, which the evidence has shown this case to be, the absence of a duty to disclose is fatal. *See* Dismissal Order, 14-15.

[7] Because Plaintiff claims to be typical of the putative class, the fact that she assumed JetBlue was being compensated evidences that JetBlue's actions were not deceptive to her or to a reasonable consumer (for purposes of the FDUTPA claim).

flawed analysis as correct, the evidence likewise demonstrates that 

⁸ In addition, the duty of disclosure extends only to *material* facts, and the evidence shows that the fact that JetBlue was being compensated was immaterial to Plaintiff, *see* SUMF, ¶¶ 48-54, ▮▮▮▮▮▮▮▮▮▮▮▮▮, *see* ¶¶ 35, 37-42. Thus, the evidence establishes that JetBlue's conduct did not mislead Plaintiff nor was it likely to mislead a reasonable consumer.

In determining that Plaintiff had *alleged* a deceptive act, Judge Scola relied on the pass-through line of cases, noting that "[Plaintiff] *alleges* that JetBlue, in fact, receives a portion of a charge that JetBlue *convinces its customers is distributed entirely to third parties.*" Dismissal Order, 12 (emphasis added); *see also id.*, at 13-14 (relying on pass-through theory in connection with unjust enrichment and RICO claims). But the evidence establishes that this case does not fit within the narrow pass-through line of cases. The pass-through cases involve *affirmative misrepresentations as to the use of a specific fee or charge for a particular purpose. See Berry*, 497 F. Supp. 2d at 1367 (explaining that the pass-through cases present the issue of "whether a company violates [FDUTPA] when it represents to a customer that *a separate fee* is to be paid for a particular purpose, then fails to use the fee for that purpose or retains some portion of the fee for itself.") (emphasis added).⁹ Here, in contrast, there is no affirmative misrepresentation by JetBlue

---

⁸ Plaintiff's expert was unable to demonstrate that it is likely or probable that a reasonable consumer would be misled into believing that JetBlue was not being compensated, ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮. Moreover, when properly surveyed,

*See* SUMF, ¶ 36. Even if the flawed Sowers Report commissioned by Plaintiff were correct (and it is not) ▮▮▮▮▮▮▮

▮▮▮▮▮▮. *See Mercantile Texas Corp. v. Bd. of Governors of Fed'l Reserve Sys.*, 638 F.2d 1255, 1268 (5th Cir. Unit A Feb. 1981) ("A probability signifies that an event has a better than fifty percent chance of occurring."); *Dictionary.com* ("probable" means "having more evidence for than against").

⁹ Moreover, only those affirmative representations regarding a specific fee or charge that clearly imply a pass-through can support a FDUTPA claim. *Cf., e.g., Latman v. Costa Cruise Lines, N.V.*, 758 So. 2d 699 (Fla. 3d DCA 2000) (pass-through where defendant kept fee which it affirmatively

regarding anything, much less regarding a separate fee for a specified purpose, and JetBlue certainly never stated that it was not being compensated in connection with the insurance.

*Bergman v. Royal Caribbean Cruises, Inc.,* 2005 WL 8156741 (S.D. Fla. Sept. 29, 2005) is squarely on point and fatal to Plaintiff's claims. In *Bergman*, cruise lines represented that they would arrange optional shore excursions "solely for Passenger's convenience," but did not reveal that they were being compensated for booking the excursions. *Id.* at *1. The plaintiffs claimed that the statement was "deceptive because it implies that the price paid for shore excursions goes directly to the operator of the excursion" and "deceives the passengers into thinking the Defendants are making no additional profit from the passengers' shore excursions." *Id.* at * 1, 2. The court rejected that argument and found no deception as a matter of law, explaining that, unlike in the pass-through cases, "[h]ere passengers were only told how much to pay Defendants for an excursion. Defendants made no representations on how price was calculated, nor did they use terminology in their pricing section that would lead a passenger to think that money was going directly to a third party." *Id.* at *2. The same is true here. The price for the AGA policy is presented in AGA's Offer Box, and there is no representation about how that fee was calculated or that JetBlue will not be compensated.

Indeed, applying the pass-through line of cases to this case would place on businesses an otherwise non-existent duty to disclose their financial arrangements with vendors regardless of whether that interest had any impact on the product itself or its price. That duty is found nowhere in the law, including in the laws governing advertising, marketing or the conduct of airlines or insurance entities. *See, e.g., West Sunrise Dev. Corp. v. Smoler*, 2016 WL 5369338, *2-3 (S.D. Fla. Sept. 26, 2016) (affirming grant of summary judgment for defendant because he owed no duty to disclose his financial interest in transaction).

