**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO.:  18-62193-CIV-SMITH/VALLE

MILITA BARBARA DOLAN, on Behalf of
Herself and All Others Similarly Situated,

      Plaintiff,                                 **CLASS ACTION**

vs.

JETBLUE AIRWAYS CORPORATION,

      Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**JETBLUE AIRWAYS CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Milita Dolan ("Plaintiff") respectfully submits the following opposition to Defendant JetBlue Airways Corporation's ("JetBlue" or "Defendant") Motion for Summary Judgment and Memorandum of Law in Support [ECF No. 141] ("Motion" or "Mot.").

## I.    INTRODUCTION

On JetBlue's website, Plaintiff purchased a trip insurance policy from Allianz Global Assistant ("Allianz" or "AGA").  Plaintiff understood from JetBlue's website that the entire charge for her policy would go to Allianz.  Unbeknownst to Plaintiff, ███ of the price she paid for her policy was ultimately retained by JetBlue as an undisclosed kickback.  In denying JetBlue's motion to dismiss, Judge Scola followed Judge Martinez and Judge Goodman's decision in a virtually identical action against American Airlines and held that it would be deceptive in violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") if JetBlue's website created the "net impression" that the charge for Plaintiff's trip insurance policy was a "pass-through" fee that would be paid to Allianz, but JetBlue in fact retained a portion of the charge.  The evidence now categorically supports these facts, and it is undisputed that the ultimate determination of whether JetBlue's conduct is deceptive in violation of FDUTPA is a question of fact for the jury.  Similarly, the jury must decide whether JetBlue's conduct violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and whether JetBlue was unjustly enriched through its undisclosed kickback scheme.

JetBlue moves for summary judgment but entirely fails to meet its burden to demonstrate the absence of genuine disputes as to any material fact.  Instead, JetBlue mischaracterizes or misrepresents the case law and evidence it cites, at times it simply ignores the applicable law or evidence that does not fit its false narrative, and at others, it attempts to improperly seek reconsideration of Judge Scola's well-reasoned holdings by raising the exact same arguments that Judge Scola previously rejected.  Thus, it is critical that JetBlue's arguments, and the evidence and case law it cites in support, be analyzed extremely carefully.  A careful review of JetBlue's disingenuous tactics will lead to only one conclusion: JetBlue has not come close to meeting its burden on summary judgment.  For the reasons detailed below, JetBlue's Motion should be denied.

## II.    FACTUAL BACKGROUND

JetBlue's statement of alleged "undisputed" facts is a perfect example of its litigation tactics throughout this case, namely the creation of an entirely illusory fact pattern that suits its interests, without regard for the actual record evidence.  The reality, however, is far different, and

- 1 -

the record in this case is rife with evidence – including multiple admissions from JetBlue's and Allianz's own witnesses – that directly rebut what JetBlue claims are "undisputed" facts.[1]

JetBlue characterizes its relationship with Allianz, and the compensation it receives when a consumer such as Plaintiff purchases a trip insurance policy, in a manner that its own witnesses admit is not true. Specifically, JetBlue claims it does nothing more than allow Allianz to "advertise" on its website in exchange for a fee, while simultaneously claiming that it has no input whatsoever into the content of those advertising messages. These allegedly "undisputed" facts are categorically false, as the record demonstrates. *First*, JetBlue does not sell advertising space to Allianz, and JetBlue receives no "advertising fees." The evidence shows that what JetBlue receives are commission payments from Allianz on a policy-by-policy basis, and the percentage of these commissions is staggering, totaling ███ of *each consumer's* payment. JetBlue admits this fact. RSF ¶¶2, 7, 15 ("████████████████████████████████████████").

*Second*, JetBlue's attempt to run from its misrepresentations and omissions by pinning the blame on Allianz also rests on a false foundation. JetBlue and Allianz both admit that: (1) JetBlue has input into the content of the insurance offers on its own website; (2) JetBlue never told consumers the identity of the entity offering the product to them; and (3) JetBlue has ██████████ ████████████████████. RSF ¶¶3, 8. Indeed, JetBlue is empowered to remove the offer box from its website at any time. *Id.* (Marketing Agreement §3.2). Thus, the idea that JetBlue somehow does not actually make the false statements and omissions on its own website is categorically untrue based upon Defendant's own testimony and documents.

What is undisputed is that at no time has JetBlue ever told any consumer, including Plaintiff, that it receives a ███ kickback from the consumer's insurance purchase. JetBlue ironically tries to turn this undisputed fact in its favor, claiming that while it never told any consumer about its kickbacks, it also never told consumers it was *not* receiving compensation. This is wholly disingenuous, and it infects all of JetBlue's arguments, including its expert reports. Again, JetBlue creates a false construct – the notion that it receives some form of "advertising fee" – that its experts then use to conduct surveys asking whether respondents would assume that JetBlue is receiving some form of alleged "advertising fee" in exchange for giving Allianz access

---

[1] Factual citations are to Plaintiff's concurrently filed Response to JetBlue's Statement of Facts ("RSF").

to its website.  Naturally, many people would assume (as would be the case for a billboard on Interstate 95) that if an entity rents advertising space it pays a fee, but ***that is not the fact pattern of this case***.  As much as JetBlue and Allianz may want this Court (and the public) to believe that they simply exchange a routine advertising fee untethered to each purchase of travel insurance, that is utterly false.  All of JetBlue's survey evidence and experts are wholly irrelevant, as ***none of them*** asked consumers the actual relevant question in this case: whether JetBlue's receipt of ██ ***of the money they pay*** would be relevant to their purchase decision.  As Plaintiff's experts have demonstrated, the answer to that question is yes.  RSF ¶¶36-46.

Finally, JetBlue's attempts to claim that it somehow does not receive a portion of what customers pay for policies, or that the filed rate doctrine bars Plaintiff's claims, are again disconnected from the factual record.  The filed rate doctrine is irrelevant here because JetBlue and Allianz were not charging any filed rate, as confirmed by the chief Allianz underwriter's testimony.  RSF ¶¶68, 74.  Further proof of this fact is the contract between JetBlue and Allianz, which never mentions the charging of any filed rate, but rather states that price of insurance is based off a percentage of the consumer's airline ticket price.  *Id*. at ¶69 (contract page 12 states pricing is "████████████████").  As to JetBlue's claim that it somehow does not receive the very same money its customers are paying for insurance policies, Allianz's own senior management admitted that the same money JetBlue's customers pay can revert directly back to JetBlue (and indeed Allianz has no safeguards in place to prohibit that).  *Id.*

At bottom, JetBlue creates this false factual construct because it knows the actual facts, as demonstrated by its own witnesses and its own documents, not only preclude summary judgment in its favor, but they prove Plaintiff's case on each of her claims.