In addition, essential to the pass-through cases is the direct collection and retention by defendant of a specific portion of a fee paid by plaintiff coupled with the affirmative misrepresentation of the purpose of the fee. *See, e.g., Latman* 758 So. 2d 699 (applying pass-through analysis where the defendant *collected and kept* a "port charge," rather than passing the

represented as a "port charge" instead of sending it to the port authorities as the description of the fee strongly implied) *with Vorst v. TRC Retail Grp., Inc.*, 2012 WL 13026643 (S.D. Fla. Apr. 12, 2012) (no FDUTPA claim where defendant charged "oil disposal fee," although incurring no expense for oil disposal, because the description of the fee did not imply a pass-through).

proceeds of that charge to the port authorities). Here, in addition to not making an affirmative misrepresentation at all, much less one about a specific fee for a specific purpose, JetBlue does not collect the money paid by passengers to AGA for their insurance. The Confer Declaration explains that ██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████ *See* SUMF, ¶¶ 13-17, 30-32.  This is not a pass-through case.

### B.    All of Plaintiff's Claims Fail Because She Was Not Injured or Damaged

Plaintiff's claims also fail because there is no evidence of any injury or damage to Plaintiff as a result of JetBlue's receipt of compensation from AGA:  There is no evidence that Plaintiff could have obtained the travel insurance for less than she paid, that the price of the insurance was inflated as a result of JetBlue being compensated by AGA, or that Plaintiff did not get the benefit of her bargain (a valid and enforceable insurance policy at the quoted price). To the contrary, the undisputed evidence demonstrates that the price of the insurance sold by AGA to JetBlue's passengers was among the least expensive of comparable travel products offered in the market. *See* SUMF, ¶¶ 61-66.[10] The absence of any evidence of an injury or damage dooms Plaintiff's claims for two, independently sufficient, reasons:

#### 1.    Plaintiff Lacks Article III Standing

Plaintiff lacks Article III standing to assert any claims against JetBlue because she has not and cannot demonstrate an injury in fact caused by JetBlue. The injury in fact requirement requires that Plaintiff's injury be "concrete," that is, "*it must actually exist.*" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (emphasis added). Plaintiff has not and cannot allege an injury in fact sufficient to confer standing. *See, e.g., Rivera v. Wyeth-Ayerst Labs*, 283 F.3d 315, 320 (5th Cir. 2002) (dismissing plaintiff's claims for lack of standing because she "paid for an effective pain killer, and she received just that—the benefit of her bargain"); *Debernardis v. IQ Formulations, LLC*, 2018 WL 1536608, *3 (S.D. Fla. Mar. 29, 2018) (no standing where no allegations that the

---

[10] Indeed, Plaintiff acknowledged that she never checked to see if she could purchase comparable insurance for less. She also admitted that she purchased travel insurance through other sources, and her documents evidence that the comparable insurance she bought through ████████████████████

██████ . *See* SUMF, ¶¶ 26, 59, 60.

product was deficient or that plaintiff paid a price premium). Here, Plaintiff lacks standing because she is unable to show either that she paid an inflated price for her insurance or that she did not receive a valid policy as offered.

### 2.    Actual Damages or Injury is an Element of Each of Plaintiff's Claims[11]

A RICO plaintiff must prove, among other things, "the requisite injury to 'business or property and [] that such injury was by reason of the substantive RICO violation.'" *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016); 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a [RICO] violation … may sue therefor"). As explained *supra*, Plaintiff was not injured because there is no evidence that she paid an inflated cost *as a result of* the alleged deceptive acts. That failure is fatal to Plaintiff's RICO claims. Thus, in *Bowe v. Public Storage*, 106 F. Supp. 3d 1252 (S.D. Fla. 2015), the court granted summary judgment to the defendant on plaintiffs' RICO claims because "there is no evidence that Plaintiffs were overcharged for their insurance." *Id.* at 1264-65, 1266. And so it is here; Plaintiff was not charged an inflated price.