**III.   ARGUMENT**

   **A.   JetBlue Fails to Meet Its Burden to Demonstrate the Absence of a
          Genuine Dispute as to Any Material Fact On the Issue of "Deception"**

JetBlue asserts that "[i]n order to prevail on any of her claims, Plaintiff must prove a deception by JetBlue."  Mot. at 5.  This is false.  "Deception" is an element of Plaintiff's FDUTPA claim only, and JetBlue cites no law holding otherwise.  The only legal analysis or authorities JetBlue provides pertain to Plaintiff's FDUTPA claim, and disputed issues of material fact preclude summary judgment as to the element of deception in Plaintiff's FDUTPA claim.

The law is clear on the applicable test for deception here: "In determining whether a representation is likely to mislead consumers acting reasonably, courts consider the *net impression* created." *Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1299 (S.D. Fla. 2017) (original emphasis);[2] *Coleman v. CubeSmart*, 328 F. Supp. 3d 1349, 1365 & n.6 (S.D. Fla. 2018) (same). Whether a net impression is likely to mislead a reasonable consumer is a question of fact for the jury. *Zamber*, 282 F. Supp. 3d at 1300. Here, the jury will decide whether JetBlue's website creates a "net impression" that the charge for trip insurance is a "pass through" fee that is paid to Allianz, and whether that impression is deceptive in light of the fact that ▮ of the fee goes to JetBlue. *See* ECF No. 87 at 12 ("MTD Order") ("This is deceptive.").[3]

> ## 1. Judge Scola's Holding that This Is a Pass-Through Case Is the Law of the Case and Should Not Be Reconsidered

Judge Scola previously held that the facts of this case state a FDUTPA claim under a "pass-through" theory. MTD Order at 12-14. JetBlue attempts to escape that holding by inventing out of whole cloth additional purported requirements JetBlue claims are necessary to plead a viable pass-through case. Mot. at 8-9 & n.9. Judge Scola's holding constitutes the law of the case, and JetBlue offers no reason for this Court to disturb that well-reasoned holding.[4] *See Klay v. All Defendants*, 389 F.3d 1191, 1197 (11th Cir. 2004) ("The law of the case doctrine "'posits that

---

[2] Citations, internal quotations, and footnotes omitted and emphasis added unless otherwise noted.

[3] JetBlue asserts that "[b]ecause Plaintiff claims to be typical of the putative class, the fact that she assumed JetBlue was being compensated evidences that JetBlue's actions were not deceptive to her or to a reasonable consumer[.]" Mot. at 7 n.7. This assertion mischaracterizes the evidence, RSF ¶¶48-51, 57-58, and the class certification typicality inquiry, which asks whether claims arise from the same course of conduct but allows for "factual variations," which do not render a "claim atypical unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984).

[4] Indeed, Judge Scola's holding is supported by no less than *seven* cases holding that facts just like those presented here pled a FDUTPA claim under a pass-through theory: *Latman v. Costa Cruise Lines, N.V*., 758 So. 2d 699, 703 (Fla. 3d DCA 2000); *Turner Greenberg Assocs., Inc. v. Pathman*, 885 So. 2d 1004, 1008 (Fla. 4th DCA 2004); *Jankus v. Edge Investors, L.P*., 650 F. Supp. 2d 1248, 1257 (S.D. Fla. 2009); *Bowe v. Public Storage*, 2014 WL 12029270, at *3 (S.D. Fla. July 2, 2014); *Deere Constr., LLC v. Cemex Constr. Materials Fla., LLC*, 198 F. Supp. 3d 1332, 1340 (S.D. Fla. 2016); *Zamber*, 282 F. Supp. 3d at 1300; *CubeSmart*, 328 F. Supp. 3d at 1366. Judge Middlebrooks reached the exact same holding as Judge Scola in denying a motion to dismiss on indistinguishable facts. *Donoff v. Delta Air Lines, Inc*., No. 9:18-CV-81258 (S.D. Fla.).

when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)).  The purported pass-through-case requirements JetBlue asserts are a fiction with no legal support.  JetBlue simply cherry-picks from different cases certain facts that courts found to be *sufficient* to state a claim under a pass-through theory, but JetBlue has not cited a single case holding that such facts are *necessary* to state a claim.  *See Fletcher v. Lupo*, 2009 WL 10688890, at *7 (N.D. Ala. Apr. 15, 2009) (recognizing the "error of logic in failing to distinguish between sufficient and necessary conditions of liability").

As to JetBlue's first invention that pass-through cases require an "affirmative misrepresentation as to the use of a specific fee or charge for a particular purpose," Mot. 8-9, in the virtually identical *Zamber* case – a case that JetBlue neither cites nor distinguishes – Judge Martinez and Judge Goodman found that "[e]ven if Plaintiff had not adequately pled a deceptive representation, [s]he would still alternatively state a claim based on a deceptive omission" as "FDUTPA applies to both representations and omissions." 282 F. Supp. 3d at 1300 n.8; *see also CubeSmart*, 328 F. Supp. 3d at 1365 n.6 (same).  Contrary to JetBlue's unsupported assertion, Judge Martinez and Judge Goodman noted that a plaintiff is *not* required "to identify any statements or representations by Defendants as to how the fees would be calculated in order to state a claim of deception or falsity[.]" *Zamber*, 282 F. Supp. 3d at 1299.

JetBlue tellingly ignores the virtually identical *Zamber* case and instead cites to a highly distinguishable case it ironically claims is "squarely on point": *Bergman v. Royal Caribbean Cruises, Inc.*, 2005 WL 8156741 (S.D. Fla. Sept. 29, 2005).  The plaintiff in *Bergman* relied on a deceptive statement in the *liability clause* of a contract but failed to allege anything in the "pricing section" of a cruise ship shore excursion that implied a pass-through fee, and the court noted that "[t]he case may have been different if this phrasing was in a pricing section." *Id.* at *3.  By contrast, here, JetBlue *did* make an affirmative misrepresentation as to the use of a specific fee for a particular purpose "in the pricing section" of its trip insurance offer, *i.e.*, $X for trip insurance, when, in fact, ▮▮ of $X (*the majority*) went to JetBlue.  Thus, even under JetBlue's tortured rewriting of the law, the facts of this case clearly fall within the "pass-through" line of cases.