Similarly, FDUTPA also requires that Plaintiff suffer actual damages. *See* § 501.211(2), Fla. Stat.; *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). It is well established that "actual damages" under FDUTPA is "benefit of the bargain,"—"'the value of the product as promised minus the value of the product delivered.'" *Carriuolo v. Gen'l Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016) (citation omitted). Actual damages occur where the misleading conduct allows the defendant "to command a price premium and to overcharge customers …." *Id.* at 987; *Fitzpatrick v. Gen'l Mills Inc.*, 635 F.3d 1279, 1283 (11th Cir. 2011) (same); *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291,

---

[11] For all of her claims, Plaintiff demands that JetBlue disgorge all of the marketing fees it received from AGA, *see*, Am. Compl., Prayer for Relief (h) (seeking "restitution of the amount [paid to] JetBlue"); Plaintiff's Resp. in Opp. to JetBlue's Mot. to Dismiss Am. Compl. [ECF 39], 12, 13-14, 19 (FDUPTA - arguing that "damages equate to the amount kept by the defendant"; unjust enrichment - seeking "benefits" allegedly retained by JetBlue; and RICO – seeking "the amount of JetBlue's [alleged] unlawful kickback, which represents the amount of Plaintiff's damages")—bears no relation to any actual damages or injury. In fact, if Plaintiff is granted the relief she seeks as calculated by her designated expert, she will be awarded nearly all of the money she paid for her policy, *see* SUMF, ¶¶ 71-74, resulting in an inequitable windfall to her. *See* JetBlue's Answer to Am. Compl. [ECF 90], Nineteenth Affirmative Defense. *See also In re Elkowni*, 318 B.R. 605, 609 (Bankr. M.D. Fla. 2004) (claimant was not entitled to an award of damages based on debtor's breach where such an award would result in a windfall to claimant).

1310 (S.D. Fla. 2018) same) (citation omitted). Here, Plaintiff did not pay a price premium nor was she overcharged for her insurance. To the contrary, the evidence shows that Plaintiff's purchase price is amongst the least expensive on the market, *see* SUMF, ¶ 61. Because Plaintiff cannot prove actual damages, her FDUTPA claim fails. *See Moore v. GNC Holdings, Inc.*, 2014 WL 12634919, *5 (S.D. Fla. Mar. 18, 2014) (granting summary judgment on FDUTPA claim where the evidence demonstrated that "no consumer paid a premium" and therefore there were no actual damages); *Walker*, 2012 WL 13102078, at *4 (granting summary judgment on FDUTPA claim where plaintiff did not produce any evidence of the difference in market value between the product he got and what he paid for it); *Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335 (S.D. Fla. 2007) (FDUTPA claim failed where plaintiff got the benefit of her bargain and thus could not plead that she had suffered a loss).

Likewise, because Plaintiff cannot prove she was overcharged, she has no recoverable damages under unjust enrichment. To prove unjust enrichment, a plaintiff must demonstrate, among other things, that he "has conferred a benefit on the defendant . . . [and] that the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.'" *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (citation omitted). "[T]he circumstances necessary to establish the [inequitable element] must demonstrate that the plaintiff was harmed in some way …." *Green v. McNeil Nutritionals, LLC*, 2005 WL 3388158, *5 (Fla. Cir. Ct. Nov. 16, 2005); *Jaffe v. Bank of America, N.A.*, 667 F. Supp. 2d 1299, 1322 (S.D. Fla. 2009) ("There must be actual damages incurred before a plaintiff can recover for a claim of unjust enrichment."), *aff'd*, 395 F. App'x 583 (11th Cir. 2010).

Thus, where, as here, the defendant "has given adequate consideration to someone for the benefit conferred, a claim for unjust enrichment fails." *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. 5th DCA 2007); *Moore*, 2014 WL 12634919, at *5 (granting summary judgment on unjust enrichment claim where, "[e]ven if Plaintiffs were deceived into purchasing the product, they paid only the market value of that Product … It would [thus] not be inequitable for Defendant to retain the money received from Plaintiffs' purchase of the Product."); *Van Zanen v. Qwest Wireless, LLC*, 550 F. Supp. 2d 1261, 1267 (D. Col. 2007) (unjust enrichment claim premised on sale of insurance policy by unlicensed agent failed because plaintiffs "have suffered no detriment, expense, or impoverishment as a result. Instead, they obtained a valuable product for