As to the second purported requirement JetBlue invents, there is no requirement that a representation "clearly imply" a pass through. Mot. at 8 n.9.  As the analogous *Zamber* case makes

clear, the test for deception is the "net impression" that is created, and whether JetBlue's website creates a net impression of a deceptive pass-through fee – "clearly" or otherwise – is a question of fact for the jury. 282 F. Supp. 3d at 1299-300.

Finally, JetBlue's third invention of law, that a defendant must directly collect and retain a portion of a pass-through fee (rather than receive a kickback from the third party), Mot. at 9-10, is entirely based on a hyper-technical interpretation of the words "collect" and "keep" that were alleged by the plaintiff in a single case: *Latman*, 758 So. 2d 699. There, the defendant cruise line tried to shirk pass-through liability by pointing the finger at the travel agents who technically sold the defendant's cruise line tickets directly to the customers. In rejecting the attempted distinction, the court wrote that it was the defendant cruise line, not the agents, who "elected to itemize an amount on the ticket for [deceptive] port charges, and determined the disposition of funds." *Id.* at 704; *CubeSmart*, 328 F. Supp. 3d at 1361-66 (denying motion to dismiss FDUTPA claim premised on pass-through theory where there was no allegation that the defendant storage company, as opposed to the third-party insurer, set the amount of the bogus charge). Here, similarly, it was JetBlue who gave customers the deceptive net impression that a customer's payment for travel insurance—all of it—was through to Allianz when, in fact, a portion of it was being "kicked back" to JetBlue. *Latman*'s passing reference to those words could not have been intended to create a standard of liability that defendants could easily escape by simply restructuring the flow of money in order to deceive consumers regarding purported "pass-through" fees while collecting undisclosed kickbacks with impunity. Indeed, Judge Scola agreed with Judge Martinez and Judge Goodman in the factually indistinguishable *Zamber* case (that JetBlue ignores), which also involved Allianz as the insurer, and rejected the same argument JetBlue advances here, albeit in connection with an unjust enrichment analysis, but the logic applies equally to a FDUTPA claim, which all three judges upheld despite this argument:

> It is immaterial whether [the defendant airline] initially retained a portion of the funds Plaintiff paid for his policy and then sent the rest to the insurer or if all the funds went to an insurer and then a portion was "kicked back" to [the defendant airline]. Certainly, "[u]nder either scenario, money was transferred from Plaintiff's pocket and into [the defendant airline]'s."

MTD Order at 12-13 (quoting *Zamber*, 282 F. Supp. 3d at 1301).

- 6 -

### 2. Genuine Disputes of Material Fact Exist as to Whether JetBlue Creates a Net Impression of a Pass-Through Fee

At bottom, this is plainly a pass-through case,[5] and there is ample evidence in the record from which a jury can find that JetBlue's website creates the net impression of a pass-through fee that is likely to mislead a reasonable consumer because JetBlue receives ▮ of the fee. The primary evidence the jury will consider is JetBlue's website.[6] *See Fed. Trade Comm'n v. Alcoholism Cure Corp.*, 2011 WL 13137951, at *25 (M.D. Fla. Sept. 16, 2011) (noting that "[t]he meaning of an advertisement, the claims or net impressions communicated to reasonable consumers is fundamentally a question of fact" that "may be resolved by the terms of the advertisement itself"). In addition, the record includes expert evidence by Brian M. Sowers ("Sowers") who has opined, based on reliable consumer survey evidence, that "relevant consumers take away a misleading belief that JetBlue does not receive a portion of the money that consumers pay for trip insurance purchased through JetBlue's website." RSF ¶43. Although JetBlue criticizes Sowers' opinion,[7] and submits a competing expert report, which Sowers has opined is fatally

---

[5] JetBlue asserts that "applying the pass-through line of cases here would place on businesses an otherwise non-existent duty to disclose their financial arrangements with vendors regardless of whether that interest had any impact on the product itself or its price" and cites a distinguishable case involving an escrow agent's duty to inform a bankruptcy receiver of its financing efforts, which does not establish any blanket rule regarding a duty to disclose "financial interests." Mot. at 9 (citing *W. Sunrise Dev. Corp. v. Smoler*, 2016 WL 5369338, at *2-3 (S.D. Fla. Sept. 26, 2016)). JetBlue ignores the fact that the law ***does*** impose a duty to disclose material facts and a duty to not mislead with respect to pass-through charge. The law makes no exception for purported "financial arrangements with vendors." JetBlue's plea for amnesty is far off the mark.

[6] JetBlue suggests Plaintiff cannot prove she actually saw any of the representations in the "offer box" on JetBlue's website. Mot. at 6. Plaintiff unequivocally testified that when purchasing her trip insurance from JetBlue's website, she took away the impression a pass-through fee, and that JetBlue would not be receiving a majority of her payment. RSF ¶¶48-51. Further, JetBlue produced in discovery screen shots of the exact images Plaintiff saw when making her purchase, which will be presented to the jury to make its own determination of whether JetBlue's website created a net impression of a pass-through fee to an objective reasonable consumer. *Id*. ¶28. Even though Plaintiff did take away this net impression, her subjective views are irrelevant to her claim. *See Zamber*, 282 F. Supp. 3d at 1299 ("Because 'an objective test is employed in determining whether the practice was likely to deceive a consumer acting reasonably,' a plaintiff 'need not show actual reliance on the representation or omission at issue.").

[7] JetBlue's criticisms of Sowers' opinion do not affect its admissibility. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2003) (expert t criticisms "go to the

flawed, *Id*. ¶¶36-46, such a "battle of the experts" over a disputed issue of material fact must be resolved by the jury, which precludes summary judgment. *See Goldman v. Standard Ins. Co*., 341 F.3d 1023, 1036 (9th Cir. 2003) (denying summary judgment because determination "who is correct in this battle of experts is not for [the Court] to decide").