which they bargained, and which they intend to keep."), *aff'd*, 522 F.3d 1127 (10th Cir. 2008). Here the evidence is undisputed that Plaintiff received a valid and enforceable travel insurance plan, that she already received the benefit of protection for her trip, and that the policy Plaintiff purchased was amongst the least expensive on the market, *see* SUMF, ¶ 61. It is undisputed that Plaintiff received the benefit of her bargain and suffered no injury or damages.  Thus, Plaintiff cannot prove that it would be inequitable for JetBlue to be compensated, and retain what it was paid, for allowing AGA to sell insurance in JetBlue's booking path. Indeed, what would be inequitable would be awarding JetBlue's marketing fees to Plaintiff such that JetBlue would be providing advertising for free, even though Plaintiff agreed JetBlue should be compensated. The unjust enrichment claim fails.

### 3.    The Pass-Through Line of Authority Does Not Obviate the Requirement that Plaintiff Prove Actual Injury or Damages

As noted, Plaintiff attempts to rely on the pass-through line of cases, in which some courts have seemingly conflated the distinct FDUTPA elements of deception, causation and injury to hold that where an *affirmative representation regarding a specific charge or fee* is akin to a statement that the money collected by the defendant will be passed-through to a third party, "reliance and damages are sufficiently shown by the fact that the passenger parted with money for what should have been a pass-through [] charge, but the [defendant] kept the money." *Latman*, 758 So. 2d at 703. This line of authority does not apply here for the reasons stated *supra*, but even if it did, proof of actual injury or damages is still required.

The pass-through cases are premised on the notion that the plaintiffs *did not get the benefit of their bargain and paid a price premium* because they bargained for a specific charge for a specific purpose, but the charge or purpose differed from what the defendant represented. *See, e.g., Latman*, 758 So. 2d at 703 ("port charges" not paid to port authority); *Cabrera v. Haims Motors, Inc.*, 288 F. Supp. 3d 1315, 1325 (S.D. Fla. 2017) ("DMV E-File" and "registration and titling fees" were "charges that a reasonable consumer would likely think were mandated by and forwarded to the state" but Defendant "kept the difference between the fees charged and the amount actually paid to register and title the [car]," which "*resulted in actual damages suffered by Plaintiff due to the overage.*") (emphasis added), *granting motion for relief from judgment on other grounds*, 2018 WL 5000016 (S.D. Fla. Jan. 24, 2018); *Turner v. Greenberg Assocs. v. Pathman*, 885 So. 2d 1004, 1006 (Fla. 4th DCA 2004) ("freight/insurance" charge which defendant

represented it was "simply passing through," but defendant retained a portion, resulting in an *inflated* delivery charge to plaintiff). In stark contrast, here the evidence demonstrates unequivocally that Plaintiff voluntarily purchased a policy from AGA (not JetBlue) at a specified price that she agreed to pay, that she got and was covered by an insurance policy pursuant to the filed forms and rates filed with the state for the insurance policy, and that she did not pay an inflated price for that policy as a result of the compensation paid to JetBlue. *See* SUMF, ¶¶ 19-25, 29, 56-58, 61, 67-70. Plaintiff cannot prove actual damages or injury and, as a result, her claims fail.[12]

       **C.**       **There is No Evidence that JetBlue *Caused* Any Injury or Damage to Plaintiff**[13]

           **1.**       **FDUTPA**

      To prevail on a FDUTPA claim, a plaintiff must also prove that the deceptive acts of the defendant *caused* the plaintiff's injury or damage. *See Dolphin LLC*, 715 F.3d at 1250; *Flexiteek Americas, Inc. v. Plasteak, Inc.*, 2013 WL 6233175, *5 (S.D. Fla. Dec. 2, 2013) (explaining that causation is a necessary element of a FDUTPA claim and noting that "[c]ausation between the deceptive act or trade practice and the damages must be direct rather than remote or speculative."), *aff'd*, 603 F. App'x 994 (11th Cir. 2015). Here, proving causation would require a showing by Plaintiff that *but for* JetBlue's alleged misrepresentations and omissions, Plaintiff would not have purchased the policy. Plaintiff has not and cannot make this critical showing. Plaintiff admitted that she assumed JetBlue was being compensated for allowing AGA to market its products on the JetBlue website and, despite that knowledge, purchased the policy anyway, *see* SUMF, ¶¶ 48-54. Indeed, before Plaintiff purchase the travel insurance at issue ███████████████████████ ████████████████████████████████████████████████████████████ ████████████████████, *see* SUMF, ¶ 54. ███████████████████████

---

[12] Judge Scola, while holding that the Amended Complaint sufficiently *alleged* an injury to Plaintiff, recognized that an injury to Plaintiff would necessarily involve an overcharge resulting in Plaintiff paying an inflated price. *See* Dismissal Order, 13, 16.