JetBlue's attempt to ignore the evidence and have deception decided as a matter of law should be rejected. While JetBlue asserts that its representations are "true" and, therefore, cannot be deceptive as a matter of law, Mot. at 6,[8] the virtually identical *Zamber* case makes clear that "[i]f the statements are likely to mislead reasonable consumers, then it makes no difference if the statements are technically or literally true." 282 F. Supp. 3d at 1299. Similarly, JetBlue's insistence that it is not deceptive to itemize the charge for trip insurance separately from JetBlue's fare is also contradicted by the virtually identical *Zamber* case JetBlue ignores, where Judge Martinez and Judge Goodman noted that the "net impression" that the charge for trip insurance is a "pass through" fee "is reinforced by the fact that the policy premium is allegedly not included in the customer's bill for the purchased airfare, but rather is listed separately." *Id*. at 1300.[9]

---

weight, not the admissibility, of the evidence . . . offered" and citing cases). It should be noted, however, that JetBlue's false assertions that Sowers' survey shows that "over two-thirds of the consumers who view JetBlue's website did not form the opinion that JetBlue was not being compensated" demonstrates, at best, a lack of understanding of consumer survey science and, at worst, a knowing misrepresentation of the evidence, as Sowers' explicitly states that the results should not be interpreted this way. RSF ¶46. When interpreted in the correct manner, the data shows that nearly two-thirds (65.7%) of respondents in the Test Group did ***not*** take away a clear impression from the JetBlue website that JetBlue is being compensated by AGA. *Id*. And that is the relevant question on deception here.

[8] The case JetBlue cites for support does not stand for the proposition that JetBlue says it does. Rather, the court in *Allyn v. Am. Bd. of Med. Specialties, Inc.*, 2019 WL 297459, at *7 (M.D. Fla. Jan. 3, 2019), simply found that, unlike here, "nowhere do Plaintiffs explain how th[e true] statement would impact consumers."

[9] Instead of confronting the reality of the factually indistinguishable *Zamber* case, (S.D. Fla. 2007) JetBlue elected to cite the completely distinguishable case of *Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007). There, the plaintiff challenged the practice of adding an additional "cost recovery fee" to the daily rental rate charged to customers. *Id*. at 1363. Unlike here, the plaintiffs made no allegations of a pass-through charge, and the court found that, "[o]n the contrary, the term 'cost recovery fee' itself implies that the company will keep the money collected as 'recovery' for its costs." *Id*. at 1367. Here, unlike in *Berry*, *Zamber* holds that the separate itemization of trip insurance reinforces the net impression of a pass-through fee.

Further, in support of its bald assertion that this is a "pure alleged omissions case" for which "absence of a duty to disclose is fatal," JetBlue bizarrely cites the portion of Judge Scola's MTD Order that explicitly rejected JetBlue's "misdirected" argument and correctly found that "Dolan's complaint is ***not*** centered only on JetBlue's failure to disclose the alleged kickbacks it was receiving on each policy[.]" MTD Order at 14-15 (cited at Mot. at 7 n.6). As Judge Scola held, in light of the affirmatively misleading nature of JetBlue's conduct, Plaintiff is not required to establish a "duty" to disclose JetBlue's financial interest in trip insurance for her RICO claims. The same holds true for her FDUTPA claim. *See Coffey v. WCW & Air, Inc.*, 2018 WL 4154256, at *4 (N.D. Fla. Aug. 30, 2018) ("It is not clear whether plaintiffs must establish an independent duty to disclose on a FDUTPA claim based on an omission affirmatively used to mislead.").

Even if this were a "pure omissions" case, JetBlue has a duty to disclose its financial interest in trip insurance because it is material, and JetBlue concedes it has a duty to disclose material facts. Mot. at 7; *see also Coffey*, 2018 WL 4154256, at *4 ("a seller has a duty to disclose material information that is "not equally within the ken of the buyer").[10] Materiality is a question of fact for the jury. *Rasor Capital, LLC v. CMAX Fin. LLC*, 2017 WL 3481761, at *5 n.11 (S.D. Fla. Aug. 14, 2017). A jury can easily find materiality from Plaintiff's testimony that she probably would not have purchased trip insurance had she known of JetBlue's kickback, RSF ¶¶48-51. JetBlue's mischaracterization of Plaintiff's testimony[11] and its flawed consumer survey, *id.* ¶47, at best, create a genuine dispute of material fact that precludes summary judgment.

---

[10] JetBlue attempts to invent an additional requirement to create a duty to disclose: that the "disclosure [is] necessary to prevent" a plaintiff from being misled. Mot. at 7 (citing *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1278 (S.D. Fla. 2003)). Not even the *Managed Care* case JetBlue cites establishes such a requirement, which appears to conflate the questions of materiality and deception. The law imposes a duty to disclose material information. Full stop. Deception is a separate inquiry.

[11] Despite JetBlue's indefatigable efforts to mischaracterize the theory of Plaintiff's case, the issue is not whether JetBlue is "being compensated." Mot. at 17. The issue is that JetBlue receives an undisclosed ▮ ***kickback*** on each trip insurance policy sold, *i.e.*, ***over half*** of the money that a reasonable consumer would believe is going to Allianz to pay for the cost of the policy. While Plaintiff assumed JetBlue would receive some compensation, JetBlue cannot deny that Plaintiff unequivocally testified that she did not know that JetBlue received a ▮ kickback from her payment and that this fact is material to her. Mot. at 7.

Finally, JetBlue attempts to escape liability by asserting that "the content of the insurance offer was authored by AGA."  Mot. at 6 n.5.  This is false.  The content was created through a collaborative effort, through which JetBlue reviews content, recommends specific wording to Allianz, and holds veto authority over all content that appears on its website.  RSF ¶3.  Further, JetBlue cannot escape the fact that the content appears on *JetBlue's* website, on which *JetBlue* elected to deceptively itemize the charge for trip insurance separately from airfare, and it is the net impression of *JetBlue's* website that is at issue, not any individual statement standing alone.  *Id.* The Declaration of Bengench Atayev JetBlue cites as evidence (ECF No. 139-4 ("SUMF")) does not contradict any of these facts, and in fact, does not even state that Allianz authors the content of the offer box.  At bottom, "[w]hether a reasonable consumer would interpret [JetBlue's] representations to mean that the trip insurance premium is a 'pass through' charge is thus a question of fact for a jury."  *Zamber*, 282 F. Supp. 3d at 1300.  Thus, even with JetBlue's flimsy evidence, JetBlue has only created a genuine issue of material fact that cannot be resolved on summary judgment.  JetBlue's Motion should be denied.

    **B.**    **Summary Judgment Is Not Warranted on the Issues of Damages Because JetBlue's Motion Grossly Mischaracterizes Applicable Law**

        **1.**    **FDUTPA Does Not Require a Showing of "Benefit of the Bargain" Damages or "Premium Payment" Damages**

In denying JetBlue's motion to dismiss, Judge Scola followed the virtually identical *Zamber* decision that JetBlue ignores to hold that "[u]nder FDUTPA, . . . damages are shown by the fact that [the p]laintiff parted with money for what should have been a pass through charge but that was instead kept by [the defendant airline]."  MTD Order at 12 (citing *Zamber*, 282 F. Supp. 3d at 1300 (collecting cases)); *see also Morgan v. Pub. Storage*, 2015 WL 11233111, at *2 (S.D. Fla. Aug. 17, 2015) (damages in pass-through case are the amount kept by the defendant); *Turner*, 885 So. 2d at 1008 (same).  Judge Scola's well-supported holding constitutes the law of the case, and JetBlue offers no reason for this Court to reconsider it.  *Klay*, 389 F.3d at 1197.