[13] Standing under Article III also has a causation requirement—that plaintiff's injury is "'connected to the conduct of which [plaintiff] complains'" which mandates "'a showing that there is a substantial likelihood' of causation." *Wilding v. DNC Servs. Corp.*, No. 17-14194, at 12 (11th Cir. Oct. 28, 2019) (citations omitted). As discussed below, the evidence establishes that JetBlue did not cause Plaintiff's alleged injury. Because Plaintiff cannot prove causation, Plaintiff lacks standing for this additional reason. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (summary judgment for defendant on standing grounds is proper if plaintiff does not present evidence of specific facts supporting standing).

███████████████████████████████████████████████████████████

███████████████████████████████████████, *see* SUMF, ¶ 53. Moreover, Plaintiff does not recall what, if anything, she saw and read on the website when she was booking her flight and purchasing the insurance, *see* SUMF, ¶ 28, so she cannot establish that anything on the website caused her to make her purchase. The FDUTPA claim therefore fails. *See Dolphin LLC*, 715 F.3d at 1250 (affirming summary judgment for defendant on FDUTPA claim where plaintiff "presented no evidence that the allegedly misleading statement caused [plaintiff's] claimed damages"); *Molina v. Aurora Loan Servs., LLC*, 635 F. App'x 618, 627 (11th Cir. 2015) (affirming dismissal of FDUTPA claim where plaintiff did not allege that "but for" the alleged deceptive conduct she would not have applied for a loan modification); *Flexiteek Americas,* 2013 WL 6233175, at *6 (summary judgment granted where there was no evidence that defendant's statements were *known to plaintiff* or *caused* damage to plaintiff; the court rejecting the argument that causality could be inferred "based on the alleged deception and damages alone."); *Berenguer v. Warner-Lambert Co.*, 2003 WL 24299241, *2 (Fla. Cir. Ct. Jul. 31, 2003) (FDUTPA claim failed for *lack of causation* where plaintiffs did not allege that they saw purportedly misleading advertisements).

## 2.      RICO

In order to establish a civil RICO claim, a plaintiff must demonstrate

that the claimed racketeering activity . . . was the but-for <u>and</u> proximate cause of the plaintiffs' injuries. The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."

*Ray*, 836 F.3d at 1349 (emphasis in original; citation omitted); *see also Astro Tel, Inc. v. Verizon Fla., LLC*, 979 F. Supp. 2d 1284, 1296 (M.D. Fla. 2013) (granting defendant summary judgment on RICO claims where plaintiff failed to prove "'a sufficiently direct injury from the RICO violations and proximate cause.'"), quoting *Moore v. Tolbert*, 490 F. App'x 200 (11th Cir. 2012).

As noted above, there is no evidence that anything JetBlue said or did, or failed to say or do, was the cause, much less the direct cause, of Plaintiff's alleged injury, as is required to sustain a RICO claim. Indeed, this claim suffers from the same fatal defect identified by Judge Middlebrooks—no proximate causation—when he dismissed the parallel RICO claim containing nearly identical allegations brought by the same counsel against another airline:

Plaintiffs describe in significant detail a scheme in which an array of factors led them to believe that their trip insurance payments to Delta were pass-through

charges and that Delta would not receive any commissions or kickbacks from the sale. (SAC ¶¶ 27-36). Yet Plaintiffs fail to link their injury to the scheme—paying the "kickback" amount may establish injury-in-fact, but it does not in any way establish that Plaintiffs sustained an injury as the direct result of Delta's claimed fraudulent misrepresentation. *See Spirit Airlines*, 836 F.3d at 1350 ("The mere fact of having been misled does not ineluctably give rise to a RICO cause of action unless the act of misleading the plaintiffs actually caused them injury in their business or to their property that they would not otherwise have suffered.")