Indeed, JetBlue ignores Judge Scola's holding, and the many other analogous pass-through decisions, and asserts that that the only way to measure damages for FDUTPA is through a benefit of the bargain or price premium theory.  Mot. at 11-12.  But the primary case JetBlue relies on *expressly involves a different theory of liability* alleged by the plaintiff.  *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016) ("[T]he price premium that plaintiffs allege as

damages is ***consistent with their theory of liability***" and "[t]he size of that premium . . . represents the damages ***attributable to that theory of liability***").  The other cases JetBlue cites similarly involve different contexts where the price premium measure of damages applies and, thus, are readily distinguishable from pass-through cases like this one.[12]  JetBlue's damages arguments, once again, "fall flat."  MTD Order at 12.  As Judge Scola (and other judges) have held, the correct measure of damages in this case is the undisclosed profit JetBlue retained.[13]  There is sufficient evidence in the record of damages, and JetBlue has done nothing to rebut that evidence or show the absence of a genuine dispute of material fact.[14]  Thus, JetBlue's Motion should be denied.

### 2. Evidence of RICO Causation Precludes Summary Judgment

With respect to Plaintiff's RICO claim, JetBlue asserts that Plaintiff was not injured because there is no evidence she paid an inflated cost as a result of its deceptive acts.  Mot. at 11. JetBlue is wrong.  The very existence of the kickback scheme proves that the price Plaintiff paid for trip insurance was inflated by ███ (the amount of JetBlue's undisclosed kickback).  The evidence shows JetBlue represents a specific price for a trip insurance and secretly baked into that price is a kickback to JetBlue, which provides no insurance services whatsoever.  Indeed, Daniel Roth ("Roth"), who submitted a declaration in support of JetBlue's Motion, *see* SUMF, Ex. I. Chairs the American Academy of Actuaries Travel Insurance Work Group, which submitted a

---

[12] JetBlue again attempts to read into the pass-through theory a requirement that simply does not exist and that has not been acknowledged to exist by a single court: that the case must be "premised on the notion that the plaintiffs did not get the benefit of their bargain and paid a price premium[.]" Mot. at 13-14.  JetBlue does not cite a single case that adopts its view as a holding.

[13] JetBlue asserts that Plaintiff cannot prove actual damages because she "voluntarily purchased a policy from AGA (not JetBlue) at a specified price that she agreed to pay, that she got and was covered by an insurance policy pursuant to the filed forms and rates filed with the state for the insurance policy, and that she did not pay an inflated price for that policy as a result of the compensation paid to JetBlue." Mot. at 14.  Putting aside that all these facts are disputed (as noted elsewhere), none of these purported facts are relevant to a FDUTPA claim.

[14] JetBlue deliberately mischaracterizes the evidence to argue that "if Plaintiff is granted the relief she seeks as calculated by her designated expert, she will be awarded nearly all of the money she paid for her policy, *see* SUMF ¶¶ 71-74, resulting in an inequitable windfall to her."  Mot. at 11 n.11.  As damages expert Colin Weir ("Weir") clearly explained at his deposition, the "per policy" fee of $21.40 for July 2017 is an illustrative calculation of the ***average*** fee collected by JetBlue during that month and not the damages owed to any consumer.  RSF ¶¶72-73.

report stating that "the amount of compensation offered to travel insurance distributors **has a direct impact** on the types and prices of products offered to consumers." RSF ¶66. Damages expert Weir also testified that the price of trip insurance is inflated. *Id.* While JetBlue may dispute the evidence of Plaintiff's overpayment and assert (incorrectly) that true value must be determined by comparison shopping, this genuine dispute of material fact precludes summary judgment.

Furthermore, RICO does not demand that damages be measured through price inflation. Indeed, RICO's language on damages is broad and nonspecific: "Any person injured in his business or property by reason of a [RICO] violation . . . may sue therefor[.]" 18 U.S.C. §1964(c). Nothing suggests or implies that a plaintiff must show an inflated payment to prevail. And neither does the case law.[15] *Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1326 (S.D. Fla. 2009) ("The measure of civil RICO damages . . . is the harm flowing from the predicate acts, meaning **any** direct financial injury suffered by the plaintiffs as a result of those acts[.]"). Here, Plaintiff was injured because she parted with money that was represented to be a pass-through fee but JetBlue kept more than half of that money for itself. The measure of damages is the amount of JetBlue's kickback. JetBlue has failed to show the absence of a genuine issue of material fact as to this claim. Thus, JetBlue's Motion should be denied.

### 3.    JetBlue Mischaracterizes the Law on Unjust Enrichment

As to Plaintiff's unjust enrichment claim, JetBlue once again ignores Judge Scola's prior holding, consistent with *Zamber*, that under the alleged facts, "the circumstances are such that it would be inequitable for [JetBlue] to retain the money because it obtained the money through alleged deceptive acts[,]" and that "even if [a] consumer is willing to pay the total price (with the overcharge) for the product or service, the misrepresentations or omissions related to the purported 'pass-through' charge render the retention of the overcharge inequitable." MTD Order at 13 (citing *Zamber*, 282 F. Supp. 3d at 1301). JetBlue asserts that Plaintiff cannot prove that she was overcharged for her insurance or that it would be inequitable for JetBlue to retain the benefit Plaintiff conferred because Plaintiff received a valid and enforceable travel insurance plan (benefit of the bargain), and that the policy Plaintiff purchased was amongst the least expensive on the market. Mot. at 12-13. Even assuming these assertions are true (which Plaintiff does not concede),

---

[15] In *Bowe v. Public Storage*, 106 F. Supp. 3d 1252 (S.D. Fla. 2015), cited by JetBlue, the Plaintiffs expressly and exclusively alleged an overcharge theory.

JetBlue's retention of ██ of Plaintiff's payment for trip insurance does not become equitable simply because Plaintiff received some value and because Plaintiff paid less money overall for Allianz's plan than she would have for a competitor's plan.  There is a genuine dispute of material fact as to whether it would be inequitable for JetBlue to retain ██ of Plaintiff's payment, which precludes summary judgment on Plaintiff's unjust enrichment claim.