*Donoff* Order on Mot. to Dismiss, 13.[14]   The same is true here. Plaintiff admitted that JetBlue's alleged representations and omissions played no role in her decision to purchase the policy, *see* SUMF, ¶¶ 48-54. In fact, Plaintiff nearly always buys travel insurance when she travels ███████ ██████████, and with that experience she evaluated the price as a "good deal." *See* SUMF, ¶¶ 27, 57. The RICO claims thus fail because, as Judge Middlebrooks aptly held, there is no link, much less the requisite direct link, between JetBlue's alleged deceptive conduct and Plaintiff's decision to purchase the insurance. *See Ray,* 836 F.3d at 1350-51 (dismissing RICO claim because there were no allegations establishing a "direct link" between defendant's acts and the decision to purchase); *Bridge v. Phoenix Bond & Indemn, Co.*, 553 U.S. 639, 657-58 (2008) (RICO requires a showing that someone relied on the defendant's misrepresentations).

### D.   Plaintiff Did Not Directly Benefit JetBlue  (Unjust Enrichment Claim)

In order to prove unjust enrichment, Plaintiff must establish that she *directly* benefitted JetBlue. *See Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017). The cases decided since the Florida Supreme Court's pronouncement in *Kopel* have strictly construed this requirement. Thus, in *Johnson v. Catamaran Health Solutions, LLC*, 687 F. App'x 825 (11th Cir. 2017), for example, plaintiff-insureds paid membership fees to a company which then passed a portion of those fees onto the insurer to pay the premiums. The Eleventh Circuit, in affirming dismissal of the unjust enrichment claim against the insurer, held that "even if [the insurer] ultimately retained a portion of the [plaintiffs'] membership fees, [] *Kopel* indicate(s) that the [plaintiffs] conferred (at best) an indirect benefit on [the insurer]." *Johnson*, 687 F. App'x at 830. *See also John C. Nordt, III, M.D. and Assocs., P.A. v. Colina Ins. Ltd.*, 2018 WL 2688793, *4 (S.D. Fla. Apr. 13, 2018) (granting summary judgment where evidence established at best an indirect benefit flowing from plaintiff to

---

[14] Notably, although Judge Middlebrooks gave the plaintiff in *Donoff* the opportunity to replead his RICO claims, the plaintiff abandoned RICO and did not include any RICO claims in his Fourth Amended Complaint.  *See Donoff* Fourth Am. Compl. [ECF 167].

defendant). The evidence clearly establishes that Plaintiff did ***not*** confer a direct benefit on JetBlue, *see* SUMF, ¶¶ 13-17, 30-32.[15] The unjust enrichment claim fails for this additional reason.

Furthermore, Judge Scola held expressly that "to the extent JetBlue's alleged activities are illegal only because they are prohibited by Florida's insurance code, [Plaintiff] may not rely on them to support her FDUTPA claim," and further that Plaintiff could not premise her RICO claims on insurance-related allegations because the insurance statutes upon which Plaintiff purports to rely do not provide for a private right of action, citing to *Buell v. Direct Gen'l Ins. Agency, Inc.*, 267 F. App'x 907, 909 (11th Cir. 2008). *See* Dismissal Order, 9-10, 11. Importantly, the Eleventh Circuit recognized in *Buell* that "no statutory remedy exists in Florida for someone who buys insurance from an unlicensed agent," and determined "that no common law claim should be recognized based on the alleged statutory violation." *Id.* Clearly, Plaintiff cannot proceed with her unjust enrichment claim to the extent it relies on alleged violations of the insurance code regarding licensing or any other insurance statute for which there is no private right of action. *See also Donoff* Order on Mot. for Reconsideration [ECF 162], 3-9 (declining to reconsider dismissal of unjust enrichment claim predicated on alleged violation of Florida insurance code because licensing statute did not provide for a private right of action).

### E. There is No Evidence of an Agreement by JetBlue to the Overall Objective of the Alleged Conspiracy or to Commit Two or More Predicate Acts (RICO Conspiracy Claim)

The RICO conspiracy claim fails not only because the substantive RICO claim fails,[16] but also for the additional, independently sufficient reason that there is no evidence—direct or

---

[15]   Judge Scola found that Plaintiff had *alleged* that she directly conferred a benefit on JetBlue because "she alleges '[s]he paid money that ultimately was kept by [JetBlue].'" *See* Dismissal Order, 12. The *evidence* establishes that none of the money paid by Plaintiff was ultimately kept by JetBlue. But, even if it had been, the Eleventh Circuit's *Johnson* decision makes clear that even if any of the money paid by the plaintiff is ultimately kept by the defendant, that fact is insufficient as a matter of law to establish a direct benefit. Moreover, the evidence—which establishes that JetBlue was paid pursuant to a separate Marketing Agreement and not from amounts paid by Plaintiff for her insurance (*see* SUMF, ¶¶ 13-17, 30-32)—confirms that Plaintiff did not directly benefit JetBlue. See *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012) (no direct benefit where plaintiffs had not paid defendants directly, but instead were seeking money paid to defendants by a third party for marketing services under an entirely separate contract).