### 4. JetBlue Failed to Show the Absence of a Genuine Dispute of Material Fact with Respect to Article III Standing

Plaintiff suffered an injury in fact for purposes of Article III standing because "[s]he seeks recovery of the portion of [her] premium that [JetBlue] kept despite making representations about the trip insurance premium that a consumer could reasonably interpret as a pass through charge, to which [she] is entitled under Florida law." *Zamber*, 282 F. Supp. 3d at 1297-98.  Once again, JetBlue ignores the virtually identical *Zamber* case and, instead, cites to a case from the ***Fifth Circuit*** discussing benefit-of-the-bargain damages under a ***contract theory*** (*Rivera v. Wyeth-Ayerst Labs*., 283 F.3d 315, 320 (5th Cir. 2002)), and a Southern District of Florida case discussing price premium damages in a different context, which was ***reversed*** by the Eleventh Circuit (*DeBernardis v. IQ Formulations, LLC*, 2018 WL 1536608, at *3 (S.D. Fla. Mar. 29, 2018), *vacated and remanded*, 942 F.3d 1076 (11th Cir. 2019)).  Once again, JetBlue tirelessly mischaracterizes Plaintiff's case theory to attempt to fit a square peg into a round hole.  Neither the Fifth Circuit's decision in *Rivera*, the vacated *DeBernardis* decision, nor even the Eleventh Circuit's decision reversing *DeBernardis* apply here.  The virtually identical facts in *Zamber* do.  Thus, *Zamber* – which JetBlue ignores – controls the analysis.  Plaintiff has Article III standing.

### C. JetBlue Failed to Meet Its Burden to Demonstrate the Absence of a Genuine Issue of Material Fact as to Causation

### 1. JetBlue's Attempt to Relitigate FDUTPA Causation Should Be Rejected

Following the indistinguishable *Zamber* case, Judge Scola previously held that "under FDUTPA, causation . . . [is] shown by the fact that [the p]laintiff parted with money for what should have been a pass through charge but that was instead kept by [the defendant airline]."  MTD Order at 12 (citing *Zamber*, 282 F. Supp. 3d at 1300 (collecting cases)).  In so doing, Judge Scola rejected JetBlue's argument that FDUTPA's causation element requires Plaintiff to plead "she would not have made her purchase but for the alleged false impression . . . created by JetBlue."  ECF No. 32 at 10 ("MTD"); MTD Order at 12 ("JetBlue's causation . . . argument[] also fall[s]

- 13 -

flat."). it is strongly supported by *Zamber* and decisions by other judges in this District. *See CubeSmart*, 328 F. Supp. 3d at 1365; *Deere*, 198 F. Supp. 3d at 1340. *Jankus*, 650 F. Supp. 2d at 1257; *Bowe*, 2014 WL 12029270, at *3. Judge Scola's well-supported holding is now the law of the case and JetBlue offers no reason to reconsider Judge Scola's holding. *Klay*, 389 F.3d at 1197. Indeed, JetBlue attempts to relitigate the issue by advancing the ***exact same*** argument on summary judgment that Judge Scola rejected at the motion to dismiss stage. *Compare* Mot. at 14 *with* MTD at 10. Ultimately, JetBlue has failed to meet its burden to demonstrate the absence of genuine issues of material fact with respect to causation for Plaintiff's FDUTPA claim. Thus, JetBlue's Motion should be denied.

### 2. JetBlue Fails to Show the Absence of a Dispute of Genuine Fact as to Causation for Plaintiff's RICO Claim

In denying JetBlue's motion to dismiss, Judge Scola held that Plaintiff adequately pleaded causation for her RICO claim where she alleged she "relied on JetBlue and the enterprise co-conspirator's false statements and omissions . . . that the full customer premium went to the cost of the travel insurance policy," and that she was injured by JetBlue's scheme because, "as a direct result of JetBlue's deception, she paid not only for trip insurance, but, unknowingly, for a kickback to JetBlue as well." MTD Order at 16.[16] The evidence now proves these allegations. Specifically, Plaintiff unequivocally testified at her deposition that she did not know that JetBlue received ███ of the fee she paid for trip insurance and that had she known "that there was going to be a kickback or a commission of ████, [she] probably would not have bought the insurance." RSF ¶¶48-51. JetBlue ignores this unassailable testimony and cherry-picks out-of-context snippets from her deposition to argue that Plaintiff "admitted" JetBlue's misrepresentations and omissions played no role in her purchase decision and that Plaintiff thought the price of the trip insurance offered by JetBlue was a good deal. Mot. at 16. Plaintiff's testimony (that JetBlue ignores) proves that she does not now think the price is a good deal, and the fact that Plaintiff previously thought the price was a good deal before she discovered JetBlue's kickback only proves she was deceived at the time of her purchase. JetBlue can ignore this reality, but at

---

[16] JetBlue's reliance on Judge Middlebrooks's order in *Donoff* is a thinly veiled (and improper) request for reconsideration of Judge Scola's holding. This Court should reject JetBlue's improper request for reconsideration. *Klay*, 389 F.3d at 1197.

- 14 -

best, JetBlue has created a genuine dispute of material fact that precludes summary judgment on the issue of causation. Thus, JetBlue's Motion should be denied.

    **D.**    **Genuine Disputes of Material Fact Regarding Whether Plaintiff Conferred a Direct Benefit on JetBlue Preclude Summary Judgment on Plaintiff's Unjust Enrichment Claim**