[16]   "[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails." *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007).

circumstantial—of an agreement between and among JetBlue and AGA or the other third parties to violate RICO. *See In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1348 (S.D. Fla. 2006) ("Plaintiffs must prove the Defendants agreed to participate in the affairs of the [enterprise] through a pattern of racketeering activity."), *aff'd sub nom. Shane v. Humana, Inc.*, 228 F. App'x 927 (11th Cir. 2007); *Carter v. MGA, Inc.*, 189 F. App'x 893, 895 (11th Cir. 2006) ("Plaintiff must establish *facts* to support an *agreement to violate* a substantive *provision of the RICO statute*.") (emphasis added).[17]

Here, there is no evidence establishing the requisite agreement. Indeed, in *Donoff v. Delta Air Lines*, Judge Middlebrooks dismissed the RICO conspiracy claim explaining:

> Plaintiffs argue that the requisite agreements may be inferred by the existence of the Marketing Agreement and other sealed documents demonstrating that [AGA] makes payments to Delta in connection with the sale of trip insurance. I have reviewed these documents, and while they do appear to indicate that [AGA] transferred funds to Delta, they neither indicate agreement to advance the overall objective of the conspiracy, which is allegedly "to defraud Plaintiffs and class members by marketing the travel insurance product through false and deceptive statements, while hiding the payment of illegal commission kickbacks," nor agreement to commit the predicate acts alleged, which are mail fraud, wire fraud, and money laundering.

*Donoff* Order on Mot. to Dismiss, 14-15 (citations omitted).  Judge Middlebrooks' words have been proven true here.

There is no evidence of an agreement by JetBlue to violate RICO nor any evidence that shows actions by JetBlue inconsistent with its pursuit of its own self-interest.  *See Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1295 (11th Cir. 2010) (no RICO conspiracy where defendants did not act "in any way inconsistent with the independent pursuit of their own economic self-interest."); *In re Managed Care Litig.,* 430 F. Supp. 2d at 1348, 1356 (granting summary judgment for defendants on RICO conspiracy claim where, even if underlying acts constituted mail and wire fraud, "those acts still could have been in furtherance of each individual Defendant's economic self-interest").

---

[17] The fact that JetBlue and AGA entered into the Marketing Agreement is clearly insufficient by itself to create a triable issue of fact on Plaintiff's RICO conspiracy claim. *See Jackson v. BellSouth Telecommunications*, 327 F.3d 1250, 1269 (11th Cir. 2004) ("[T]o be guilty of conspiracy . . . parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law.").

**F.      The Filed Rate Doctrine Bars Plaintiff's Claims**[18]

Plaintiff's theory of liability against JetBlue is based on her assertion that JetBlue's omissions and misrepresentations "result[] in consumers paying prices for insurance policies that are higher than they would be absent the Defendant's conduct." Am. Compl., ¶ 37. Plaintiff's challenge to the price she paid for the insurance is thus at the heart of her lawsuit.

The filed-rate doctrine bars claims, as here, seeking damages which "'would effectively change the rate paid by the customer-[plaintiff] to one below the filed rate paid by other customers'…." *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1322 (11th Cir. 2018); *Fowler v. Caliber Home Loans, Inc.*, 277 F. Supp. 3d 1324, 1332 (S.D. Fla. 2016) (*aff'd sub nom. by Patel*) ("The doctrine bars **all** claims which would *effectively* result in a rate lower than the filed rate.") (emphasis in original). The Eleventh Circuit "has firmly embraced the filed-rate doctrine and does not hesitate to invoke it when circumstances are appropriate." *Fowler*, 277 F. Supp. 3d at 1327.  As the Eleventh Circuit explained in *Patel*:

> Two rationales underlie the doctrine. The first, which is known as the "nondiscrimination principle," is that all rate-payers should be charged the same rate for the regulated entity's service. The second, which is termed the "nonjusticiability principle," is that duly-empowered administrative agencies should have exclusive say over the rates charged by regulated entities because agencies are more competent than the courts at the ratemaking process. These two principles are "applied strictly" meaning that the filed-rate doctrine bars "a plaintiff from bringing a cause of action even in the face of inequities whenever either the nondiscrimination strand or the nonjusticiability strand is *implicated* by the cause of action the plaintiff seeks to pursue."