        In denying JetBlue's motion to dismiss, Judge Scola relied on the factually indistinguishable *Zamber* case and held that Plaintiff adequately alleged "[s]he conferred a benefit on [JetBlue] because [s]he paid money that ultimately was kept by [JetBlue]." MTD Order at 12 (citing *Zamber*, 282 F. Supp. 3d at 1301). Judge Scola agreed with Judge Martinez and Judge Goodman that "[i]t is immaterial whether [the defendant airline] initially retained a portion of the funds Plaintiff paid for his policy and then sent the rest to an insurer or if all the funds went to an insurer and then a portion was 'kicked back' to [the defendant airline]." *Id.* at 12-13. All three judges agree that "[u]nder either scenario, money was transferred from Plaintiff's pocket and into [the defendant airline]'s" and that "[t]hat is sufficient to confer a direct benefit." *Id.* at 13. The holding of these three judges is consistent with Florida law. *See Williams v. Wells Fargo Bank N.A.*, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) ("[J]ust because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants – but instead passed through a third party – does not preclude an unjust-enrichment claim. . . . Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims."); *Solidda Grp., S.A. v. Sharp Elecs. Corp.*, 2014 WL 12513613, at *3 (S.D. Fla. Mar. 6, 2014) ("[N]either the absence of direct contact between [plaintiff] and [defendants] nor the existence of intermediaries in the flow of the subject benefits forecloses a claim of unjust enrichment."); *State Farm Mut. Auto. Ins. Co. v. Brown*, 2017 WL 1291995, at *7 (S.D. Fla. Mar. 30, 2017) ("When defendants act in concert to unjustly obtain benefits, each can be held to have been unjustly enriched by virtue of the benefit derived from the scheme, even if the benefit was not conferred on them directly."). JetBlue, once again, ignores the indistinguishable *Zamber* case, which Judge Scola's holding relied on, and instead, cites to distinguishable case law that plainly involves "indirect" benefits.[17] Under

---

[17] In *Johnson v. Catamaran Health Sol., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017), the plaintiffs paid a membership fee to a health benefit program, which in turn paid separate premiums to a health insurer. Here, Plaintiff paid for trip insurance, and JetBlue retained ██ of her payment. *John C. Nordt, III, M.D. & Assocs., P.A. v. Colina Ins. Ltd.*, 2018 WL 2688793, at *4 (S.D. Fla.

applicable law (which JetBlue fails to distinguish), the benefit Plaintiff conferred on JetBlue is clearly direct.

Alternatively, relying on *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012), JetBlue asserts that the evidence "establishes that JetBlue was paid pursuant to a separate Marketing Agreement and not from amounts paid by Plaintiff for her insurance" such that "none of the money paid by Plaintiff was ultimately kept by JetBlue." Mot. at 17 n.15. JetBlue's argument fails for two reasons. **First**, JetBlue ignores the fact that Judge Scola already persuasively rejected JetBlue's attempt to rely on *Virgilio*. MTD Order at 13 (emphasis in original). The Court should not entertain JetBlue's improper request for reconsideration of Judge Scola's Order. *Klay*, 389 F.3d at 1197.

**Second**, despite JetBlue's tireless attempts to mischaracterize reality, if the evidence in this case proves anything at all, it is this: JetBlue was most certainly ***not*** paid pursuant to the terms of the Marketing Agreement. *See infra*. Further, testimony by AGA's Chief Sales Officer, Richard Horwitz, demonstrates that the money paid by AGA to JetBlue as a kickback or "marketing fee" is traceable to premium payments made by customers who purchase the insurance product. *See* RSF ¶¶13-17. Testimony by Michael Quiello, AGA's Manager of Regulatory Reporting also indicates that AGA compensates JetBlue on a commission basis for its role as a producer, and that the Marketing Agreement does not mention this arrangement because it is illegal due to the fact that JetBlue does not hold the proper license. *Id*. ¶30. With its misrepresentations of the law, cherry-picking of record evidence, and brazen denial of reality, JetBlue has, at best, created a genuine dispute of material fact that precludes summary judgment. JetBlue's Motion should be denied as to Plaintiff's unjust enrichment claim.

**E.    JetBlue Failed to Meet Its Burden to Demonstrate the Absence of Any Genuine Dispute of Material Fact with Respect to Plaintiff's RICO Conspiracy Claim**

In denying JetBlue's motion to dismiss, Judge Scola rejected JetBlue's challenges to Plaintiff's RICO conspiracy claim and found that Plaintiff had "sufficiently alleged facts establishing an agreement between co-conspirators to violate RICO[.]" MTD Order at 14 n.2; *see*

---

Apr. 13, 2018), the plaintiff doctor provided medical services to patients insured by defendant insurer and "failed to show how providing medical services to . . . insureds conferred a direct benefit on the [insurer]."

*also id.* at 17.  Now there is undisputed evidence in the record that proves these allegations.  The Marketing Agreement between JetBlue and AGA governs payments of millions of dollars between sophisticated parties, yet is shockingly vague as to the measure of JetBlue's compensation.  RSF ¶30.  The current iteration of the Marketing Agreement provides that AGA will pay JetBlue a fee of ███ for each █████████████████████████ (which is a violation of JetBlue's privacy policy),[18] and that the parties will thereafter "████████████████████████████ ████████████████████████████████████████████████ ██████████████████" *Id.*  There is no evidence that JetBlue and AGA ever ████ ██████████████████████████████████, as provided in the Marketing Agreement.  Yet, seemingly through magic, the evidence shows that JetBlue ends up being paid ███ of each policy sold.  RSF ¶¶7, 73 .  The Marketing Agreement is a fraud and is proof of an agreement to violate RICO.

Common sense dictates that such a lucrative income stream would be memorialized in some contract.  JetBlue's right to these millions of dollars in payments (that total exactly ███ of each policy sold) is memorialized ***nowhere***.  And this omission is deliberate on the part of JetBlue and Allianz who agreed to hide, and took steps to hide, JetBlue's receipt of a ████ commission because JetBlue's lack of a license to recommend or sell insurance made its receipt of a commission illegal.  Indeed, JetBlue's Chief of Staff, Michael Quiello ("Quiello"), provided comments to a draft of the Fourth Amendment to the Marketing Agreement, which highlighted the provision related to the payment of an "████████████████████████" and stated: "███ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███" RSF ¶¶2, 30.  That same day, presumably before he expressed his understanding of why it was necessary for the parties to conceal the truth about how JetBlue was actually compensated, Quiello emailed Matt Brey, Director, Strategic Partnerships, at AGA to ask: "██████████████ ████████████████████████████" *Id.*  This unrebutted evidence proves that JetBlue and Allianz conspired to hide the true nature of their illegal conduct through mail and wire fraud and money laundering, in violation of RICO.

---

[18]   JetBlue Airways Privacy Policy, https://www.jetblue.com/legal/privacy (last visited Dec. 5, 2019).

JetBlue ignores this evidence to boldly assert that there is "no evidence of an agreement by JetBlue to violate RICO nor any evidence that shows actions by JetBlue inconsistent with its pursuit of its own self-interest." Mot. at 16-17. The record evidence is more than sufficient to allow a jury to find that an agreement to violate RICO exists. *See ADA v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) ("[T]he existence of conspiracy may be inferred from the conduct of the participants."). JetBlue's willful ignorance of the record evidence is insufficient to meet its burden to demonstrate the absence of any genuine dispute of material fact as to Plaintiff's RICO conspiracy claim. Accordingly, JetBlue's Motion should be denied.