*Id.* at 1321-22, 1323 (emphasis in original; citation omitted) (filed-rate doctrine applies if "the cause of action effectively contests the inclusion of certain charges in … a rate filed with the appropriate administrative agency.").

*Patel* is dispositive. In *Patel*, as here, plaintiffs alleged that they paid inflated amounts for insurance because the amounts they paid included alleged kickbacks to the loan servicers placing the insurance. *Id.* at 1320. In affirming the district court's dismissal of plaintiffs' claims against the loan servicers, including their RICO, unjust enrichment, and FDUTPA claims, on the basis of the filed-rate doctrine, the Eleventh Circuit explained that the fact that the plaintiffs claimed inflated premiums "therefore shows that the plaintiffs are challenging the reasonableness of [the]

---

[18] *See* JetBlue's Answer to Am. Compl. [ECF 90], Twenty-Eighth Affirmative Defense.

premiums; and since these premiums are based upon rates filed with state regulators, plaintiffs are directly attacking those rates as being unreasonable as well." *Id.* at 1326.[19] *See also Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1287-88 (S.D. Fla. 2015) (same).

The undisputed evidence demonstrates that the marketing fees paid to JetBlue are included in the rate filings made to state regulators and that AGA ensures that customers pay the filed rate for their insurance benefits, *see* SUMF, ¶¶ 67-70. Yet, through each of her claims, Plaintiff seeks to pay less than the rate filed for her insurance by virtue of a refund of the marketing fee paid to JetBlue under the Marketing Agreement during the month in question. *See supra* n.11. Plaintiff's claims, if successful, would effectively reduce Plaintiff's premium to *below* the filed rate by refunding to her the amount AGA pays to JetBlue—which amount is part of the expenses considered in setting the filed rate. The filed-rate doctrine forbids this result.[20]

## V.   CONCLUSION

For the foregoing reasons, JetBlue respectfully requests the entry of an Order granting it summary judgment on Plaintiff's FDUTPA, unjust enrichment and RICO claims, entering Final Judgment in favor of JetBlue, dismissing Plaintiff's case with prejudice, and reserving jurisdiction as appropriate, including for the imposition of attorneys' fees, and granting such further relief as this Court deems proper.

---

[19] The court in *Patel* also made clear that "there is no fraud exception to the filed-rate doctrine, defeating plaintiffs' attempt at circumventing the rule by alleging a fraudulent kickback scheme." *Id.*; *see also Taffet v. Southern Co.,* 967 F.2d 1483, 1495 (11th Cir. 1992) ("It is [] "'the impact [a civil action] will have on agency procedures and rate determinations,' rather than the defendant's underlying conduct, [that] controls whether the filed-rate doctrine applies."). And this applies not just to fraud on a plaintiff but also to fraud on state regulators in the rate-setting process—as Plaintiff has attempted to allege, but cannot prove. *See id.* at 1495 (filed-rate doctrine applies even if "filed rate is obtained through fraud").

[20] Plaintiff can have "no legally cognizable injury by virtue of paying the filed rate." *See id.* at 1488, 1494-95 (dismissing RICO claim because "one does not suffer the predicate 'injury to business or property' by paying the filed rate."). The filed-rate doctrine thus provides an additional reason why Plaintiff cannot prove an injury or damages, which, as noted, is fatal to all of her claims.

Respectfully submitted this 8th day November, 2019.

*s/ Lazaro Fernandez, Jr.*

Lazaro Fernandez, Jr.
Fla. Bar No. 716545
Email:  lfernandez@stackfernandez.com
Denise B. Crockett
Email:  dcrockett@stackfernandez.com
Fla. Bar No. 327913
**STACK FERNANDEZ & HARRIS, P.A.**
1001 Brickell Bay Drive, Suite 2650
Miami, Florida 33131
Tel: (305) 371-0001

-and-

Gayle I. Jenkins, Esq.
Email: gjenkins@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071-1543
Tel: (213) 615-1863

*Attorneys for Defendant, JetBlue Airways
Corporation*