### F.     JetBlue Failed to Meet Its Burden to Present Any Evidence to Support Its Affirmative Defense Based on the Filed Rate Doctrine

JetBlue moves for summary judgment on its affirmative defense based on the filed rate doctrine, Mot. at 19-20, but JetBlue has failed to meet its burden of proof. As the proponent of its affirmative defense, JetBlue bears the burden of proof to demonstrate that a validly filed rate governs the transactions underlying Plaintiff's purchase. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1337 (11th Cir. 2018) (Jordan, J., dissenting) ("Because the federal filed rate doctrine can bar a claim only where there are validly filed rates, the defendant relying on the doctrine must show that a validly filed rate governs the transaction at issue."); *see also Perkins v. Ottershaw Inv. Ltd.*, 2007 WL 9701703, at *2 (S.D. Fla. Jan. 19, 2007) ("where the moving parties request summary judgment on the basis of an affirmative defense, they have the initial burden of making a showing that the affirmative defense is applicable").[19] "Indeed, the Supreme Court has emphasized the limited scope of the filed rate doctrine to preclude damage claims only where there are *validly* filed rates." *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009). Further, "whether a filed rate applies to a given transaction is a precise factual inquiry, not a loose analysis to be done freehand." *Patel*, 904 F.3d at 1337.

JetBlue has not presented *any* evidence that a validly filed rate governs Plaintiff's purchases, and thus, has failed to meet its burden of proof. Indeed, JetBlue's affirmative defense relies entirely on an inadmissible and mischaracterized declaration by the former chief actuary of Allianz. Mot. at 20 (citing SUMF at ¶¶67-70); ECF No. 139-10 ("Roth Declaration" or "Roth

---

[19] *See also Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) ("Ordinarily, it is incumbent on the defendant to plead and prove such a[n affirmative] defense[.]"); *Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1551 (11th Cir. 1990) (defendant has burden of proof on affirmative defense).

Decl."). The Roth Declaration does not prove the existence of a validly filed rate for two reasons. **First**, it is inadmissible because it violates the best evidence rule codified in Rule 1002 of the Federal Rules of Evidence: "[a]n original writing . . . is required in order to prove its content[.]" *See Idearc Media Corp. v. Kimsey & Assocs., P.A.*, 2011 WL 1560653, at *4 (M.D. Fla. Apr. 25, 2011) ("If proffered evidence would violate the best evidence rule, it is inadmissible."). "[I]t is critical that the fact finder be able to see the alleged[ rate filings] in order to evaluate whether or not [a validly filed rate governs the transaction at issue]. Without the [rate filings] in evidence the affidavits referring to them . . . violate the best evidence rule and must be excluded." *Id.*

**Second**, even if the Roth Declaration were admissible (it is not), it does not prove the existence of a validly filed rate or establish that Plaintiff would pay a rate below any purported filed rate if she recovers damages. Indeed, the Roth Declaration never states what the purported filed rates are or that the purported filed rates include the amount of JetBlue's kickback. In fact, despite JetBlue's misrepresentation to the contrary, Mot. at 20, the Roth Declaration proves that the amount of JetBlue's kickback is *not* included in AGA's rate filings: "[r]ate filings *do not, and are not required or intended to*, contain information regarding what is paid to any one particular marketing partner regardless of the categorization of the payment as commission or marketing fees." Roth Decl. ¶4. The Roth Declaration also proves that customers like Plaintiff do not pay any specific filed rate because the "purpose of a rate filing is to inform the state regulator of the estimated distribution costs for the insurance *in the aggregate*[,]" and that is what was done with Allianz's rate filings. *Id.*

Furthermore, to the extent there is any admissible evidence in the record regarding rate filings, it contradicts JetBlue's position. Specifically, Allianz's former Chief Underwriting Officer, John Culbertson ("Culbertson"), testified not only that there were times when the pricing of the insurance products did not comport with the filed rate, but also that he specifically raised concerns with Roth regarding this problem. RSF ¶¶68-69.

Furthermore, JetBlue concedes the insurance products it sells are hybrid products consisting of trip insurance combined with travel assistance services. *See* Mot. at 1 n.2 ("The product purchased by Plaintiff upon which her claims are premised contains insurance and assistance features."). And Culbertson testified that the cost of these products is calculated as a straight percentage of the customer's ticket price, not by reference to any filed rate (assuming any

- 19 -

validly filed rate exists in the first place, which there is no evidence of). RSF ¶¶69. This is supported by the fact that the original Marketing Agreement between JetBlue and AGA calculated the cost of the insurance to the consumer as a flat percentage of the trip cost. *Id*. As a result, Culbertson testified that "█████████████████████████████████████████████ ███████████████████████████████████████████████████████████" *Id*. Thus, the filed rate doctrine is not applicable under these facts because, to the extent there is any evidence of a filed rate, it shows that no customer is actually paying any validly filed rate.

At bottom, JetBlue has failed to meet its burden to point to any evidence to support its affirmative defense based on the filed rate doctrine and, thus, JetBlue's Motion should be denied.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that JetBlue's Motion be denied in its entirety.

DATED:  December 6, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
Florida Bar No. 984795
STUART A. DAVIDSON
Florida Bar No. 0084824
JASON H. ALPERSTEIN
Florida Bar No. 64205
CHRISTOPHER C. GOLD
Florida Bar No. 88733
BRADLEY M. BEALL
Florida Bar No. 1010635


**Christopher C. Gold**
CHRISTOPHER C. GOLD

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
jalperstein@rgrdlaw.com
cgold@rgrdlaw.com
bbeall@rgrdlaw.com

- 20 -

LEÓN COSGROVE, LLP
SCOTT B. COSGROVE
Florida Bar No. 161365
ALEC H. SCHULTZ
Florida Bar No. 35022
JOHN R. BYRNE
Florida Bar No. 126294
JEREMY L. KAHN
Florida Bar No. 105277
255 Alhambra Circle, Suite 800
Coral Gables, FL  33134
Telephone:  305/740-1975
scosgrove@leoncosgrove.com
aschultz@leoncosgrove.com
jbyrne@leoncosgrove.com
jkahn@leoncosgrove.com

*Counsel for Plaintiff and the Class*

4832-7829-4702

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on December 6, 2019, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

**Christopher C. Gold**

CHRISTOPHER C. GOLD

ROBBINS GELLER RUDMAN
  & DOWD LLP
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

E-mail:  cgold@rgrdlaw.com

- 22 -